JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Margate City, New Jersey

**(b)** County of Residence of First Listed Plaintiff   Atlantic County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas S. Biemer, Rob Andrews and Jordan M. Rand
Dilworth Paxson LLP, 1500 Market St., Suite 3500E
Philadelphia, PA 19102   215-575-7000

## DEFENDANTS

United States Army Corps of Engineers & New Jersey Department of Environmental Protection

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding  ☐ 2  Removed from State Court  ☐ 3  Remanded from Appellate Court  ☐ 4  Reinstated or Reopened  ☐ 5  Transferred from Another District *(specify)*  ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 2201
Brief description of cause:
Declaratory Judgment action against U.S. Army Corps of Engineers and NJ Dep't of Environmental Protection

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARGATE CITY, NEW JERSEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | |
| | : | _____-cv-_____ |
| | : | |
| UNITED STATES ARMY CORPS OF | : | |
| ENGINEERS and NEW JERSEY | : | |
| DEPARTMENT OF ENVIRONMENTAL | : | |
| PROTECTION, | : | |
| Defendants. | : | |

## COMPLAINT

## INTRODUCTION

1.    Plaintiff, the City of Margate ("**Margate**" or the "**City**"), brings this action to enjoin Defendants, the United States Army Corps of Engineers (the "**Corps**") and the New Jersey Department of Environmental Protection ("**DEP**") (collectively "**Defendants**"), from contracting with third parties to trespass on Margate's property.    The manner in which Defendants have proceeded violates the rights of the people of Margate under the United States Constitution, the New Jersey Constitution, New Jersey state law and common law.

2.    Beginning on October 22, 2012, Hurricane (Superstorm) Sandy formed and then migrated from the western Caribbean Sea northward, hitting the shores of New Jersey on or about October 28, 2012.

3.    Although the consequences of Sandy have led to nearly universal agreement that New Jersey needs to implement better storm protection strategies, identical remedies are obviously not appropriate in all communities.

4.     Understanding the unique geological and topographic characteristics of Margate, such as its existing and extensive system of bulkheads--which successfully prevented catastrophic damage to the City as a result of Sandy, Margate has attempted to present and advocate for alternative storm prevention strategies that they believe are more protective and cost-effective for the city.

5.     The Corps and the DEP have chosen not to consider these alternatives.

6.     Prior to Hurricane Sandy, in 1996, the Defendants' conceived the Absecon Island Coastal Storm Risk Reduction Project (the "**Project**") to assess and implement ways to reduce storm damage and minimize shoreline erosion in coastal New Jersey.

7.     The Defendants have periodically implemented portions of the Project throughout New Jersey, but they have not yet begun the portion of the Project that calls for the construction of sand dunes on Margate's beaches.

8.     Cognizant of Margate's objection, the Defendants purported to condemn Margate's property without following any lawful procedure, and to aggressively move the Project forward without permitting Margate any opportunity to object either to the manner in which the DEP allegedly acquired an interest in the City's property or to the nature of the Project to be constructed on that property.

9.     Margate expects that within one week, the Defendants will trespass onto land owned by Margate to construct a 3-mile long stretch of 12.75-foot high, 25-foot wide sand dunes on Margate's beaches despite Margate's unequivocal protestations.

10.     Margate therefore brings this action to protect its beaches from this imminent and unlawful intrusion.

## THE PARTIES

11.     Margate is a city in the State of New Jersey.   Margate has filed this action following a referendum in which a majority of the city's citizens voted to initiate legal action to stop the Defendants from illegally constructing sand dunes on Margate's beaches.

12.     The Corps is a federal agency under the United States Department of Defense.

13.     The DEP is an administrative agency of the State of New Jersey.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction under United States Constitution Article III, § Two, Clause One over all cases to which the United States, including federal agencies such as the Corps, is a party.

15.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because Margate's claims arise under the Takings Clause and the Due Process Clause of the United States Constitution.

16.     This Court also has jurisdiction over Margate's claim against the Corps pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 702, 706(2)(A), (B) and (D).

17.     This Court has supplemental jurisdiction and/or pendant party jurisdiction over state law claims asserted by Margate against the Defendants because those claims arise from a common nucleus of operative facts as Margate's claims against the Corps and its federal question claims against the DEP.

18.     Venue is proper in this District because Margate's claims arose in this District.

## FACTUAL BACKGROUND

19.     Following Hurricane Sandy, the State of New Jersey began aggressively implementing storm protection measures that had originally been conceived nearly 20 years previously as part of the Project.

20.     The State of New Jersey, however, wished to avoid the mandatory condemnation process set forth in the Eminent Domain Act of 1971 (the "**Act**"), N.S.J.A. 20:3-1 *et seq*., which is intended to foster pre-condemnation negotiations between the State and the condemnee and to protect the condemnee's rights under the United States and the New Jersey Constitutions.

21.     To avoid that process, the DEP and the Corps began seeking voluntary easements from beachfront landowners along the New Jersey coast, including from individual residents and from municipalities.

22.     The purpose of this process was to obtain permanent easements in favor of the DEP, which signed Project Participation Agreements with the Corps to construct sand dunes along the New Jersey coast, including in Margate.

23.     Many citizens and several municipalities disputed the effectiveness and propriety of the Project, in particular its use of sand dunes, and they therefore refused to voluntarily grant permanent easements to the DEP.

24.     Margate was, and remains, among those municipalities that have refused to grant the requested easements.  Margate's opposition, however, is not merely a reflection of the views of its Commissioners or its Mayor.  Margate's opposition derives directly, and overwhelmingly, from its citizens.

25.     In August 2013, the citizens of Margate formed Margate Citizens Questioning the Beach Project ("**MCQBP**").  *See* http://www.mcqbp.org/about.html.  The stated mission of MCQBP is to educate and inform Margate citizens of the reasons to stop the Project "and to SAVE MARGATE beaches." *Id*.

26.     As opposition to the Project grew, the State of New Jersey's insistence that the Project be implemented increased.

27.     On September 25, 2013, Governor Chris Christie issued Executed Order No. 140 ("**EO 140**"), a copy of which is attached as Exhibit "A."

28.     In EO 140, Governor Christie ordered the DEP to create an Office of Flood Hazard Risk Reduction Measures to "lead and coordinate the efforts of the DEP to acquire the necessary interests in real property to undertake Flood Hazard Risk Reduction Measures…". Invoking the State's eminent domain powers in N.J.S.A. § 20:3-1 *et seq*., the DEP's eminent domain powers in N.J.S.A. § 12:3-64, and the municipal condemnation authority in N.J.S.A. App. A:9-15, Governor Christie further ordered the Attorney General of the State of New Jersey to "immediately take action to coordinate those legal proceedings necessary to acquire the necessary easements or other interests in real property for the [Project]." *Id.*

29.     Neither the New Jersey Office of the Attorney General (the "**NJAG**") nor the DEP followed Governor Christie's direction to implement required legal proceedings prior to condemnation.

30.     Instead, the DEP continued to request voluntary easements from individuals and municipalities, including from Margate.

31.     To ascertain the true will of its Citizens to guide the decision as to whether to grant easements, on November 4, 2013, Margate put to referendum the question of whether its citizens supported the Project.

32.     A nearly 70% majority (1,502 to 792) of Margate's citizens voted against the construction of dunes on Margate's municipally-owned shorefront property.

33.     Thereafter, Margate continued to decline to grant voluntary easements to the DEP. Still, the DEP and the NJAG refrained from initiating condemnation proceedings.

34.     On June 23, 2014, the DEP and the Corps entered into a Project Partnership Agreement to complete construction of the Project in, among other places, Margate.

35.     Project commencement appearing imminent, Margate began to solicit guidance on how it might address the differing views of the DEP and the citizens of Margate.

36.     In late August and early September 2014, Margate commenced a dialogue with the DEP.  Both parties appeared willing to negotiate in good faith for the purpose of trying to reach a mutually acceptable resolution without resort to litigation.

37.     On September 11, 2014, the Corps issued a request for proposal for the Project component that includes the construction of sand dunes in Margate.  Still, the DEP appeared willing and eager to engage in negotiations.

38.     Prior to the parties having been able to hold any negotiations, on October 1, 2014, the DEP abruptly ceased seeking voluntary easements from Margate.  Rather than following the mandate of EO 140 and initiating condemnation proceedings, as required by law, the DEP attempted to condemn Margate's property by simply filing in the Atlantic County Clerk's Office three "Administrative Orders."

39.     Administrative Orders No. 2014-13, 2014-14 and 2014-15 (the "**Administrative Orders**") (attached as Exhibit "B") invoke EO 140 and N.J.S.A. 12:3-64 and purport to take permanent easements in Margate's coastal property for the purpose of construction sand dunes in furtherance of the Project.

40.     Specifically, the Administrative Orders states that "the State [of New Jersey] is the Non-Federal Sponsor for the Project pursuant to the [Project Placement Agreement] and is responsible for obtaining necessary real estate interests."  Administrative Order 2014-13 at p. 2. "…[T]he United States Army Corps of Engineers, in coordinate with the State of New Jersey, is

scheduled to begin construction of the Project in the City of Margate and the Borough of Longport in or about December, 2014" *Id.* "...[P]rior to construction, the United State Army Corps of Engineers requires that the State provide the easements and/or other real property interests that are necessary to construct and maintain the Project." *Id.* "...[I]f the State does not obtain all required easements and/or other real property interests in the City of Margate, the [Corps] cannot construct the [Project] in both the City of Margate and the Borough of Longport." *Id.*

41.     Unable to acquire the necessary property interests by agreement and unwilling to follow the constitutionally required process set forth in the Act, the DEP, through the Administrative Orders, purportedly "*immediately* enters upon and takes real property interests in those parcels set forth in Exhibit A." *Id.* at p. 3. (emphasis added). Though the Act and the constitutional rights guarded thereby require negotiations and other process prior to condemnation, the Administrative Orders state that "[a]ppraisals and good faith negotiations for any compensation due to the City of Margate for such parcels for the interests taken shall be undertaken in a manner not inconsistent with the procedures set out in the [Act] and applicable case law within a reasonable amount of time." *Id.*

42.     Thus, the DEP purported to immediately acquire portions of Margate's beaches without negotiating with the City or giving it any opportunity to be heard for any reason.

43.     When Margate learned of the Administrative Orders, it was concerned that the DEP no longer intended to engage in good faith negotiations, as the parties had seemingly been pursuing.

44.     Margate voiced its objection to the Administrative Orders to the DEP, and it inquired whether the Administrative Orders were an indication that no negotiations would occur. The DEP represented that it still intended to negotiate.

45.     Margate, concerned that participating in the impending negotiations without having protected its rights with respect to the Administrative Orders, requested that the parties enter into a Standstill and Tolling Agreement.

46.     On October 2, 2014, the DEP and Margate entered into a Tolling and Standstill Agreement, a copy of which is attached as Exhibit "C."

47.     The Tolling and Standstill Agreement formally placed the DEP on notice of Margate's objection to the Administrative Orders as valid takings and preserved all rights, causes of action and defenses that Margate might have.

48.     Still not having had any opportunity to participate in any negotiations, Margate grew increasingly concerned that the Corps, despite Margate's objection to the Administrative Orders, appeared to be moving ahead with the Project.

49.     On October 28, 2014, Margate, through counsel, sent a letter to Keith Watson, Project Manager, advising the Corps of Margate's objection to the Administrative Orders and of the Tolling and Standstill Agreement between Margate and the DEP.  The Corps did not respond to this letter.

50.     On October 30, 2014, the Corps opened bids related to the Project.

51.     On November 4, 2014, Margate's citizens participated in a second Project-related referendum.  Margate's citizens voted 1,067 – 988 in favor of bringing legal action to stop the construction of dunes on its beaches.

52.     Margate, still hoping in earnest to avoid litigation, endeavored to determine whether the Corps would refrain from awarding the Project contract (the "**Contract**") until the DEP and Margate had at least had the opportunity to meet and negotiate.  Indeed, negotiations sessions had been initially scheduled, and the parties were in the midst of attempting to reschedule a meeting for mid-November.

53.     On November 7, 2014, Margate, through counsel, sent a letter to the Corps General Counsel in its Philadelphia Office, Bill Wilcox, Esquire ("**Wilcox**"), advising the Corp that the DEP's and Margate's dispute had not been resolved but that the parties were in the process of scheduling negotiation sessions.  Recognizing that the awarding of a Project Contract and commencement of construction would seriously undermine such sessions, Margate stated as follows: "Please advise us as soon as possible if the Corps intends to move forward with the process of awarding and, ultimately, executing a contract for the Project.  Though the City remains optimistic that a settlement can be reached, these facts will necessarily impact the landscape upon which the parties have been attempting to reach an amicable resolution."

54.     The Corps did not respond to Margate's letter.

55.     On November 12, 2014, the Corps posted an Abstract comparing bids received for the Project.

56.     On November 19, 2014, still not having received any response from the Corps, Margate's counsel called Wilcox to inquire as to the reason for the Corps' lack of a response and to determine whether the Corps intended to award a Project contract notwithstanding Margate's dispute with the DEP concerning the effect of the Administrative Orders.

57.     Wilcox informed Margate's attorney that the Corps was satisfied with the DEP's certification that it had acquired Margate's property by virtue of the Administrative Orders, and the Corps would therefore proceed to award the contract "soon. Not today, but soon."

58.     Still hopeful that it could protect its rights while pursuing good faith negotiations with the DEP, Margate immediately began attempting to contact the NJAG to determine whether it would instruct the Corps to await awarding the Contract until the parties had at least had an opportunity to have an initial meeting.

59.     Despite numerous attempts between November 19-24, including this morning, Margate has not been able to have any meaningful discussion with the NJAG.

60.     Not having any response from the NJAG, and based upon Mr. Wilcox's representation, a Contract award and commencement of construction is imminent.

61.     In fact, based on the statements of Wilcox, the silence of the NJAG and the language of the Administrative Orders themselves, the Corps will likely award the Contract and start construction within the next seven days.

## COUNT I

### *Margate v. the Corps*

**Declaratory Judgment that Contract Award and Commencement of Construction Constitute a Violation of Margate's Rights Under the United States and the New Jersey Constitution, a Trespass to Property and a Violation of New Jersey State Law**

62.     The foregoing paragraphs are incorporated by reference.

63.     The Declaratory Judgment Act, 28 U.S.C. § 2201 states: "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

64.     An actual case or controversy exists as between the Corps and Margate because the Corps intends within the next week to award the Contract and commence construction of sand dunes on Margate's beaches despite Margate's vehement objection.

65.     The Corps' awarding of the Contract and construction of dunes on Margate's property violates the rights of the citizens of Margate under the Takings Clause and the Due Process Clause of the United States Constitution, as well as under corollary provisions of the New Jersey state constitution.

66.     The Corps' awarding of the Contract and construction of dunes on Margate's property also constitutes an unlawful trespass upon Margate's property, as Margate objects and neither the Corps nor the DEP have utilized any lawful process to obtain title to the property to be entered.

67.     Margate has in interest in protecting its real property rights.

68.     All necessary parties have been joined in this action.

69.     Margate will be damaged irreparably if the Corps is not enjoined from proceeding as planned.

**WHEREFORE**, Margate respectfully requests relief as follows: (a) that the Court preliminarily enjoin the Corps from awarding the Contract and from entering upon Margate's property to commence construction or for any other purpose; (b) that the Court issue a declaratory judgment that the Corps' awarding the Contract and commencement of construction upon Margate's property would violate Margate's rights under the United States and New Jersey Constitutions, would constitute an unlawful trespass and would otherwise violate New Jersey state law; and (c) that the Court order such other relief as it deems appropriate.

## COUNT II

### *Margate v. DEP*

**Declaratory Judgment that the Administrative Orders are Invalid and of No Legal Effect**

70.     The foregoing paragraphs are incorporated by reference.

71.     An actual case or controversy exists as between the DEP and Margate because the Corps, pursuant to its Project Participation Agreement with the DEP, intends within the next week to award the Contract and commence construction of sand dunes on Margate's beaches despite Margate's vehement objection.

72.     The Eminent Domain Act of 1971 (the "**Act**") sets forth the requirements by which the State, or any statutorily empowered entity, may exercise its eminent domain powers to acquire property.

73.     Under the Act, a condemnor must, prior to instituting condemnation proceedings, attempt to acquire the property at issue through bona fide negotiations, "which negotiations shall include an offer in writing by the condemnor to the prospective condemnee … setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules.  Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property." N.J.S.A. § 20:3-6.

74.     Thereafter, the condemnor must give the condemnee 14 days to accept or reject the offer. N.J.S.A. § 20:3-6.

75.     If the condemnee fails to responds or rejects the offer, a condemnation action "shall be instituted by filing a verified complaint in form and content specified by the rules and shall demand judgment that condemnor is duly vested with and has duly exercised its authority

to acquire the property being condemned, and for an order appointing commissioners to fix the compensation required to be paid." N.J.S.A. § 20:3-6.

76.     The DEP has failed to comply with the foregoing requirements, as well as with all other requirements contained in the Act.  The DEP has failed to conduct required negotiations, failed to make any offer and has failed to file any complaint.

77.     Instead, the DEP has taken the position that it may circumvent the entirety of the Act by way of the Administrative Orders.

78.     The Administrative Orders, however, are invalid for at least the following reasons:

a.     A taking effectuated by the Administrative Orders would violate the Takings Clause and the Due Process Clause of the United States Constitution, as well as the corollary provision of the New Jersey constitution because the DEP failed to follow the condemnation procedures required under N.J.S.A. § 20:3-1 *et seq.*

b.     N.J.S.A. § 12:3-64 requires the DEP to comply with N.J.S.A. § 20:3-1 *et seq.* and prohibits the DEP from acquiring a permanent easement, on contrast to a fee simple interest, in real property.

c.     Executive Order No. 140 required the DEP to comply with N.J.S.A. § 20:3-1 *et seq.* and N.J.S.A. § 12:3-64, and the Separation of Powers doctrine precludes an alternative construction.

d.     The DEP's exercise of its eminent domain authority in this instance is arbitrary and capricious because the Project fails to account for Margate's contiguous, uninterrupted bulkhead system (which functioned well during Hurricane Sandy), it fails to consider that an identical or superior result could have been achieved by widening

and/or heightening the beach berm in lieu of constructing dunes, it fails to account for issues related to street-end drainage that will be created by the proposed dunes, it imposes upon Margate untold, unending maintenance obligations, likely to cost in excess of $500,000 annually, concerning the dunes and, finally, because the DEP employed an illegal and bad faith means of effectuating the purported taking – the Administrative Orders.

79.     Margate has in interest in protecting its real property rights.

80.     All necessary parties have been joined.

81.     Margate will be damaged irreparably if the Corps and the DEP are not enjoined from proceeding as planned.

**WHEREFORE**, Margate respectfully requests relief as follows: (a) that the Court preliminarily enjoin the Corps and the DEP from awarding the Contract and from entering upon Margate's property to commence construction or for any other purpose; (b) that the Court issue a declaratory judgment declaring that the Administrative Orders are void and therefore have no legal effect; and (c) that the Court order such other relief as it deems appropriate.

## COUNT III

### *Margate v. Defendants*

### Preliminary Injunctive Relief

82.     The foregoing paragraphs are incorporated by reference.

83.     Margate is likely to succeed on the merits for the reasons set forth in Counts I and II.

84.     A denial of the requested injunctive relief will result in irreparable harm because the Corps and DEP have violated, and will further violate, the rights of the citizens of Margate under the United States Constitution, the New Jersey Constitution and the Act.

85.     A denial of the requested injunctive relief will also presumptively result in irreparable harm because, by virtue of the Takings Clause and the Due Process Clause of the United States Constitution, corollary provisions of the New Jersey constitution and the Act, this case is imbued with a public interest which has been codified by law and the violation of which entitles a movant, under the Act, to preliminary injunctive relief even absent irreparable harm.

86.     A denial of the requested injunctive relief will also result in irreparable harm because it respects Margate's rights in unique real property, namely its coastal beaches.

87.     Granting the injunction will not harm the Defendants, as Margate asks only that the status quo be maintained pending a determination in this action.  The status quo is that no contract has been awarded and construction of dunes upon Margate's beaches has not commenced.

88.     The injunction sought is in the public interest.  It is within the public interest to ensure that federal and state agencies act within the limits set by the United States and New Jersey Constitutions, respectively, as well as within their statutorily granted powers.  Moreover, the citizens of Margate have expressly voted against the construction of dunes on Margate's beaches.  The Corps' and the DEP's actions in violation of law and in violation of the will of the citizens of Margate must therefore be enjoined to protect the public interest.

89.     The Court should exercise its discretion and not require the posting of any security upon the issuance of temporary restraints.

**WHEREFORE**, Margate respectfully requests a temporary restraining order and preliminary injunction enjoining enjoin the Corps and the DEP from awarding the Contract and from entering upon Margate's property to commence construction or for any other purpose, together with such other relief as the Court deems appropriate.

By: _____

Thomas S. Biemer
Rob Andrews
Jordan M. Rand
**DILWORTH PAXSON LLP**
457 Haddonfield Road
Cherry Hill, NJ 08002
Telephone: (856) 675-1900
Email: tbiemer@dilworthlaw.com

*Attorney for Plaintiff, the City of Margate*

Date: November 24, 2014

# EXHIBIT A

Westlaw.

N.J. Admin. Code Executive Order No. 140 (2013)

New Jersey Administrative Code Currentness
   Executive Orders
      Governor Chris Christie (2010 Pt. II)
        Governor Chris Christie (2010 Part II)
          ➡➡ **Executive Order No. 140 (2013)Orders and Directs Attorney General to Coordinate Acquisition of Easements; Creates Office of Flood Hazard Risk Reduction Measures to Lead Effort**

Issued: September 25, 2013.

Effective: September 25 2013.

WHEREAS, beginning on October 28, 2012, and continuing through October 30, 2012, Superstorm Sandy struck the State of New Jersey, causing unprecedented damage and destruction; and

WHEREAS, oceanfront and other flood-prone communities lacking the benefits of flood hazard risk reduction measures including protective sand dunes, berms, and engineered beaches (collectively "Flood Hazard Risk Reduction Measures") experienced significantly more catastrophic damage than surrounding communities; and

WHEREAS, recognizing the dangers posed by the absence of Flood Hazard Risk Reduction Measures, the United States Congress appropriated funds for the creation, improvement, and reconstruction of these important protections; and

WHEREAS, working collaboratively with the United States Army Corps of Engineers, New Jersey has begun the process of designing Flood Hazard Risk Reduction Measures for appropriate areas of the New Jersey coastline; and

WHEREAS, these essential Flood Hazard Risk Reduction Measures must be comprehensively constructed across the areas impacted by Superstorm Sandy and throughout the regions at risk for similar damage from future storms; and

WHEREAS, some of the land on which this system of Flood Hazard Risk Reduction Measures must be built is privately owned; and

WHEREAS, recognizing the clear and quantifiable benefit that Flood Hazard Risk Reduction Measures confer on their property, as well as their families, neighbors, and communities, many oceanfront property owners have voluntarily granted easements for the construction of Flood Hazard Risk Reduction Measures; and

WHEREAS, despite the responsible actions of these many property owners, other residents have frustrated the State's rebuilding and resiliency plans by refusing to grant easements, thereby jeopardizing the construction of Flood Hazard

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.J.A.C. Executive Order No. 140 (2013)                                          Page 2

N.J. Admin. Code Executive Order No. 140 (2013)

Risk Reduction Measures for all of New Jersey's citizens, undermining the essential benefits of these systems, and subjecting entire communities to unnecessary risks and dangers; and

WHEREAS, these recalcitrant property owners have had ample time and notice to voluntarily agree to grant these easements to help to ensure the health, safety, and welfare of their communities; and

WHEREAS, the continued absence of Flood Hazard Risk Reduction Measures in coastal communities creates an imminent threat to life, property, and the health, safety, and welfare of those communities; and

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. App. A:9–33, et seq., N.J.S.A. 38A:3–6.1, and N.J.S.A. 38A:2–4, and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers; and

WHEREAS, in light of the significant and widespread dangers posed by Superstorm Sandy, and in order to protect the health, safety, and welfare of the people of the State of New Jersey, on October 27, 2012, I signed Executive Order No. 104 declaring and proclaiming that a State of Emergency exists in the State of New Jersey; and

WHEREAS, in Executive Order No. 104, and in accordance with N.J.S.A. App. A:9–34 and –51, I expressly reserved the right to utilize and employ all available resources of the State government and of each and every political subdivision of the State, whether of persons, properties, or instrumentalities, and to commandeer and utilize any personal services and any privately owned property necessary to protect against this emergency; and

WHEREAS, employing the procedures set out in N.J.S.A. 20:3–1 et seq., public entities are empowered to condemn private property for public purposes, including the creation of Flood Hazard Risk Reduction Measures; and

WHEREAS, pursuant to **N.J.S.A. 12:3– 64**, the New Jersey Department of Environmental Protection ("DEP") is authorized to acquire any lands in the State that it deems advisable, and may enter upon and take property in advance of making compensation therefore where for any reason it cannot acquire the property by agreement with the owner; and

WHEREAS, pursuant to N.J.S.A. App. A:9–51.5, municipalities are authorized to enter upon and take possession and control of property necessary for the construction of Flood Hazard Risk Reduction Measures; and

WHEREAS, all of the aforementioned authority is necessary to protect the public health, safety, and welfare from future natural disasters; and

WHEREAS, in order to ensure the prompt and coordinated acquisition of easements or other interests in real property necessary to facilitate the timely completion of a comprehensive system of Flood Hazard Risk Reduction Measures, it is necessary to create a single State entity responsible for the rapid acquisition of property vital to these reconstruction efforts;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.J.A.C. Executive Order No. 140 (2013)                                    Page 3

N.J. Admin. Code Executive Order No. 140 (2013)


NOW, THEREFORE, I, CHRIS CHRISTIE, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and the statutes of this State, do hereby ORDER and DIRECT:

1. The Commissioner of Environmental Protection shall create in the DEP the Office of Flood Hazard Risk Reduction Measures (the "Office"). The Office shall be headed by a Director appointed by the Commissioner to serve at the Commissioner's pleasure and who shall report to the Commissioner on the work of the Office. The Office shall lead and coordinate the efforts of the DEP to acquire the necessary interests in real property to undertake Flood Hazard Risk Reduction Measures and shall perform such other duties as the Commissioner may from time to time prescribe.

2. The Attorney General of the State of New Jersey, in conjunction with the Office, shall immediately take action to coordinate those legal proceedings necessary to acquire the necessary easements or other interests in real property for the system of Flood Hazard Risk Reduction Measures.

3. The Office is authorized to call upon any department, office, division, or agency of this State for information or assistance as deemed necessary to discharge the duties of the Office. Each department, office, division, or agency is hereby required, to cooperate with the Office and to provide such assistance as is necessary to accomplish the purpose of this Order. Notwithstanding anything in this Order to the contrary, the Office shall not supplant the function of any department, office, division, or agency.

4. No municipality, county, or any other agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution, which will or might in any way conflict with any of the provisions of this Order, or which will in any way interfere with or impede its achievement.

5. This Order shall take effect immediately.

Printed October 21, 2013 in the New Jersey Register at 45 N.J.R. 2289(a).

No. 140 (2013), NJ ADC EX. ORD. No. 140 (2013)

Current through amendments included in the New Jersey Register, Volume 46, Issue 18, dated September 15, 2014

(C) 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B



# State of New Jersey

DEPARTMENT OF ENVIRONMENTAL PROTECTION
NATURAL & HISTORIC RESOURCES
Office of Engineering & Construction

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lt. Governor*

BOB MARTIN
*Commissioner*

Prepared by:

David C. Apy
Assistant Attorney General

## ADMINISTRATIVE ORDER NO. 2014-13

WHEREAS, beginning on October 28, 2012, and continuing through October 30, 2012, Superstorm Sandy struck the State of New Jersey, causing unprecedented damage and destruction; and

WHEREAS, oceanfront and other flood-prone communities lacking the benefits of flood hazard risk reduction measures experienced significantly more catastrophic damage than did surrounding communities that had such protective measures; and

WHEREAS, by Executive Order No. 104, dated October 27, 2012, Governor Christie declared and proclaimed that a State of Emergency exists in the State of New Jersey; and

WHEREAS, Executive Order No. 104 remains in effect; and

WHEREAS, by Executive Order No. 140, dated September 25, 2013, Governor Christie declared that the continued absence of flood hazard risk reduction measures in coastal communities creates an imminent threat to life, property, and the health, safety, and welfare of those communities; and

WHEREAS, N.J.S.A. 12:3-64 empowers the New Jersey Department of Environmental Protection to enter upon and take property in advance of making compensation therefor where for any reason it cannot acquire the property by agreement with the owner; and

WHEREAS, in Executive Order No. 140 Governor Christie declared that the New Jersey Department of Environmental Protection should rely on the statutory powers of N.J.S.A. 12:3-64 whenever it deems it appropriate to ensure the construction of flood hazard risk reduction measures; and

WHEREAS, in Executive Order No. 140 Governor Christie ordered and directed the New Jersey Department of Environmental Protection, through its Office of Flood Hazard Risk Reduction Measures, to lead and coordinate the acquisition of the necessary interests in real property to undertake flood hazard risk reduction measures; and



ATLANTIC COUNTY, NJ: EDWARD P. MCGETTIGAN
VOL 13808 RECORDED 10/02/2014 11:04:59 AM
REC FEES $440.00 COUNTY CLERK
RCPT# 1120263
INST# 2014054702
REC'D BY: Cathy

1

WHEREAS, in Executive Order No. 140 Governor Christie ordered and directed that no municipality, county, or any other agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution, which will or might in any way conflict with any of the provisions of that Order, or which will in any way interfere with or impede its achievement; and

WHEREAS, Executive Order No. 140 remains in effect; and

WHEREAS, the State and the United States Army Corps of Engineers signed a Project Partnership Agreement (PPA) on June 23, 2014 for the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island, New Jersey Hurricane and Storm Damage Reduction Project (the Project) for the construction, operation, and maintenance of the Project; and

WHEREAS, the State is the Non-Federal Sponsor for the Project pursuant to the PPA and is responsible for obtaining necessary real estate interests; and

WHEREAS, on June 27, 2014, the United States Army Corps of Engineers formally issued a Notice to Proceed with acquisition of all necessary real estate for the project; and

WHEREAS, the United States Army Corps of Engineers, in coordination with the State of New Jersey, is scheduled to begin construction of the Project in the City of Margate and the Borough of Longport in or about December, 2014; and

WHEREAS, prior to construction, the United States Army Corps of Engineers requires that the State provide the easements and/or other real property interests that are necessary to construct and maintain the Project; and

WHEREAS, if the State does not obtain all required easements and/or other real property interests in the City of Margate, the United States Army Corps of Engineers cannot construct the flood hazard reduction measures in both the City of Margate and the Borough of Longport; and

WHEREAS, to date, the City of Margate has not transferred to the State the real property interests owned or controlled by the City of Margate listed and attached hereto as *Exhibit A* necessary for the construction of the Project, thereby jeopardizing construction of the Project in not only the City of Margate but also the Borough of Longport, and threatening the public health, safety, and welfare of both communities; and

WHEREAS, such real estate property interests owned or controlled by the City of Margate that are required for the Project include both municipal property and public right-of-ways, which extend from existing streets or streets depicted only on maps into the proposed Project area, as depicted on the attached survey shown in *Exhibit B*; and

2

WHEREAS, public officials of the City of Margate, in defiance of Executive Order No. 140, have refused to cooperate with the New Jersey Department of Environmental Protection Office of Flood Hazard Risk Reduction Measures in its efforts to obtain the necessary real property interests; and

WHEREAS, there is an immediate need for flood hazard risk reduction measures and the State has not been able to obtain the necessary municipal real property interests or the public right of ways from the City of Margate; and

WHEREAS, the immediate acquisition of the real property interests described in *Exhibit A* is necessary to commence construction of the Project in the City of Margate and the Borough of Longport, as well as to the continued protection of the public health, safety, and welfare of both communities; and

NOW THEREFORE, I, Bob Martin, Commissioner of the New Jersey Department of Environmental Protection, by virtue of the powers vested in me by the Constitution and statutes of this State, as well as the authority conferred on me by Executive Order No. 140, do hereby declare and order as follows:

1. The New Jersey Department of Environmental Protection Office of Flood Hazard Risk Reduction Measures hereby immediately enters upon and takes real property interest(s) in those parcels set forth in *Exhibit A*; and

2. An actual metes and bounds survey depicting the municipal real property interest(s) taken pursuant to this Administrative Order is attached hereto as *Exhibit B*; and

3. The nature of the real property interest(s) taken pursuant to this Administrative Order shall conform with those interest(s) described in the form Deed of Easement attached hereto as *Exhibit C* for the municipal property, as *Exhibit D* for the public right-of-ways, and as *Exhibit E* for temporary construction easements over municipal property, and

4. Appraisals and good faith negotiations for any compensation due to the City of Margate for such parcels for the interest(s) taken shall be undertaken in a manner not inconsistent with the procedures set out in the New Jersey Eminent Domain Act, N.J.S.A. 20:3-1 et seq. and applicable case law within a reasonable amount of time.

THIS ORDER shall take effect immediately.  All other Administrative Orders or portions thereof that are inconsistent herewith are hereby superseded or repealed to the extent of the inconsistency.  A copy of this Order shall be delivered by certified and regular mail to the City of Margate.

Dated: _10/1/2014_                                    By: _____
                                                          Bob Martin, Commissioner

STATE OF NEW JERSEY
COUNTY OF Mercer        SS.:

I CERTIFY that on _October 1_ 2014,

Bob Martin, Commissioner of the New Jersey Department of Environmental Protection, personally came before me and this person acknowledged under oath, to my satisfaction that this person:

1) is named in and personally signed this Administrative Order; and

2) signed, sealed and delivered this Administrative Order as his act and deed.

_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY

PARASKEVI VIVI GOGO
Notary Public
State of New Jersey
My Commission Expires 11/01/2014

4

# EXHIBIT A

| Public Parcels – Permanent Easement | | | |
|------|-----|-------------|------------------|
| Block | Lot | Description | Physical Address |
| 1.01 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 1.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 2.01 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 2.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.01 | 4 | S Clarendon Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.02 | 5 | S Clermont Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.02 | 11 | S Clarendon Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.03 | 1 | S Clarendon Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 4.01 | 5 | S Delavan Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 4.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 4.03 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 5.01 | 16 | S Douglas Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 5.03 | 1.01 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 6.01 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 6.02 | 14 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 6.03 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 7 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 7.01 | 14 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 7.02 | 14 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 8 | 2 | 8100 Beach Senior Building | 1 S Washington Ave. Margate City, NJ 08402 |
| 9 | 24 | S Huntington Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 10.05 | 31 | S Jerome Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 10.06 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 11.01 | 15 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 11.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 14.01 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 16 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 17 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 18 | 18 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 19 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 20 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 19.01 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 21 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 22 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 23 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 24 | 4 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 25 | 4 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 26 | 2 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 27.01 | 86 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 27.02 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 28.01 | 66 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 29.01 | 46 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 30.01 | 26 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 31.01 | 21 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 32.01 | 2 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 31.03 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| Undesignated Beach Area Adjacent to Block 24 Lot 4 | | | 1 S Washington Ave. Margate City, NJ 08402 |

Municipal Street Ends - Permanent Easement

Fredericksburg
Andover
Argyle
Barclay
Brunswick
Clarendon
Clermint
Delavan
Douglass
Exeter
Franklin
Frontenac
Gladstone
Granville
Huntington
Iroquois
Jerome
Knight
Kenyon
Lancaster
Mansfiled
Nassau
Osborne
Pembroke
Quincy
Rumson
Sumner
Thurlow
Union
Vendome
Cedar Grove
Benson
Decatour
Washington
Adams
Jefferson
Madison
Monroe
Coolidge
Surf

Municipal Properties - Temporary Easements

Easement Area 1:
Portion of Block 8 Lot 2 and Granville Avenue

Easement Area 2:
Portion of Delavan Avenue

# EXHIBIT B



July 22, 2014

     All that certain land and premises, situate, lying and being in the City of Margate, in the County of Atlantic and the State of New Jersey and more particularly described as follows:

     PARCEL E1, as indicated on a map entitled "NJ DEPARTMENT OF ENVIRONMENTAL PROTECTION, PERPETUAL EASEMENT PARCEL MAP, in the City of Margate from the Borough of Longport to the City of Ventnor, Showing Existing Lots, Right of Ways and Parcels to be Acquired in the City of Margate, Atlantic County, July 22, 2014"

     Parcel E1, including specifically all the land and premises more particularly described as follows:

Beginning at a point in the centerline of Fredericksburg Avenue and the Municipal Boundary of the City of Ventnor and the City of Margate as shown on the tax map of the City of Margate, Atlantic County, said point being at the intersection of the extended Northerly lot line of Lot 7 in Block 1.01 with said centerline and Municipal Boundary and running; Thence

1.  Along said Municipal Boundary of the City of Margate and the City of Ventnor, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 168.00 feet (scaled) to a point, corner to Lot 1 in Block 3.03; Thence
2.  Along the Southerly line of Lot 1, Block 3.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 1075.00 feet (scaled) to a point in the Easterly line of Lot 1 in Block 4.03; Thence
3.  Along the Easterly line of Lot 1 in Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 79.00 feet (scaled) to a point; Thence
4.  Along the Southerly line of Lot 1 in Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 525.00 feet (scaled) to a point in the Easterly line of Lot 1, Block 5.02; Thence
5.  Along said Easterly line of Lot 1, Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 2.00 feet (scaled) to a point; Thence
6.  Along the Southerly line of Lot 1, Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 125.00 feet (scaled) to a point; Thence
7.  Along the Southerly line of Lot 1, Block 6.03, South 57 Degrees 33 Minutes 34 Seconds West (scaled), a distance of 400.01 feet (scaled) to a point; Thence
8.  Along the Southerly line of Lot 1, Block 7, South 58 Degrees 09 Minutes 10 Seconds West (scaled), a distance of 1050.00 feet (scaled) to a point; Thence
9.  Along the Southerly line of Lot 1, Block 10.06, South 57 Degrees 51 Minutes 07 Seconds West (scaled), a distance of 1000.00 feet (scaled) to a point; Thence
10.  Along the Southerly line of Lot 1, Block 14.01, South 56 Degrees 24 Minutes 46 Seconds West (scaled), a distance of 367.86 feet (scaled) to a point; Thence
11.  Along the Southerly line of Lot 1, Block 14.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 695.00 feet (scaled) to a point; Thence
12.  Along the Westerly line of Lot 1, Block 14.01, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 10.01 feet (scaled) to a point; Thence
13.  Along the Southerly line of Lot 1, Block 19.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 1068.86 feet (scaled) to a point; Thence
14.  Along the Westerly line of Lot 1, Block 19.01, North 37 Degrees 43 Minutes 14 Seconds West (scaled), a distance of 13.48 feet (scaled) to a point; Thence
15.  Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 27 Minutes 23 Seconds West (scaled), a distance of 312.64 feet (scaled) to a point; Thence
16.  Along the Southerly line of Lot 1, Block 27.02, South 58 Degrees 48 Minutes 03 Seconds West (scaled), a distance of 155.64 feet (scaled) to a point; Thence
17.  Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 58 Minutes 30 Seconds West (scaled), a distance of 613.39 feet (scaled) to a point; Thence
18.  Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 41 Minutes 31 Seconds West (scaled), a distance of 250.40 feet (scaled) to a point; Thence
19.  Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 21 Minutes 57 Seconds West (scaled), a distance of 350.45 feet (scaled) to a point; Thence
20.  Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 28 Minutes 08 Seconds West (scaled), a distance of 250.00 feet (scaled) to a point; Thence
21.  Along the Southerly line of Lot 1, Block 27.02, South 49 Degrees 45 Minutes 23 Seconds West (scaled), a distance of 300.63 feet (scaled) to a point; Thence
22.  Along the Southerly line of Lot 1, Block 27.02, South 52 Degrees 08 Minutes 59 Seconds West (scaled), a distance of 113.10 feet (scaled) to a point in the Municipal Boundary of the Borough of Longport and the City of Margate; Thence
23.  Along said Municipal Boundary, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 310.00 feet (scaled) to a point; Thence
24.  Along the Northerly line of Lot 2, Block 32.01, crossing Coolidge Ave, along the Northerly line of Lot 21, Block 31.01, crossing Monroe Avenue, along the Northerly line of Lot 26, Block 30.01,

crossing Madison Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 713.07 feet (calculated) to a point in the Easterly line of Madison Avenue; Thence

25. Along said Easterly line of Madison Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 5.00 feet (calculated) to a point;

26. Along the Northerly line of Lot 46, Block 29.01, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

27. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 5.00 feet (calculated) to a point; Thence

28. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point in the Westerly line of Jefferson Avenue; Thence

29. Along said line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 3.19 feet (calculated) to a point; Thence

30. Crossing Jefferson Avenue, North 69 Degrees 39 Minutes 57 Seconds East (calculated), a distance of 52.07 feet (calculated) to a point in the Easterly line of Jefferson Avenue; Thence

31. Along said Easterly line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.85 feet (calculated) to a point; Thence

32. Along the Northerly line of Lot 66 Block 28.01, crossing Adams Avenue, running within bounds of Lot 86, Block 27.01, crossing Washington Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 612.00 feet (calculated) to a point in the Easterly line of Washington Avenue; Thence

33. Along said Easterly line of Washington Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 115.50 feet (calculated) to a point in the Northerly line of Surf Avenue; Thence

34. Along said Northerly line of Surf Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 105.50 feet (calculated) to a point; Thence

35. Along the Westerly line of Lot 2, Block 26, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 113.45 feet (calculated) to a point; Thence

36. Running within bounds of Lot 2, Block 26, crossing Decatur Avenue, Along the Northerly line of Lot 4, Block 25, crossing Benson Avenue, along the Northerly line of Lot 4, Block 24, North 53 Degrees 56 Minutes 10 Seconds East (calculated), a distance of 368.87 feet (calculated) to a point; Thence

37. Along the Northerly line of Lot 4, Block 24, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 38.66 feet (calculated) to a point; Thence

38. Running within bounds of Lot 4, Block 24, South 54 Degrees 04 Minutes 27 Seconds West (calculated), a distance of 26.32 feet (calculated) to a point; Thence

39. South 36 Degrees 00 Minutes 14 Seconds East (calculated), a distance of 75.44 feet (calculated) to a point; Thence

40. North 58 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 27.88 feet (calculated) to a point; Thence

41. North 53 Degrees 43 Minutes 54 Seconds East (calculated), a distance of 167.47 feet (calculated) to a point; Thence

42. North 51 Degrees 50 Minutes 07 Seconds East (calculated), a distance of 76.43 feet (calculated) to a point; Thence

43. Traversing within bounds of Lot 9, Block 23, North 53 Degrees 27 Minutes 38 Seconds East (calculated), a distance of 150.27 feet (calculated) to a point; Thence

44. Along the lot line common to Lots 9 and 10, Block 23, North 35 Degrees 27 Minutes 35 Seconds West (calculated), a distance of 6.72 feet (calculated) to a point; Thence

45. Along the Northerly line of Lot 9, Block 23, North 35 Degrees 01 Minutes 09 Seconds East (calculated), a distance of 82.33 feet (calculated) to a point; Thence

46. Crossing Vendome Avenue, North 52 Degrees 50 Minutes 55 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point in the Easterly line of Vendome Avenue; Thence

47. Along said easterly line of Vendome Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 9.59 feet (calculated) to a point; Thence

48. Along the Northerly line of Lot 9, Block 22, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 160.00 feet (calculated) to a point in the Westerly line of Union Avenue; Thence

49. Along said Westerly line of Union Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 8.64 feet (calculated) to a point; Thence

50. Crossing Union Avenue, along the Northerly line of Lot 9, Block 21, North 53 Degrees 50 Minutes 04 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

51. South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 7.00 feet (calculated) to a point; Thence

52. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 80.00 feet (calculated) to a point in the Westerly line of Thurlow Avenue; Thence

53. Crossing said Thurlow Avenue, North 58 Degrees 33 Minutes 19 Seconds East (calculated), a distance of 4.25 feet (calculated) to a point; Thence

54. North 31 Degrees 26 Minutes 41 Seconds West (calculated), a distance of 12.19 feet (calculated) to a point; Thence

55. Running within bounds of Thurlow Avenue and Lot 9, Block 20, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 204.68 feet (calculated) to a point in the Westerly line of Summer Avenue; Thence

56. Along said Westerly line of Summer Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 103.69 feet (calculated) to a point; Thence

57. Crossing said Summer Avenue and along the Northerly line of Lot 9, Block 19, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

58. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.29 feet (calculated) to a point; Thence

59. Running within bounds of Lot 9, Block 19 and Rumson Avenue, North 49 Degrees 25 Minutes 15 Seconds East (calculated), a distance of 87.05 feet (calculated) to a point; Thence

60. Within bounds of Rumson Avenue, South 37 Degrees 44 Minutes 47 Seconds East (calculated), a distance of 107.23 feet (calculated) to a point; Thence

61. North 51 Degrees 34 Minutes 03 Seconds East (calculated), a distance of 40.94 feet (calculated) to a point in the Easterly line of Rumson Avenue; Thence

62. Along said Easterly line of Rumson Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 30.35 feet (calculated) to a point; Thence

63. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 80.05 feet (calculated) to a point; Thence

64. Along the Easterly line of Lot 18 in Block 18, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 30.69 feet (calculated) to a point; Thence

65. Traversing within bounds of Lot 18, Block 18, North 51 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 5.73 feet (calculated) to a point; Thence

66. North 36 Degrees 36 Minutes 06 Seconds West (calculated), a distance of 63.04 feet (calculated) to a point; Thence

67. Continuing within bounds of Lot 18, Bloc 18, crossing Quincy Avenue, North 52 Degrees 09 Minutes 30 Seconds East (calculated), a distance of 134.37 feet (calculated) to a point in the Easterly line of Quincy Avenue; Thence

68. Traversing within Lot 17, Block 16, crossing Pembroke Avenue and running within bounds of Lot 9, Block 16, North 47 Degrees 48 Minutes 13 Seconds East (calculated), a distance of 371.81 feet (calculated) to a point in the Westerly line of Osborn Avenue; Thence

69. Along said line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 36.92 feet (calculated) to a point; Thence

70. Crossing Osborne Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

71. Along the Easterly line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 77.24 feet (calculated) to a point; Thence

72. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 160.10 feet (calculated) to a point; Thence

73. Along the Westerly line of Nassau Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 16.90 feet (calculated) to a point; Thence

74. Crossing Nassau Avenue, North 51 Degrees 00 Minutes 53 Seconds East (calculated), a distance of 50.05 feet (calculated) to a point; Thence

75. Along the Easterly line of Nassau Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 17.30 feet (calculated) to a point; Thence

76. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 115.68 feet (calculated) to a point; Thence

77. Along the Westerly line of Mansfield Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 16.81 feet (calculated) to a point; Thence

78. Crossing Mansfield Avenue, North 51 Degrees 23 Minutes 38 Seconds East (calculated), a distance of 50.33 feet (calculated) to a point; Thence

79. Along the Easterly line of Mansfield Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 16.88 feet (calculated) to a point; Thence

80. Along the Northerly line of Lot 1, Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

81. Along the Easterly line of Lancaster Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 11.66 feet (calculated) to a point; Thence

82. Crossing Lancaster Avenue, North 52 Degrees 42 Minutes 54 Seconds East (calculated), a distance of 50.21 feet (calculated) to a point; Thence

83. Along the Westerly line of Lancaster Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 10.56 feet (calculated) to a point; Thence

84. Along the Northerly line of Lot 1, Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

85. Along the Westerly line of Kenyon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 20.70 feet (calculated) to a point; Thence

86. Running within the right-of-way of Kenyon Avenue, North 49 Degrees 33 Minutes 30 Seconds East (calculated), a distance of 34.21 feet (calculated) to a point; Thence

87. North 31 Degrees 45 Minutes 28 Seconds West (calculated), a distance of 37.54 feet (calculated) to a point; Thence

88. North 56 Degrees 56 Minutes 07 Seconds East (calculated), a distance of 16.03 feet (calculated) to a point; Thence
89. Along the Easterly line of Kenyon Avenue, North 32 Degrees 02 Minutes 38 Seconds West (calculated), a distance of 67.15 feet (calculated) to a point; Thence
90. Traversing within bounds of Lot 7 Block 11.02, North 57 Degrees 52 Minutes 17 Seconds East (calculated), a distance of 63.38 feet (calculated) to a point; Thence
91. North 29 Degrees 17 Minutes 58 Seconds West (calculated), a distance of 3.37 feet (calculated) to a point; Thence
92. North 57 Degrees 40 Minutes 13 Seconds East (calculated), a distance of 61.47 feet (calculated) to a point; Thence
93. Along the Westerly line of Knight Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.42 feet (calculated) to a point; Thence
94. Crossing Knight Avenue and running within bounds of Lot 15, Block 11.01, North 57 Degrees 44 Minutes 52 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence
95. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 22.93 feet (calculated) to a point; Thence
96. Crossing Jerome Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence
97. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 7.63 feet (calculated) to a point; Thence
98. Along the Northerly line of Lot 15, Block 10.05, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence
99. Along the Westerly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 8.63 feet (calculated) to a point; Thence
100. Crossing Iroquois Ave, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence
101. Along the Easterly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 24.37 feet (calculated) to a point; Thence
102. Along the Northerly line of Lot 24, Block 9, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence
103. Along the Huntington Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 71.78 feet (calculated) to a point; Thence
104. Crossing Huntington Avenue and running along the Northerly line of Lot 2, Block 8, North 58 Degrees 03 Minutes 26 Seconds East (calculated), a distance of 350.00 feet (calculated) to a point; Thence
105. Along the Westerly line of Granville Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 45.19 feet (calculated) to a point; Thence
106. Traversing within bounds of the right-of-way of Granville Ave, North 58 Degrees 01 Minutes 30 Seconds East (calculated), a distance of 38.75 feet (calculated) to a point; Thence
107. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.85 feet (calculated) to a point; Thence
108. Continuing within Granville Avenue and along the Northerly line of Lot 14, Block 7.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 136.25 feet (calculated) to a point; Thence
109. Along the Westerly line of Gladstone Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.44 feet (calculated) to a point; Thence
110. Crossing Gladstone Avenue, North 58 Degrees 37 Minutes 08 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence
111. Along the Westerly line of Gladstone Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 0.99 feet (calculated) to a point; Thence
112. Along the Northerly line of Lot 14, Block 7.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence
113. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.77 feet (calculated) to a point; Thence
114. North 57 Degrees 59 Minutes 06 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence
115. Along the Westerly line of Frontenac Avenue, South 32 Degrees 06 Minutes 25 Seconds East (calculated), a distance of 4.66 feet (calculated) to a point; Thence
116. Traversing within the right-of-way of Frontenac Avenue, within bounds of Lot 14, Block 6.02, within right-of-way of Franklin Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 224.99 feet (calculated) to a point; Thence
117. Along the Easterly line of Franklin Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.89 feet (calculated) to a point; Thence
118. Along the Northerly line of Lot 7, Block 6.01 and within the right-of way of Exeter Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 135.69 feet (calculated) to a point; Thence
119. Traversing within Exeter Avenue and Lot 1, Block 6.03, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 130.59 feet (calculated) to a point; Thence

120. Running within bounds of Lot 1, Block 6.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 39.31 feet (calculated) to a point; Thence

121. Along the Westerly line of Lot 1.01, Block 5.02, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.59 feet (calculated) to a point; Thence

122. Along the Northerly line of Lot 1.01, Block 5.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

123. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.67 feet (calculated) to a point; Thence

124. Running within bounds of Lot 1, Block 4.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

125. Continuing within Lot , Block 4.03 and along the Easterly line of Lot 16, Block 5.01, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 79.67 feet (calculated) to a point; Thence

126. Along the Northerly line of Lot 16, Block 5.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

127. Along the Easterly line of Douglass Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.40 feet (calculated) to a point; Thence

128. Crossing Douglass Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

129. Along the Easterly line of Douglass Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 54.40 feet (calculated) to a point; Thence

130. Along the Northerly line of Lot 7, Block 4.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

131. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.00 feet (calculated) to a point; Thence

132. North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

133. Along the Westerly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.35 feet (calculated) to a point; Thence

134. Crossing Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

135. Along the Easterly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 84.65 feet (calculated) to a point; Thence

136. Along the Northerly line of Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

137. Running within the right-of-way of Clermont Avenue, North 44 Degrees 57 Minutes 26 Seconds East (calculated), a distance of 42.85 feet (calculated) to a point; Thence

138. Continuing within right-of-way of Clermont Avenue and within bounds of Lot 5, Block 3.02, North 57 Degrees 41 Minutes 33 Seconds East (calculated), a distance of 70.76 feet (calculated) to a point; Thence

139. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.97 feet (calculated) to a point; Thence

140. Along the Northerly line of Lot 5, Block 3.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

141. Along the Westerly line of Clarendon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 50.00 feet (calculated) to a point; Thence

142. Crossing Clarendon Avenue and along the Northerly line of Lot 4, Block 3.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

143. Along the Westerly line of Brunswick Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 53.76 feet (calculated) to a point; Thence

144. Crossing Brunswick Avenue and traversing within bounds of Lot 7, Block 2.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 112.50 feet (calculated) to a point; Thence

145. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 29.57 feet (calculated) to a point; Thence

146. Along the easterly line of Lot 7, Block 2.02, South 57 Degrees 59 Minutes 21 Seconds West (calculated), a distance of 6.00 feet (calculated) to a point; Thence

147. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 72.67 feet (calculated) to a point; Thence

148. Along the Northerly line of Lot 7, Block 2.02 and crossing Barclay Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 118.50 feet (calculated) to a point; Thence

149. Along the Easterly line of Barclay Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 6.00 feet (calculated) to a point; Thence

150. Along the Northerly line o Lot 7, Block 2.01, crossing Argyle Avenue, along the Northerly line of Lot 7, Block 1.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

151. Along the Westerly line of Andover Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 3.00 feet (calculated) to a point; Thence

152.    Crossing Andover Avenue, along the Northerly line of Lot 7, Block 1.01 and traversing within Fredericksburg Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 200.00 feet (calculated) to the point and place of beginning.

Containing 45.511 Acres more or less.

Being also known as part of Frederick Avenue, Lot 7, Block 1.01, part of Andover Avenue, Lot 7, Block 1.02, part of Argyle Avenue, Lot 7 Block 2.01, part of Barclay Avenue, part of Lot 7, Block 2.02, part of Brunswick Avenue, Lot 4, Block 3.01, part of Clarendon Avenue, part of lot 5, Block 3.02, Lot 1, Block 3.03, part of lot Clermont Avenue, Lot 5, Block 4.01, part of Delavan Avenue, Lot 7, Block 4.02, part of Lot 1, Block 4.03, part of Douglass Avenue, Lot 16, Block 5.01, Lot 1.01, Block 5.02, part of Exeter Avenue, Lot 7, Block 6.01, part of Franklin Avenue, part of Lot 14, Block 6.02, part of lot 1, Block 6.03, part of Frontenac Avenue, Lot 1 , Block 7, Lot 14, Block 7.01, part of Gladstone Avenue, Lot 14, Block 7.02, part of Granville Avenue, part of Lot 2, Block 8, part of Huntington Avenue, Lot 24, Block 9, part of Iroquois Avenue, Lot 15, Block 10.05, Lot 1, Block 10.06, part of Jerome Avenue, part of Lot 15, Block 11.01, part of Knight Avenue, part of Lot 7, Block 11.02, part of Kenyon Avenue, part of Lancaster Avenue, part of Mansfield Avenue, part of Nassau Avenue, part of Osborne Avenue, Lot 1, Block 14.01, part of Lot 9, Block 16, part of Pembroke Avenue, part of Lot 9, Block 17, part of Quincy Avenue, part of Lot 18, Block 18, part of Rumson Avenue, part of Lot 9, Block 19, Lot 1, Block 19.01, part of Summer Avenue, part of Lot 9, Block 20, part of Thurlow Avenue, Lot 9, Block 21, part of Union Avenue, Lot 9, Block 22, part of Vendome Avenue, part of Lot 9, Block 23, part of Lot 4, Block 24, part of Benson Avenue, part of Lot 4, Block 25, part of Decatur Avenue, part of Lot 2, Block 26, part of Washington Avenue, part of Lot 86, Block 27.01, part of Adams Avenue, part of Lot 1, Block 27.02, Lot 66, Block 28.01, part of Jefferson Avenue, Lot  46, Block 29.01, part of Madison Avenue, Lot 26, Block 30.01, part of Monroe Avenue, Lot 21, Block 31.01, Lot 1, Block 31.03, part of Coolidge Avenue, Lot 2, Block 32.01, and Surf Avenue on the Tax Map of the City of Margate, Atlantic County

TOGETHER WITH the two (2) "Temporary Construction Area Easements" as shown on the aforesaid map and more particular described as follows:

Temporary Construction Area Easement #1

Beginning at a point in the Westerly line of Granville Avenue, said point being located 184.73 feet from the intersection of the Southerly line of Atlantic Avenue and said Westerly line of Granville Avenue and running; Thence

1.    Traversing within bounds of the right-of-way of Granville Avenue, North 58 Degrees 41 Minutes 30 Seconds East, a distance of 13.44 feet to a point; Thence
2.    North 59 Degrees 10 Minutes 55 Seconds East, a distance of 27.15 feet to a point; Thence
3.    South 33 Degrees 17 Minutes 02 Seconds East, a distance of 114.56 feet to a point; Thence
4.    South 57 Degrees 59 Minutes 21 Seconds West, a distance of 4.38 feet to a point; Thence
5.    South 32 Degrees 00 Minutes 39 Seconds East, a distance of 3.85 feet to a point; Thence
6.    South 58 Degrees 01 Minutes 30 Seconds West, a distance of 38.75 feet to a point in the Westerly line of Granville Avenue; Thence
7.    Along said Westerly line of Granville Avenue, North 32 Degrees 00 Minutes 39 Seconds West, a distance of 119.09 feet to the point and place of beginning.

Containing 4,959 S.F. or 0.114 Acres more or less.

Temporary Construction Area Easement #2

Beginning at a point in the Easterly line of Delavan Avenue, said point being located 220.30 feet from the intersection of the Southerly line of Atlantic Avenue and said Easterly line of Delavan Avenue and running; Thence

1.    Along said Easterly line of Delavan Avenue, South 32 Degrees 00 Minutes 39 Seconds East, a distance of 80.35 feet to a point; Thence
2.    Traversing within the right-of-way of Delavan Avenue, South 57 Degrees 59 Minutes 21 Seconds West, a distance of 42.85 feet to a point; Thence
3.    North 30 Degrees 57 Minutes 34 Seconds West, a distance of 80.44 feet to a point; Thence
4.    North 58 Degrees 05 Minutes 45 Seconds East, a distance of 41.37 feet to the point and place of beginning.

Containing 3,385 S.F. or 0.078 Acres more or less.

# EXHIBIT C

Prepared by:
State of New Jersey
Office of the Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625

---

### DEED OF DEDICATION AND PERPETUAL STORM

### DAMAGE REDUCTION EASEMENT

THIS DEED OF DEDICATION AND PERPETUAL STORM DAMAGE REDUCTION EASEMENT is made this _____ day of _____ 2014 BY AND

BETWEEN

whose address is

referred to herein as Grantor,

AND

**THE STATE OF NEW JERSEY** referred to herein collectively as the Grantee,

### WITNESSETH

WHEREAS, Grantor is the owner of that certain tract of land, located in the City of Margate, County of Atlantic, State of New Jersey, and identified as those Blocks and Lots listed in Appendix A, on the official tax map of the City of Margate, hereinafter the "Property," and Grantor holds the requisite interest to grant this Deed of Easement; and

WHEREAS, the Grantee recognizes that the beach at the City of Margate, New Jersey is subject to constant erosion and degradation, thereby destroying a valuable natural resource and threatening the safety and property of the Grantor and of all of the citizens of the State; and,

WHEREAS, the Grantee desires to participate with the United States Army Corps of Engineers to construct **Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island, New Jersey, Hurricane and Storm Damage Reduction Project**, as defined in the June 23, 2014 Project Partnership Agreement between the Department of the Army and the State of New Jersey, hereinafter "Project"; and,

WHEREAS, construction of the Project includes periodic renourishment, which may be performed solely by the Grantee or in conjunction with the United States Army Corps of Engineers; and,

WHEREAS, in order to accomplish part of the Project, Grantee needs a Perpetual Storm Damage Reduction Easement on portions of said Property herein described; and,

[1]

**WHEREAS**, the United States Army Corps of Engineers will not participate in the Project unless the Grantee acquires the real property interest herein described in all real property needed for the Project; and,

**WHEREAS**, the Grantee shall instruct the City of Margate to consider this Deed of Easement in establishing the full assessed value of any lands subject to such restriction; and

**WHEREAS**, the Grantor desires to cooperate in allowing the Project to take place on a portion of said Property; and,

**WHEREAS**, the Grantor acknowledges that it will benefit from the successful implementation of the Project; and,

**WHEREAS**, the Grantor acknowledges that after successful implementation of the Project the beach and dune are still subject to the forces of nature which can result in both erosion and accretion of the beach and dune; and,

**NOW, THEREFORE**, in consideration for the benefits to be received by the Grantor from the successful implementation of the Project, the Grantor grants and conveys to Grantee an irrevocable, assignable, perpetual and permanent easement as set forth herein:

**GRANT OF EASEMENT**: A perpetual and assignable easement and right-of-way for the Brigantine Inlet to Great Egg Harbor Inlet — Absecon Island, New Jersey, Hurricane and Storm Damage Reduction Project, in, on, over and across that land of the municipal Property described as **Block(s)** ___, **Lot(s)** ___ listed in Appendix A and depicted on the map entitled "Perpetual Easement Parcel Map In the City of Margate" dated July 22, 2014 as prepared by Consulting Engineering Services which is attached as Appendix B for use by the State of New Jersey and its representatives, agents, contractors and assigns to:

a. Construct, preserve, patrol, operate, maintain, repair, rehabilitate, and replace a public beach, dune system, and other erosion control and storm damage reduction measures together with appurtenances thereto, including the right to deposit sand, to accomplish any alterations of the contours on said land, to construct berms and dunes, and to nourish and re-nourish periodically;

b. Move, temporarily store and remove equipment and supplies;

c. Erect and remove temporary structures;

d. Perform any other work necessary and incident to the construction, periodic renourishment, and maintenance of the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island Initial Construction Project together with the right of public use and access;

e. Post signs and plant vegetation on said dunes and berms;

f. Erect, maintain, and remove silt screens and snow fences;

g. Facilitate preservation of dune and vegetation through the limitation of public access to dune areas;

[2]

h. Trim, cut, fell, and remove from said land all trees, underbrush, debris, obstructions, and any other vegetation, structures, and obstacles within the limits of the easement;

The easement reserves to the Grantor, the Grantor's heirs, successors and assigns the right to construct a private dune overwalk structure in accordance with any applicable Federal, State, or local laws or regulations, provided that such structure shall not violate the integrity of the dune in shape, dimension, or function. Prior approval of the plans and specifications for such structures must be obtained from the City of Margate and the State of New Jersey. Such structures are to be considered subordinate to the construction, operation, maintenance, repair, rehabilitation, and replacement of the project. The easement reserves to the Grantor, the Grantor's heirs, successors, and assigns all such rights and privileges as may be used and enjoyed without interfering with or abridging the rights and easements hereby conveyed to the Grantee, subject however to existing easements for utilities and pipelines, existing public highways, existing paved public roads and existing public streets. Grantor hereby expressly agrees not to grade or excavate within the easement area or to place therein any structure or material other than a dune walkover as referenced above without prior approval of the plans and specifications for said activities from the City of Margate, the State of New Jersey and/or any applicable Federal agency, as required.

**Duration of Easement:** The easement granted hereby shall be in perpetuity, and in the event that the State of New Jersey shall become merged with any other geo-political entity or entities, the easement granted hereby shall run in favor of surviving entities. The covenants, terms, conditions and restrictions of this Deed of Easement shall be binding upon, and inure to the benefit of the parties hereto and their respective personal representatives, heirs, successors and assigns and shall continue as a servitude running in perpetuity with the land.

**Grantee or its Assign(s) to Maintain Beach:** The Grantee agrees, consistent with all Federal, State and local statutes and regulations, that at all times it or one of its assigns shall use its best, good-faith efforts to cause the beach area abutting Grantor's lands to be maintained, consistent with any applicable Federal, State or local laws or regulations, notwithstanding any action or inaction of the United States Army Corps of Engineers to maintain the beach area.

**Character of Property:** Notwithstanding the foregoing, nothing herein is intended or shall be deemed to change the overall character of the Property as municipal property; nothing herein shall be deemed to grant to the Grantee or otherwise permit the Grantee or any other person to cross over or use any part of the Property which is not within the Easement Area; nothing herein is intended or shall be deemed to alter the boundary lines or setback lines of the Property.

**Miscellaneous:**

1. The enforcement of the terms of this Easement shall be at the discretion of the Grantee and any forbearance by Grantee to exercise its rights under this Easement in the event of any

[3]

violation by Grantor shall not be deemed or construed to be a waiver by Grantee of such term or of any subsequent violation or of any of Grantee's rights under this Easement.  No delay or omission by Grantee in the exercise of any right or remedy upon any violation by Grantor shall impair such rights or remedies or be construed as a waiver of such rights or remedies.

2.  The interpretation and performance of this Deed of Easement shall be governed by the laws of the State of New Jersey.

3.  If any provision of this Deed of Easement or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Easement or the application of such provision to persons or circumstances other than those to which it is found to be invalid, as the case may be, shall not be affected thereby.

4.  Any notice, demand, request, consent, approval or communication under this Deed of Easement shall be sent by regular first class mail, postage prepaid and by Certified Mail, Return Receipt Requested, addressed to the mailing addresses set forth above or any other address of which the relocating party shall notify the other, in writing.

5. The captions in this Deed of Easement have been inserted solely for convenience of reference and are not a part of this instrument and shall have no effect upon its construction or interpretation.

6. Structures not preexisting or part of the project are not authorized.

7. Grantor represents and warrants he/she/it holds the requisite ownership interest and authority to execute this Deed of Easement; and has made this Deed of Easement for the full and actual consideration as set forth herein.

8. This Deed may be executed in counterparts by the respective Parties, which together will constitute the original Deed.

[4]

**IN WITNESS WHEREOF,** with the parties understanding and agreeing to the above, they do hereby place their signatures on the date at the top of the first page.

Accepted by the                           Witnessed by:
**CITY OF MARGATE, GRANTOR**

_____              _____
MICHAEL BECKER, MAYOR,                NOTARY PUBLIC OF THE
GRANTOR                               STATE OF NEW JERSEY

Date _____


STATE OF NEW JERSEY

COUNTY OF _____ SS.:

I CERTIFY that on _____ 2013,

[INSERT GRANTOR(S) NAME(S)]

personally came before me and this person acknowledged under oath, to my satisfaction that this person (or if more than one, each person):

1) is named in and personally signed this Deed of Easement; and

2) signed, sealed and delivered this Deed of Easement as his or her act and deed.

_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY


Accepted by the                           Witnessed by:

**STATE OF NEW JERSEY, GRANTEE**

BY:_____
Dave Rosenblatt                      _____
Administrator                        NOTARY PUBLIC OF THE
Office of Flood Risk Reduction Measures   STATE OF NEW JERSEY

Date _____

[5]

# Appendix A

| Public Parcels - Permanent Easement | | | |
|---|---|---|---|
| Block | Lot | Description | Physical Address |
| 1.01 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 1.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 2.01 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 2.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.01 | 4 | S Clarendon Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.02 | 5 | S Clermont Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.02 | 11 | S Clarendon Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 3.03 | 1 | S Clarendon Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 4.01 | 5 | S Delavan Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 4.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 4.03 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 5.01 | 16 | S Douglas Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 5.03 | 1.01 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 6.01 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 6.02 | 14 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 6.03 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 7 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 7.01 | 14 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 7.02 | 14 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 8 | 2 | 8100 Beach Senior Building | 1 S Washington Ave. Margate City, NJ 08402 |
| 9 | 24 | S Huntington Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 10.05 | 31 | S Jerome Ave. | 1 S Washington Ave. Margate City, NJ 08402 |
| 10.06 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 11.01 | 15 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 11.02 | 7 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 14.01 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 16 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 17 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 18 | 18 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 19 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 20 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 19.01 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 21 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 22 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 23 | 9 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 24 | 4 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 25 | 4 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 26 | 2 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 27.01 | 86 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 27.02 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 28.01 | 66 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 29.01 | 46 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 30.01 | 26 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 31.01 | 21 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 32.01 | 2 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| 31.03 | 1 | Public Beach | 1 S Washington Ave. Margate City, NJ 08402 |
| Undesignated Beach Area Adjacent to Block 24 Lot 4 | | | 1 S Washington Ave. Margate City, NJ 08402 |

# Appendix B



July 22, 2014

All that certain land and premises, situate, lying and being in the City of Margate, in the County of Atlantic and the State of New Jersey and more particularly described as follows:

PARCEL E1, as indicated on a map entitled "NJ DEPARTMENT OF ENVIRONMENTAL PROTECTION, PERPETUAL EASEMENT PARCEL MAP, in the City of Margate from the Borough of Longport to the City of Ventnor, Showing Existing Lots, Right of Ways and Parcels to be Acquired in the City of Margate, Atlantic County, July 22, 2014"

Parcel E1, including specifically all the land and premises more particularly described as follows:

Beginning at a point in the centerline of Fredericksburg Avenue and the Municipal Boundary of the City of Ventnor and the City of Margate as shown on the tax map of the City of Margate, Atlantic County, said point being at the intersection of the extended Northerly lot line of Lot 7 in Block 1.01 with said centerline and Municipal Boundary and running; Thence

1. Along said Municipal Boundary of the City of Margate and the City of Ventnor, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 168.00 feet (scaled) to a point, corner to Lot 1 in Block 3.03; Thence
2. Along the Southerly line of Lot 1, Block 3.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 1075.00 feet (scaled) to a point in the Easterly line of Lot 1 in Block 4.03; Thence
3. Along the Easterly line of Lot 1 in Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 79.00 feet (scaled) to a point; Thence
4. Along the Southerly line of Lot 1 in Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 525.00 feet (scaled) to a point in the Easterly line of Lot 1, Block 5.02; Thence
5. Along said Easterly line of Lot 1, Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 2.00 feet (scaled) to a point; Thence
6. Along the Southerly line of Lot 1, Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 125.00 feet (scaled) to a point; Thence
7. Along the Southerly line of Lot 1, Block 6.03, South 57 Degrees 33 Minutes 34 Seconds West (scaled), a distance of 400.01 feet (scaled) to a point; Thence
8. Along the Southerly line of Lot 1, Block 7, South 58 Degrees 09 Minutes 10 Seconds West (scaled), a distance of 1050.00 feet (scaled) to a point; Thence
9. Along the Southerly line of Lot 1, Block 10.06, South 57 Degrees 51 Minutes 07 Seconds West (scaled), a distance of 1000.00 feet (scaled) to a point; Thence
10. Along the Southerly line of Lot 1, Block 14.01, South 56 Degrees 24 Minutes 46 Seconds West (scaled), a distance of 367.86 feet (scaled) to a point; Thence
11. Along the Southerly line of Lot 1, Block 14.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 695.00 feet (scaled) to a point; Thence
12. Along the Westerly line of Lot 1, Block 14.01, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 10.01 feet (scaled) to a point; Thence
13. Along the Southerly line of Lot 1, Block 19.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 1068.86 feet (scaled) to a point; Thence
14. Along the Westerly line of Lot 1, Block 19.01, North 37 Degrees 43 Minutes 14 Seconds West (scaled), a distance of 13.48 feet (scaled) to a point; Thence
15. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 27 Minutes 23 Seconds West (scaled), a distance of 312.64 feet (scaled) to a point; Thence
16. Along the Southerly line of Lot 1, Block 27.02, South 58 Degrees 48 Minutes 03 Seconds West (scaled), a distance of 155.64 feet (scaled) to a point; Thence
17. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 58 Minutes 30 Seconds West (scaled), a distance of 613.39 feet (scaled) to a point; Thence
18. Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 41 Minutes 31 Seconds West (scaled), a distance of 250.40 feet (scaled) to a point; Thence
19. Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 21 Minutes 57 Seconds West (scaled), a distance of 350.45 feet (scaled) to a point; Thence
20. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 28 Minutes 08 Seconds West (scaled), a distance of 250.00 feet (scaled) to a point; Thence
21. Along the Southerly line of Lot 1, Block 27.02, South 49 Degrees 45 Minutes 23 Seconds West (scaled), a distance of 300.63 feet (scaled) to a point; Thence
22. Along the Southerly line of Lot 1, Block 27.02, South 52 Degrees 08 Minutes 59 Seconds West (scaled), a distance of 113.10 feet (scaled) to a point in the Municipal Boundary of the Borough of Longport and the City of Margate; Thence
23. Along said Municipal Boundary, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 310.00 feet (scaled) to a point; Thence
24. Along the Northerly line of Lot 2, Block 32.01, crossing Coolidge Ave, along the Northerly line of Lot 21, Block 31.01, crossing Monroe Avenue, along the Northerly line of Lot 26, Block 30.01,

      crossing Madison Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 713.07 feet (calculated) to a point in the Easterly line of Madison Avenue; Thence

25. Along said Easterly line of Madison Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 5.00 feet (calculated) to a point; Thence

26. Along the Northerly line of Lot 46, Block 29.01, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

27. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 5.00 feet (calculated) to a point; Thence

28. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point in the Westerly line of Jefferson Avenue; Thence

29. Along said line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 3.19 feet (calculated) to a point; Thence

30. Crossing Jefferson Avenue, North 69 Degrees 39 Minutes 57 Seconds East (calculated), a distance of 52.07 feet (calculated) to a point in the Easterly line of Jefferson Avenue; Thence

31. Along said Easterly line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.85 feet (calculated) to a point; Thence

32. Along the Northerly line of Lot 66 Block 28.01, crossing Adams Avenue, running within bounds of Lot 86, Block 27.01, crossing Washington Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 612.00 feet (calculated) to a point in the Easterly line of Washington Avenue; Thence

33. Along said Easterly line of Washington Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 115.50 feet (calculated) to a point in the Northerly line of Surf Avenue; Thence

34. Along said Northerly line of Surf Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 105.50 feet (calculated) to a point; Thence

35. Along the Westerly line of Lot 2, Block 26, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 113.45 feet (calculated) to a point; Thence

36. Running within bounds of Lot 2, Block 26, crossing Decatur Avenue, Along the Northerly line of Lot 4, Block 25, crossing Benson Avenue, along the Northerly line of Lot 4, Block 24, North 53 Degrees 56 Minutes 10 Seconds East (calculated), a distance of 368.87 feet (calculated) to a point; Thence

37. Along the Northerly line of Lot 4, Block 24, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 38.66 feet (calculated) to a point; Thence

38. Running within bounds of Lot 4, Block 24, South 54 Degrees 04 Minutes 27 Seconds West (calculated), a distance of 26.32 feet (calculated) to a point; Thence

39. South 36 Degrees 00 Minutes 14 Seconds East (calculated), a distance of 75.44 feet (calculated) to a point; Thence

40. North 58 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 27.88 feet (calculated) to a point; Thence

41. North 53 Degrees 43 Minutes 54 Seconds East (calculated), a distance of 167.47 feet (calculated) to a point; Thence

42. North 51 Degrees 50 Minutes 07 Seconds East (calculated), a distance of 76.43 feet (calculated) to a point; Thence

43. Traversing within bounds of Lot 9, Block 23, North 53 Degrees 27 Minutes 38 Seconds East (calculated), a distance of 150.27 feet (calculated) to a point; Thence

44. Along the lot line common to Lots 9 and 10, Block 23, North 35 Degrees 27 Minutes 35 Seconds West (calculated), a distance of 6.72 feet (calculated) to a point; Thence

45. Along the Northerly line of Lot 9, Block 23, North 35 Degrees 01 Minutes 09 Seconds East (calculated), a distance of 82.33 feet (calculated) to a point; Thence

46. Crossing Vendome Avenue, North 52 Degrees 50 Minutes 55 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point in the Easterly line of Vendome Avenue; Thence

47. Along said easterly line of Vendome Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 9.59 feet (calculated) to a point; Thence

48. Along the Northerly line of Lot 9, Block 22, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 160.00 feet (calculated) to a point in the Westerly line of Union Avenue; Thence

49. Along said Westerly line of Union Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 8.64 feet (calculated) to a point; Thence

50. Crossing Union Avenue, along the Northerly line of Lot 9, Block 21, North 53 Degrees 50 Minutes 04 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

51. South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 7.00 feet (calculated) to a point; Thence

52. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 80.00 feet (calculated) to a point in the Westerly line of Thurlow Avenue; Thence

53. Crossing said Thurlow Avenue, North 58 Degrees 33 Minutes 19 Seconds East (calculated), a distance of 4.25 feet (calculated) to a point; Thence

54. North 31 Degrees 26 Minutes 41 Seconds West (calculated), a distance of 12.19 feet (calculated) to a point; Thence

55. Running within bounds of Thurlow Avenue and Lot 9, Block 20, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 204.68 feet (calculated) to a point in the Westerly line of Summer Avenue; Thence

56. Along said Westerly line of Summer Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 103.69 feet (calculated) to a point; Thence

57. Crossing said Summer Avenue and along the Northerly line of Lot 9, Block 19, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

58. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.29 feet (calculated) to a point; Thence

59. Running within bounds of Lot 9, Block 19 and Rumson Avenue, North 49 Degrees 25 Minutes 15 Seconds East (calculated), a distance of 87.05 feet (calculated) to a point; Thence

60. Within bounds of Rumson Avenue, South 37 Degrees 44 Minutes 47 Seconds East (calculated), a distance of 107.23 feet (calculated) to a point; Thence

61. North 51 Degrees 34 Minutes 03 Seconds East (calculated), a distance of 40.94 feet (calculated) to a point in the Easterly line of Rumson Avenue; Thence

62. Along said Easterly line of Rumson Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 30.35 feet (calculated) to a point; Thence

63. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 80.05 feet (calculated) to a point; Thence

64. Along the Easterly line of Lot 18 in Block 18, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 30.69 feet (calculated) to a point; Thence

65. Traversing within bounds of Lot 18, Block 18, North 51 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 5.73 feet (calculated) to a point; Thence

66. North 36 Degrees 36 Minutes 06 Seconds West (calculated), a distance of 63.04 feet (calculated) to a point; Thence

67. Continuing within bounds of Lot 18, Bloc 18, crossing Quincy Avenue, North 52 Degrees 09 Minutes 30 Seconds East (calculated), a distance of 134.37 feet (calculated) to a point in the Easterly line of Quincy Avenue; Thence

68. Traversing within Lot 9, Block 17, crossing Pembroke Avenue and running within bounds of Lot 9, Block 16, North 47 Degrees 48 Minutes 13 Seconds East (calculated), a distance of 371.81 feet (calculated) to a point in the Westerly line of Osborn Avenue; Thence

69. Along said line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 36.92 feet (calculated) to a point; Thence

70. Crossing Osborne Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

71. Along the Easterly line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 77.24 feet (calculated) to a point; Thence

72. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 160.10 feet (calculated) to a point; Thence

73. Along the Westerly line of Nassau Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 16.90 feet (calculated) to a point; Thence

74. Crossing Nassau Avenue, North 51 Degrees 00 Minutes 53 Seconds East (calculated), a distance of 50.05 feet (calculated) to a point; Thence

75. Along the Easterly line of Nassau Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 17.30 feet (calculated) to a point; Thence

76. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 115.68 feet (calculated) to a point; Thence

77. Along the Westerly line of Mansfield Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 16.81 feet (calculated) to a point; Thence

78. Crossing Mansfield Avenue, North 51 Degrees 23 Minutes 38 Seconds East (calculated), a distance of 50.33 feet (calculated) to a point; Thence

79. Along the Easterly line of Mansfield Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 16.88 feet (calculated) to a point; Thence

80. Along the Northerly line of Lot 1, Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

81. Along the Easterly line of Lancaster Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 11.66 feet (calculated) to a point; Thence

82. Crossing Lancaster Avenue, North 52 Degrees 42 Minutes 54 Seconds East (calculated), a distance of 50.21 feet (calculated) to a point; Thence

83. Along the Westerly line of Lancaster Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 10.56 feet (calculated) to a point; Thence

84. Along the Northerly line of Lot 1, Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

85. Along the Westerly line of Kenyon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 20.70 feet (calculated) to a point; Thence

86. Running within the right-of-way of Kenyon Avenue, North 49 Degrees 33 Minutes 30 Seconds East (calculated), a distance of 34.21 feet (calculated) to a point; Thence

87. North 31 Degrees 45 Minutes 28 Seconds West (calculated), a distance of 37.54 feet (calculated) to a point; Thence

88. North 56 Degrees 56 Minutes 07 Seconds East (calculated), a distance of 16.03 feet (calculated) to a point; Thence
89. Along the Easterly line of Kenyon Avenue, North 32 Degrees 02 Minutes 38 Seconds West (calculated), a distance of 67.15 feet (calculated) to a point; Thence
90. Traversing within bounds of Lot 7 Block 11.02, North 57 Degrees 52 Minutes 17 Seconds East (calculated), a distance of 63.38 feet (calculated) to a point; Thence
91. North 29 Degrees 17 Minutes 58 Seconds West (calculated), a distance of 3.37 feet (calculated) to a point; Thence
92. North 57 Degrees 40 Minutes 13 Seconds East (calculated), a distance of 61.47 feet (calculated) to a point; Thence
93. Along the Westerly line of Knight Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.42 feet (calculated) to a point; Thence
94. Crossing Knight Avenue and running within bounds of Lot 15, Block 11.01, North 57 Degrees 44 Minutes 52 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence
95. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 22.93 feet (calculated) to a point; Thence
96. Crossing Jerome Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence
97. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 7.63 feet (calculated) to a point; Thence
98. Along the Northerly line of Lot 15, Block 10.05, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence
99. Along the Westerly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 8.63 feet (calculated) to a point; Thence
100. Crossing Iroquois Ave, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence
101. Along the Easterly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 24.37 feet (calculated) to a point; Thence
102. Along the Northerly line of Lot 24, Block 9, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence
103. Along the Huntington Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 71.78 feet (calculated) to a point; Thence
104. Crossing Huntington Avenue and running along the Northerly line of Lot 2, Block 8, North 58 Degrees 03 Minutes 26 Seconds East (calculated), a distance of 350.00 feet (calculated) to a point; Thence
105. Along the Westerly line of Granville Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 45.19 feet (calculated) to a point; Thence
106. Traversing within bounds of the right-of-way of Granville Ave, North 58 Degrees 01 Minutes 30 Seconds East (calculated), a distance of 38.75 feet (calculated) to a point; Thence
107. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.85 feet (calculated) to a point; Thence
108. Continuing within Granville Avenue and along the Northerly line of Lot 14, Block 7.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 136.25 feet (calculated) to a point; Thence
109. Along the Westerly line of Gladstone Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.44 feet (calculated) to a point; Thence
110. Crossing Gladstone Avenue, North 58 Degrees 37 Minutes 08 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence
111. Along the Westerly line of Gladstone Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 0.99 feet (calculated) to a point; Thence
112. Along the Northerly line of Lot 14, Block 7.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence
113. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.77 feet (calculated) to a point; Thence
114. North 57 Degrees 59 Minutes 06 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence
115. Along the Westerly line of Frontenac Avenue, South 32 Degrees 06 Minutes 25 Seconds East (calculated), a distance of 4.66 feet (calculated) to a point; Thence
116. Traversing within the right-of-way of Frontenac Avenue, within bounds of Lot 14, Block 6.02, within right-of-way of Franklin Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 224.99 feet (calculated) to a point; Thence
117. Along the Easterly line of Franklin Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.89 feet (calculated) to a point; Thence
118. Along the Northerly line of Lot 7, Block 6.01 and within the right-of way of Exeter Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 135.69 feet (calculated) to a point; Thence
119. Traversing within Exeter Avenue and Lot 1, Block 6.03, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 130.59 feet (calculated) to a point; Thence

120. Running within bounds of Lot 1, Block 6.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 39.31 feet (calculated) to a point; Thence

121. Along the Westerly line of Lot 1.01, Block 5.02, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.59 feet (calculated) to a point; Thence

122. Along the Northerly line of Lot 1.01, Block 5.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

123. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.67 feet (calculated) to a point; Thence

124. Running within bounds of Lot 1, Block 4.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

125. Continuing within Lot , Block 4.03 and along the Easterly line of Lot 16, Block 5.01, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 79.67 feet (calculated) to a point; Thence

126. Along the Northerly line of Lot 16, Block 5.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

127. Along the Easterly line of Douglass Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.40 feet (calculated) to a point; Thence

128. Crossing Douglass Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

129. Along the Easterly line of Douglass Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 54.40 feet (calculated) to a point; Thence

130. Along the Northerly line of Lot 7, Block 4.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

131. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.00 feet (calculated) to a point; Thence

132. North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

133. Along the Westerly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.35 feet (calculated) to a point; Thence

134. Crossing Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

135. Along the Easterly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 84.65 feet (calculated) to a point; Thence

136. Along the Northerly line of Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

137. Running within the right-of-way of Clermont Avenue, North 44 Degrees 57 Minutes 26 Seconds East (calculated), a distance of 42.85 feet (calculated) to a point; Thence

138. Continuing within right-of-way of Clermont Avenue and within bounds of Lot 5, Block 3.02, North 57 Degrees 41 Minutes 33 Seconds East (calculated), a distance of 70.76 feet (calculated) to a point; Thence

139. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.97 feet (calculated) to a point; Thence

140. Along the Northerly line of Lot 5, Block 3.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

141. Along the Westerly line of Clarendon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 50.00 feet (calculated) to a point; Thence

142. Crossing Clarendon Avenue and along the Northerly line of Lot 4, Block 3.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

143. Along the Westerly line of Brunswick Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 53.76 feet (calculated) to a point; Thence

144. Crossing Brunswick Avenue and traversing within bounds of Lot 7, Block 2.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 112.50 feet (calculated) to a point; Thence

145. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 29.57 feet (calculated) to a point; Thence

146. Along the easterly line of Lot 7, Block 2.02, South 57 Degrees 59 Minutes 21 Seconds West (calculated), a distance of 6.00 feet (calculated) to a point; Thence

147. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 72.67 feet (calculated) to a point; Thence

148. Along the Northerly line of Lot 7, Block 2.02 and crossing Barclay Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 118.50 feet (calculated) to a point; Thence

149. Along the Easterly line of Barclay Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 6.00 feet (calculated) to a point; Thence

150. Along the Northerly line o Lot 7, Block 2.01, crossing Argyle Avenue, along the Northerly line of Lot 7, Block 1.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

151. Along the Westerly line of Andover Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 3.00 feet (calculated) to a point; Thence

152.    Crossing Andover Avenue, along the Northerly line of Lot 7, Block 1.01 and traversing within Fredericksburg Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 200.00 feet (calculated) to the point and place of beginning.

Containing 45.511 Acres more or less.

Being also known as part of Frederick Avenue, Lot 7, Block 1.01, part of Andover Avenue, Lot 7, Block 1.02, part of Argyle Avenue, Lot 7 Block 2.01, part of Barclay Avenue, part of Lot 7, Block 2.02, part of Brunswick Avenue, Lot 4, Block 3.01, part of Clarendon Avenue, part of lot 5, Block 3.02, Lot 1, Block 3.03, part of lot Clermont Avenue, Lot 5, Block 4.01, part of Delavan Avenue, Lot 7, Block 4.02, part of Lot 1, Block 4.03, part of Douglass Avenue, Lot 16, Block 5.01, Lot 1.01, Block 5.02, part of Exeter Avenue, Lot 7, Block 6.01, part of Franklin Avenue, part of Lot 14, Block 6.02, part of lot 1, Block 6.03, part of Frontenac Avenue, Lot 1 , Block 7, Lot 14, Block 7.01, part of Gladstone Avenue, Lot 14, Block 7.02, part of Granville Avenue, part of Lot 2, Block 8, part of Huntington Avenue, Lot 24, Block 9, part of Iroquois Avenue, Lot 15, Block 10.05, Lot 1, Block 10.06, part of Jerome Avenue, part of Lot 15, Block 11.01, part of Knight Avenue, part of Lot 7, Block 11.02, part of Kenyon Avenue, part of Lancaster Avenue, part of Mansfield Avenue, part of Nassau Avenue, part of Osborne Avenue, Lot 1, Block 14.01, part of Lot 9, Block 16, part of Pembroke Avenue, part of Lot 9, Block 17, part of Quincy Avenue, part of Lot 18, Block 18, part of Rumson Avenue, part of Lot 9, Block 19, Lot 1, Block 19.01, part of Summer Avenue, part of Lot 9, Block 20, part of Thurlow Avenue, Lot 9, Block 21, part of Union Avenue, Lot 9, Block 22, part of Vendome Avenue, part of Lot 9, Block 23, part of Lot 4, Block 24, part of Benson Avenue, part of Lot 4, Block 25, part of Decatur Avenue, part of Lot 2, Block 26, part of Washington Avenue, part of Lot 86, Block 27.01, part of Adams Avenue, part of Lot 1, Block 27.02, Lot 66, Block 28.01, part of Jefferson Avenue, Lot  46, Block 29.01, part of Madison Avenue, Lot 26, Block 30.01, part of Monroe Avenue, Lot 21, Block 31.01, Lot 1, Block 31.03, part of Coolidge Avenue, Lot 2, Block 32.01, and Surf Avenue on the Tax Map of the City of Margate, Atlantic County

TOGETHER WITH the two (2) "Temporary Construction Area Easements" as shown on the aforesaid map and more particular described as follows:

Temporary Construction Area Easement #1

Beginning at a point in the Westerly line of Granville Avenue, said point being located 184.73 feet from the intersection of the Southerly line of Atlantic Avenue and said Westerly line of Granville Avenue and running; Thence

1.    Traversing within bounds of the right-of-way of Granville Avenue, North 58 Degrees 41 Minutes 30 Seconds East, a distance of 13.44 feet to a point; Thence
2.    North 59 Degrees 10 Minutes 55 Seconds East, a distance of 27.15 feet to a point; Thence
3.    South 33 Degrees 17 Minutes 02 Seconds East, a distance of 114.56 feet to a point; Thence
4.    South 57 Degrees 59 Minutes 21 Seconds West, a distance of 4.38 feet to a point; Thence
5.    South 32 Degrees 00 Minutes 39 Seconds East, a distance of 3.85 feet to a point; Thence
6.    South 58 Degrees 01 Minutes 30 Seconds West, a distance of 38.75 feet to a point in the Westerly line of Granville Avenue; Thence
7.    Along said Westerly line of Granville Avenue, North 32 Degrees 00 Minutes 39 Seconds West, a distance of 119.09 feet to the point and place of beginning.

Containing 4,959 S.F. or 0.114 Acres more or less.

Temporary Construction Area Easement #2

Beginning at a point in the Easterly line of Delavan Avenue, said point being located 220.30 feet from the intersection of the Southerly line of Atlantic Avenue and said Easterly line of Delavan Avenue and running; Thence

1.    Along said Easterly line of Delavan Avenue, South 32 Degrees 00 Minutes 39 Seconds East, a distance of 80.35 feet to a point; Thence
2.    Traversing within the right-of-way of Delavan Avenue, South 57 Degrees 59 Minutes 21 Seconds West, a distance of 42.85 feet to a point; Thence
3.    North 30 Degrees 57 Minutes 34 Seconds West, a distance of 80.44 feet to a point; Thence
4.    North 58 Degrees 05 Minutes 45 Seconds East, a distance of 41.37 feet to the point and place of beginning.

Containing 3,385 S.F. or 0.078 Acres more or less.

# EXHIBIT D

Prepared by:
State of New Jersey
Office of the Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625

_____

**DEED OF DEDICATION AND PERPETUAL STORM**

**DAMAGE REDUCTION EASEMENT**

    THIS DEED OF DEDICATION AND PERPETUAL STORM DAMAGE REDUCTION
EASEMENT is made this _____ day of _____ 2014 BY AND

BETWEEN

whose address is

referred to herein as Grantor,

AND

**THE STATE OF NEW JERSEY** referred to herein collectively as the
Grantee,

**WITNESSETH**

    **WHEREAS,** Grantor is the owner of that certain tract of
land, located in the City of Margate, County of Atlantic, State
of New Jersey, and identified as those Blocks and Lots listed in
Appendix A, on the official tax map of the City of Margate,
hereinafter the "Property," and Grantor holds the requisite
interest to grant this Deed of Easement; and

    **WHEREAS,** the Grantee recognizes that the beach at the City
of Margate, New Jersey is subject to constant erosion and
degradation, thereby destroying a valuable natural resource and
threatening the safety and property of the Grantor and of all of
the citizens of the State; and,

    **WHEREAS,** the Grantee desires to participate with the United
States Army Corps of Engineers to construct the **Brigantine Inlet
to Great Egg Harbor Inlet - Absecon Island, New Jersey,
Hurricane and Storm Damage Reduction Project**, as defined in the
June 23, 2014 Project Partnership Agreement between the
Department of the Army and the State of New Jersey, hereinafter
"Project"; and,

    **WHEREAS,** construction of the Project includes periodic
renourishment, which may be performed solely by the Grantee or
in conjunction with the United States Army Corps of Engineers;
and,

    **WHEREAS,** in order to accomplish part of the Project,
Grantee needs a Perpetual Storm Damage Reduction Easement on
portions of said Property herein described; and,

[1]

**WHEREAS**, the United States Army Corps of Engineers will not participate in the Project unless the Grantee acquires the real property interest herein described in all real property needed for the Project; and,

**WHEREAS**, the Grantee shall instruct the City of Margate to consider this Deed of Easement in establishing the full assessed value of any lands subject to such restriction; and

**WHEREAS**, the Grantor desires to cooperate in allowing the Project to take place on a portion of said Property; and,

**WHEREAS**, the Grantor acknowledges that it will benefit from the successful implementation of the Project; and,

**WHEREAS**, the Grantor acknowledges that after successful implementation of the Project the beach and dune are still subject to the forces of nature which can result in both erosion and accretion of the beach and dune; and,

**NOW, THEREFORE**, in consideration for the benefits to be received by the Grantor from the successful implementation of the Project, the Grantor grants and conveys to Grantee an irrevocable, assignable, perpetual and permanent easement as set forth herein:

**GRANT OF EASEMENT:** A perpetual and assignable easement and right-of-way for the Brigantine Inlet to Great Egg Harbor Inlet - Absecon Island, New Jersey, Hurricane and Storm Damage Reduction Project, in, on, over and across the portion of the municipal street ends listed in Appendix A as depicted on the map entitled "Perpetual Easement Parcel Map In the City of Margate" dated July 22, 2014 as prepared by Consulting Engineering Services which is attached as Appendix B for use by the State of New Jersey and its representatives, agents, contractors and assigns to:

a. Construct, preserve, patrol, operate, maintain, repair, rehabilitate, and replace a public beach, dune system, and other erosion control and storm damage reduction measures together with appurtenances thereto, including the right to deposit sand, to accomplish any alterations of the contours on said land, to construct berms and dunes, and to nourish and re-nourish periodically;

b. Move, temporarily store and remove equipment and supplies;

c. Erect and remove temporary structures;

d. Perform any other work necessary and incident to the construction, periodic renourishment, and maintenance of the Brigantine Inlet to Great Egg Harbor Inlet - Absecon Island Initial Construction Project together with the right of public use and access;

e. Post signs and plant vegetation on said dunes and berms;

f. Erect, maintain, and remove silt screens and snow fences;

g. Facilitate preservation of dune and vegetation through the limitation of public access to dune areas;

h. Trim, cut, fell, and remove from said land all trees, underbrush, debris, obstructions, and any other vegetation, structures, and obstacles within the limits of the easement;

The easement reserves to the Grantor, the Grantor's heirs, successors and assigns the right to construct a private dune overwalk structure in accordance with any applicable Federal, State, or local laws or regulations, provided that such structure shall not violate the integrity of the dune in shape, dimension, or function. Prior approval of the plans and specifications for such structures must be obtained from the City of Margate and the State of New Jersey. Such structures are to be considered subordinate to the construction, operation, maintenance, repair, rehabilitation, and replacement of the project. The easement reserves to the Grantor, the Grantor's heirs, successors, and assigns all such rights and privileges as may be used and enjoyed without interfering with or abridging the rights and easements hereby conveyed to the Grantee, subject however to existing easements for utilities and pipelines, existing public highways, existing paved public roads and existing public streets. Grantor hereby expressly agrees not to grade or excavate within the easement area or to place therein any structure or material other than a dune walkover as referenced above without prior approval of the plans and specifications for said activities from the City of Margate, the State of New Jersey and/or any applicable Federal agency, as required.

**Duration of Easement:** The easement granted hereby shall be in perpetuity, and in the event that the State of New Jersey shall become merged with any other geo-political entity or entities, the easement granted hereby shall run in favor of surviving entities. The covenants, terms, conditions and restrictions of this Deed of Easement shall be binding upon, and inure to the benefit of the parties hereto and their respective personal representatives, heirs, successors and assigns and shall continue as a servitude running in perpetuity with the land.

**Grantee or its Assign(s) to Maintain Beach:** The Grantee agrees, consistent with all Federal, State and local statutes and regulations, that at all times it or one of its assigns shall use its best, good-faith efforts to cause the beach area abutting Grantor's lands to be maintained, consistent with any applicable Federal, State or local laws or regulations, notwithstanding any action or inaction of the United States Army Corps of Engineers to maintain the beach area.

**Character of Property:** Notwithstanding the foregoing, nothing herein is intended or shall be deemed to change the overall character of the Property as municipal property; nothing herein shall be deemed to grant to the Grantee or otherwise permit the Grantee or any other person to cross over or use any part of the Property which is not within the Easement Area; nothing herein is intended or shall be deemed to alter the boundary lines or setback lines of the Property.

**Miscellaneous:**

1. The enforcement of the terms of this Easement shall be at the discretion of the Grantee and any forbearance by Grantee to exercise its rights under this Easement in the event of any

[3]

violation by Grantor shall not be deemed or construed to be a waiver by Grantee of such term or of any subsequent violation or of any of Grantee's rights under this Easement.   No delay or omission by Grantee in the exercise of any right or remedy upon any violation by Grantor shall impair such rights or remedies or be construed as a waiver of such rights or remedies.

2.   The interpretation and performance of this Deed of Easement shall be governed by the laws of the State of New Jersey.

3.   If any provision of this Deed of Easement or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Easement or the application of such provision to persons or circumstances other than those to which it is found to be invalid, as the case may be, shall not be affected thereby.

4.   Any notice, demand, request, consent, approval or communication under this Deed of Easement shall be sent by regular first class mail, postage prepaid and by Certified Mail, Return Receipt Requested, addressed to the mailing addresses set forth above or any other address of which the relocating party shall notify the other, in writing.

5. The captions in this Deed of Easement have been inserted solely for convenience of reference and are not a part of this instrument and shall have no effect upon its construction or interpretation.

6. Structures not preexisting or part of the project are not authorized.

7. Grantor represents and warrants he/she/it holds the requisite ownership interest and authority to execute this Deed of Easement; and has made this Deed of Easement for the full and actual consideration as set forth herein.

8. This Deed may be executed in counterparts by the respective Parties, which together will constitute the original Deed.

[4]

**IN WITNESS WHEREOF,** with the parties understanding and agreeing to the above, they do hereby place their signatures on the date at the top of the first page.

Accepted by the                              Witnessed by:
**CITY OF MARGATE, GRANTOR**


_____          _____
MICHAEL BECKER, MAYOR,                NOTARY PUBLIC OF THE
GRANTOR                               STATE OF NEW JERSEY

Date _____


STATE OF NEW JERSEY

COUNTY OF _____ SS.:

I CERTIFY that on _____ 2013,

[INSERT GRANTOR(S) NAME(S)]

personally came before me and this person acknowledged under oath, to my satisfaction that this person (or if more than one, each person);

1) is named in and personally signed this Deed of Easement; and

2) signed, sealed and delivered this Deed of Easement as his or her act and deed.


_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY


Accepted by the                              Witnessed by:

**STATE OF NEW JERSEY, GRANTEE**


BY:_____          _____
Dave Rosenblatt                          NOTARY PUBLIC OF THE
Administrator                            STATE OF NEW JERSEY
Office of Flood Risk Reduction Measures

Date _____

# Appendix A

Municipal Street Ends – Permanent Easement

Fredericksburg
Andover
Argyle
Barclay
Brunswick
Clarendon
Clermint
Delavan
Douglass
Exeter
Franklin
Frontenac
Gladstone
Granville
Huntington
Iroquois
Jerome
Knight
Kenyon
Lancaster
Mansfiled
Nassau
Osborne
Pembroke
Quincy
Rumson
Sumner
Thurlow
Union
Vendome
Cedar Grove
Benson
Decatour
Washington
Adams
Jefferson
Madison
Monroe
Coolidge
Surf

# Appendix B



July 22, 2014

     All that certain land and premises, situate, lying and being in the City of Margate, in the County of Atlantic and the State of New Jersey and more particularly described as follows:

     PARCEL E1, as indicated on a map entitled "NJ DEPARTMENT OF ENVIRONMENTAL PROTECTION, PERPETUAL EASEMENT PARCEL MAP, in the City of Margate from the Borough of Longport to the City of Ventnor, Showing Existing Lots, Right of Ways and Parcels to be Acquired in the City of Margate, Atlantic County, July 22, 2014"

     Parcel E1, including specifically all the land and premises more particularly described as follows:

Beginning at a point in the centerline of Fredericksburg Avenue and the Municipal Boundary of the City of Ventnor and the City of Margate as shown on the tax map of the City of Margate, Atlantic County, said point being at the intersection of the extended Northerly lot line of Lot 7 in Block 1.01 with said centerline and Municipal Boundary and running; Thence

1. Along said Municipal Boundary of the City of Margate and the City of Ventnor,  South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 168.00 feet (scaled) to a point, corner to Lot 1 in Block 3.03; Thence
2. Along the Southerly line of Lot 1, Block 3.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 1075.00 feet (scaled) to a point in the Easterly line of Lot 1 in Block 4.03; Thence
3. Along the Easterly line of Lot 1 in Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 79.00 feet (scaled) to a point; Thence
4. Along the Southerly line of Lot 1 in Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 525.00 feet (scaled) to a point in the Easterly line of Lot 1, Block 5.02; Thence
5. Along said Easterly line of Lot 1, Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 2.00 feet (scaled) to a point; Thence
6. Along the Southerly line of Lot 1, Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 125.00 feet (scaled) to a point; Thence
7. Along the Southerly line of Lot 1, Block 6.03, South 57 Degrees 33 Minutes 34 Seconds West (scaled), a distance of 400.01 feet (scaled) to a point; Thence
8. Along the Southerly line of Lot 1, Block 7, South 58 Degrees 09 Minutes 10 Seconds West (scaled), a distance of 1050.00 feet (scaled) to a point; Thence
9. Along the Southerly line of Lot 1, Block 10.06, South 57 Degrees 51 Minutes 07 Seconds West (scaled), a distance of 1000.00 feet (scaled) to a point; Thence
10. Along the Southerly line of Lot 1, Block 14.01, South 56 Degrees 24 Minutes 46 Seconds West (scaled), a distance of 367.86 feet (scaled) to a point; Thence
11. Along the Southerly line of Lot 1, Block 14.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 695.00 feet (scaled) to a point; Thence
12. Along the Westerly line of Lot 1, Block 14.01, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 10.01 feet (scaled) to a point; Thence
13. Along the Southerly line of Lot 1, Block 19.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 1068.86 feet (scaled) to a point; Thence
14. Along the Westerly line of Lot 1, Block 19.01, North 37 Degrees 43 Minutes 14 Seconds West (scaled), a distance of 13.48 feet (scaled) to a point; Thence
15. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 27 Minutes 23 Seconds West (scaled), a distance of 312.64 feet (scaled) to a point; Thence
16. Along the Southerly line of Lot 1, Block 27.02, South 58 Degrees 48 Minutes 03 Seconds West (scaled), a distance of 155.64 feet (scaled) to a point; Thence
17. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 58 Minutes 30 Seconds West (scaled), a distance of 613.39 feet (scaled) to a point; Thence
18. Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 41 Minutes 31 Seconds West (scaled), a distance of 250.40 feet (scaled) to a point; Thence
19. Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 21 Minutes 57 Seconds West (scaled), a distance of 350.45 feet (scaled) to a point; Thence
20. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 28 Minutes 08 Seconds West (scaled), a distance of 250.00 feet (scaled) to a point; Thence
21. Along the Southerly line of Lot 1, Block 27.02, South 49 Degrees 45 Minutes 23 Seconds West (scaled), a distance of 300.63 feet (scaled) to a point; Thence
22. Along the Southerly line of Lot 1, Block 27.02, South 52 Degrees 08 Minutes 59 Seconds West (scaled), a distance of 113.10 feet (scaled) to a point in the Municipal Boundary of the Borough of Longport and the City of Margate; Thence
23. Along said Municipal Boundary, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 310.00 feet (scaled) to a point; Thence
24. Along the Northerly line of Lot 2, Block 32.01, crossing Coolidge Ave, along the Northerly line of Lot 21, Block 31.01, crossing Monroe Avenue, along the Northerly line of Lot 26, Block 30.01,

crossing Madison Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 713.07 feet (calculated) to a point in the Easterly line of Madison Avenue; Thence

25. Along said Easterly line of Madison Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 5.00 feet (calculated) to a point; Thence

26. Along the Northerly line of Lot 46, Block 29.01, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

27. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 5.00 feet (calculated) to a point; Thence

28. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point in the Westerly line of Jefferson Avenue; Thence

29. Along said line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 3.19 feet (calculated) to a point; Thence

30. Crossing Jefferson Avenue, North 69 Degrees 39 Minutes 57 Seconds East (calculated), a distance of 52.07 feet (calculated) to a point in the Easterly line of Jefferson Avenue; Thence

31. Along said Easterly line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.85 feet (calculated) to a point; Thence

32. Along the Northerly line of Lot 66 Block 28.01, crossing Adams Avenue, running within bounds of Lot 86, Block 27.01, crossing Washington Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 612.00 feet (calculated) to a point in the Easterly line of Washington Avenue; Thence

33. Along said Easterly line of Washington Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 115.50 feet (calculated) to a point in the Northerly line of Surf Avenue; Thence

34. Along said Northerly line of Surf Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 105.50 feet (calculated) to a point; Thence

35. Along the Westerly line of Lot 2, Block 26, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 113.45 feet (calculated) to a point; Thence

36. Running within bounds of Lot 2, Block 26, crossing Decatur Avenue, Along the Northerly line of Lot 4, Block 25, crossing Benson Avenue, along the Northerly line of Lot 4, Block 24, North 53 Degrees 56 Minutes 10 Seconds East (calculated), a distance of 368.87 feet (calculated) to a point; Thence

37. Along the Northerly line of Lot 4, Block 24, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 38.66 feet (calculated) to a point; Thence

38. Running within bounds of Lot 4, Block 24, South 54 Degrees 04 Minutes 27 Seconds West (calculated), a distance of 26.32 feet (calculated) to a point; Thence

39. South 36 Degrees 00 Minutes 14 Seconds East (calculated), a distance of 75.44 feet (calculated) to a point; Thence

40. North 58 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 27.88 feet (calculated) to a point; Thence

41. North 53 Degrees 43 Minutes 54 Seconds East (calculated), a distance of 167.47 feet (calculated) to a point; Thence

42. North 51 Degrees 50 Minutes 07 Seconds East (calculated), a distance of 76.43 feet (calculated) to a point; Thence

43. Traversing within bounds of Lot 9, Block 23, North 53 Degrees 27 Minutes 38 Seconds East (calculated), a distance of 150.27 feet (calculated) to a point; Thence

44. Along the lot line common to Lots 9 and 10, Block 23, North 35 Degrees 27 Minutes 35 Seconds West (calculated), a distance of 6.72 feet (calculated) to a point; Thence

45. Along the Northerly line of Lot 9, Block 23, North 35 Degrees 01 Minutes 09 Seconds East (calculated), a distance of 82.33 feet (calculated) to a point; Thence

46. Crossing Vendome Avenue, North 52 Degrees 50 Minutes 55 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point in the Easterly line of Vendome Avenue; Thence

47. Along said easterly line of Vendome Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 9.59 feet (calculated) to a point; Thence

48. Along the Northerly line of Lot 9, Block 22, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 160.00 feet (calculated) to a point in the Westerly line of Union Avenue; Thence

49. Along said Westerly line of Union Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 8.64 feet (calculated) to a point; Thence

50. Crossing Union Avenue, along the Northerly line of Lot 9, Block 21, North 53 Degrees 50 Minutes 04 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

51. South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 7.00 feet (calculated) to a point; Thence

52. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 80.00 feet (calculated) to a point in the Westerly line of Thurlow Avenue; Thence

53. Crossing said Thurlow Avenue, North 58 Degrees 33 Minutes 19 Seconds East (calculated), a distance of 4.25 feet (calculated) to a point; Thence

54. North 31 Degrees 26 Minutes 41 Seconds West (calculated), a distance of 12.19 feet (calculated) to a point; Thence

55. Running within bounds of Thurlow Avenue and Lot 9, Block 20, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 204.68 feet (calculated) to a point in the Westerly line of Summer Avenue; Thence

56. Along said Westerly line of Summer Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 103.69 feet (calculated) to a point; Thence

57. Crossing said Summer Avenue and along the Northerly line of Lot 9, Block 19, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

58. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.29 feet (calculated) to a point; Thence

59. Running within bounds of Lot 9, Block 19 and Rumson Avenue, North 49 Degrees 25 Minutes 15 Seconds East (calculated), a distance of 87.05 feet (calculated) to a point; Thence

60. Within bounds of Rumson Avenue, South 37 Degrees 44 Minutes 47 Seconds East (calculated), a distance of 107.23 feet (calculated) to a point; Thence

61. North 51 Degrees 34 Minutes 03 Seconds East (calculated), a distance of 40.94 feet (calculated) to a point in the Easterly line of Rumson Avenue; Thence

62. Along said Easterly line of Rumson Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 30.35 feet (calculated) to a point; Thence

63. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 80.05 feet (calculated) to a point; Thence

64. Along the Easterly line of Lot 18 in Block 18, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 30.69 feet (calculated) to a point; Thence

65. Traversing within bounds of Lot 18, Block 18, North 51 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 5.73 feet (calculated) to a point; Thence

66. North 36 Degrees 36 Minutes 06 Seconds West (calculated), a distance of 63.04 feet (calculated) to a point; Thence

67. Continuing within bounds of Lot 18, Bloc 18, crossing Quincy Avenue, North 52 Degrees 09 Minutes 30 Seconds East (calculated), a distance of 134.37 feet (calculated) to a point in the Easterly line of Quincy Avenue; Thence

68. Traversing within Lot 9, Block 17, crossing Pembroke Avenue and running within bounds of Lot 9, Block 16, North 47 Degrees 48 Minutes 13 Seconds East (calculated), a distance of 371.81 feet (calculated) to a point in the Westerly line of Osborn Avenue; Thence

69. Along said line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 36.92 feet (calculated) to a point; Thence

70. Crossing Osborne Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

71. Along the Easterly line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 77.24 feet (calculated) to a point; Thence

72. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 160.10 feet (calculated) to a point; Thence

73. Along the Westerly line of Nassau Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 16.90 feet (calculated) to a point; Thence

74. Crossing Nassau Avenue, North 51 Degrees 00 Minutes 53 Seconds East (calculated), a distance of 50.05 feet (calculated) to a point; Thence

75. Along the Easterly line of Nassau Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 17.30 feet (calculated) to a point; Thence

76. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 115.68 feet (calculated) to a point; Thence

77. Along the Westerly line of Mansfield Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 16.81 feet (calculated) to a point; Thence

78. Crossing Mansfield Avenue, North 51 Degrees 23 Minutes 38 Seconds East (calculated), a distance of 50.33 feet (calculated) to a point; Thence

79. Along the Easterly line of Mansfield Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 16.88 feet (calculated) to a point; Thence

80. Along the Northerly line of Lot 1, Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

81. Along the Easterly line of Lancaster Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 11.66 feet (calculated) to a point; Thence

82. Crossing Lancaster Avenue, North 52 Degrees 42 Minutes 54 Seconds East (calculated), a distance of 50.21 feet (calculated) to a point; Thence

83. Along the Westerly line of Lancaster Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 10.56 feet (calculated) to a point; Thence

84. Along the Northerly line of Lot 1, Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

85. Along the Westerly line of Kenyon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 20.70 feet (calculated) to a point; Thence

86. Running within the right-of-way of Kenyon Avenue, North 49 Degrees 33 Minutes 30 Seconds East (calculated), a distance of 34.21 feet (calculated) to a point; Thence

87. North 31 Degrees 45 Minutes 28 Seconds West (calculated), a distance of 37.54 feet (calculated) to a point; Thence

88. North 56 Degrees 56 Minutes 07 Seconds East (calculated), a distance of 16.03 feet (calculated) to a point; Thence

89. Along the Easterly line of Kenyon Avenue, North 32 Degrees 02 Minutes 38 Seconds West (calculated), a distance of 67.15 feet (calculated) to a point; Thence

90. Traversing within bounds of Lot 7 Block 11.02, North 57 Degrees 52 Minutes 17 Seconds East (calculated), a distance of 63.38 feet (calculated) to a point; Thence

91. North 29 Degrees 17 Minutes 58 Seconds West (calculated), a distance of 3.37 feet (calculated) to a point; Thence

92. North 57 Degrees 40 Minutes 13 Seconds East (calculated), a distance of 61.47 feet (calculated) to a point; Thence

93. Along the Westerly line of Knight Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.42 feet (calculated) to a point; Thence

94. Crossing Knight Avenue and running within bounds of Lot 15, Block 11.01, North 57 Degrees 44 Minutes 52 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

95. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 22.93 feet (calculated) to a point; Thence

96. Crossing Jerome Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

97. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 7.63 feet (calculated) to a point; Thence

98. Along the Northerly line of Lot 15, Block 10.05, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

99. Along the Westerly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 8.63 feet (calculated) to a point; Thence

100. Crossing Iroquois Ave, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

101. Along the Easterly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 24.37 feet (calculated) to a point; Thence

102. Along the Northerly line of Lot 24, Block 9, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

103. Along the Huntington Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 71.78 feet (calculated) to a point; Thence

104. Crossing Huntington Avenue and running along the Northerly line of Lot 2, Block 8, North 58 Degrees 03 Minutes 26 Seconds East (calculated), a distance of 350.00 feet (calculated) to a point; Thence

105. Along the Westerly line of Granville Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 45.19 feet (calculated) to a point; Thence

106. Traversing within bounds of the right-of-way of Granville Ave, North 58 Degrees 01 Minutes 30 Seconds East (calculated), a distance of 38.75 feet (calculated) to a point; Thence

107. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.85 feet (calculated) to a point; Thence

108. Continuing within Granville Avenue and along the Northerly line of Lot 14, Block 7.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 136.25 feet (calculated) to a point; Thence

109. Along the Westerly line of Gladstone Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.44 feet (calculated) to a point; Thence

110. Crossing Gladstone Avenue, North 58 Degrees 37 Minutes 08 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

111. Along the Westerly line of Gladstone Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 0.99 feet (calculated) to a point; Thence

112. Along the Northerly line of Lot 14, Block 7.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

113. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.77 feet (calculated) to a point; Thence

114. North 57 Degrees 59 Minutes 06 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

115. Along the Westerly line of Frontenac Avenue, South 32 Degrees 06 Minutes 25 Seconds East (calculated), a distance of 4.66 feet (calculated) to a point; Thence

116. Traversing within the right-of-way of Frontenac Avenue, within bounds of Lot 14, Block 6.02, within right-of-way of Franklin Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 224.99 feet (calculated) to a point; Thence

117. Along the Easterly line of Franklin Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.89 feet (calculated) to a point; Thence

118. Along the Northerly line of Lot 7, Block 6.01 and within the right-of way of Exeter Avenue,  North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 135.69 feet (calculated) to a point; Thence

119. Traversing within Exeter Avenue and Lot 1, Block 6.03, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 130.59 feet (calculated) to a point; Thence

120. Running within bounds of Lot 1, Block 6.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 39.31 feet (calculated) to a point; Thence

121. Along the Westerly line of Lot 1.01, Block 5.02, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.59 feet (calculated) to a point; Thence

122. Along the Northerly line of Lot 1.01, Block 5.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

123. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.67 feet (calculated) to a point; Thence

124. Running within bounds of Lot 1, Block 4.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

125. Continuing within Lot , Block 4.03 and along the Easterly line of Lot 16, Block 5.01, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 79.67 feet (calculated) to a point; Thence

126. Along the Northerly line of Lot 16, Block 5.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

127. Along the Easterly line of Douglass Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.40 feet (calculated) to a point; Thence

128. Crossing Douglass Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

129. Along the Easterly line of Douglass Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 54.40 feet (calculated) to a point; Thence

130. Along the Northerly line of Lot 7, Block 4.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

131. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.00 feet (calculated) to a point; Thence

132. North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

133. Along the Westerly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.35 feet (calculated) to a point; Thence

134. Crossing Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

135. Along the Easterly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 84.65 feet (calculated) to a point; Thence

136. Along the Northerly line of Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

137. Running within the right-of-way of Clermont Avenue, North 44 Degrees 57 Minutes 26 Seconds East (calculated), a distance of 42.85 feet (calculated) to a point; Thence

138. Continuing within right-of-way of Clermont Avenue and within bounds of Lot 5, Block 3.02, North 57 Degrees 41 Minutes 33 Seconds East (calculated), a distance of 70.76 feet (calculated) to a point; Thence

139. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.97 feet (calculated) to a point; Thence

140. Along the Northerly line of Lot 5, Block 3.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

141. Along the Westerly line of Clarendon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 50.00 feet (calculated) to a point; Thence

142. Crossing Clarendon Avenue and along the Northerly line of Lot 4, Block 3.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

143. Along the Westerly line of Brunswick Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 53.76 feet (calculated) to a point; Thence

144. Crossing Brunswick Avenue and traversing within bounds of Lot 7, Block 2.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 112.50 feet (calculated) to a point; Thence

145. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 29.57 feet (calculated) to a point; Thence

146. Along the easterly line of Lot 7, Block 2.02, South 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 6.00 feet (calculated) to a point; Thence

147. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 72.67 feet (calculated) to a point; Thence

148. Along the Northerly line of Lot 7, Block 2.02 and crossing Barclay Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 118.50 feet (calculated) to a point; Thence

149. Along the Easterly line of Barclay Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 6.00 feet (calculated) to a point; Thence

150. Along the Northerly line o Lot 7, Block 2.01, crossing Argyle Avenue, along the Northerly line of Lot 7, Block 1.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

151. Along the Westerly line of Andover Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 3.00 feet (calculated) to a point; Thence

152.   Crossing Andover Avenue, along the Northerly line of Lot 7, Block 1.01 and traversing within Fredericksburg Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 200.00 feet (calculated) to the point and place of beginning.

Containing 45.511 Acres more or less.

Being also known as part of Frederick Avenue, Lot 7, Block 1.01, part of Andover Avenue, Lot 7, Block 1.02, part of Argyle Avenue, Lot 7 Block 2.01, part of Barclay Avenue, part of Lot 7, Block 2.02, part of Brunswick Avenue, Lot 4, Block 3.01, part of Clarendon Avenue, part of lot 5, Block 3.02, Lot 1, Block 3.03, part of lot Clermont Avenue, Lot 5, Block 4.01, part of Delavan Avenue, Lot 7, Block 4.02, part of Lot 1, Block 4.03, part of Douglass Avenue, Lot 16, Block 5.01, Lot 1.01, Block 5.02, part of Exeter Avenue, Lot 7, Block 6.01, part of Franklin Avenue, part of Lot 14, Block 6.02, part of lot 1, Block 6.03, part of Frontenac Avenue, Lot 1 , Block 7, Lot 14, Block 7.01, part of Gladstone Avenue, Lot 14, Block 7.02, part of Granville Avenue, part of Lot 2, Block 8, part of Huntington Avenue, Lot 24, Block 9, part of Iroquois Avenue, Lot 15, Block 10.05, Lot 1, Block 10.06, part of Jerome Avenue, part of Lot 15, Block 11.01, part of Knight Avenue, part of Lot 7, Block 11.02, part of Kenyon Avenue, part of Lancaster Avenue, part of Mansfield Avenue, part of Nassau Avenue, part of Osborne Avenue, Lot 1, Block 14.01, part of Lot 9, Block 16, part of Pembroke Avenue, part of Lot 9, Block 17, part of Quincy Avenue, part of Lot 18, Block 18, part of Rumson Avenue, part of Lot 9, Block 19, Lot 1, Block 19.01, part of Summer Avenue, part of Lot 9, Block 20, part of Thurlow Avenue, Lot 9, Block 21, part of Union Avenue, Lot 9, Block 22, part of Vendome Avenue, part of Lot 9, Block 23, part of Lot 4, Block 24, part of Benson Avenue, part of Lot 4, Block 25, part of Decatur Avenue, part of Lot 2, Block 26, part of Washington Avenue, part of Lot 86, Block 27.01, part of Adams Avenue, part of Lot 1, Block 27.02, Lot 66, Block 28.01, part of Jefferson Avenue, Lot  46, Block 29.01, part of Madison Avenue, Lot 26, Block 30.01, part of Monroe Avenue, Lot 21, Block 31.01, Lot 1, Block 31.03, part of Coolidge Avenue, Lot 2, Block 32.01, and Surf Avenue on the Tax Map of the City of Margate, Atlantic County

TOGETHER WITH the two (2) "Temporary Construction Area Easements" as shown on the aforesaid map and more particular described as follows:

Temporary Construction Area Easement #1

Beginning at a point in the Westerly line of Granville Avenue, said point being located 184.73 feet from the intersection of the Southerly line of Atlantic Avenue and said Westerly line of Granville Avenue and running; Thence

1.   Traversing within bounds of the right-of-way of Granville Avenue, North 58 Degrees 41 Minutes 30 Seconds East, a distance of 13.44 feet to a point; Thence
2.   North 59 Degrees 10 Minutes 55 Seconds East, a distance of 27.15 feet to a point; Thence
3.   South 33 Degrees 17 Minutes 02 Seconds East, a distance of 114.56 feet to a point; Thence
4.   South 57 Degrees 59 Minutes 21 Seconds West, a distance of 4.38 feet to a point; Thence
5.   South 32 Degrees 00 Minutes 39 Seconds East, a distance of 3.85 feet to a point; Thence
6.   South 58 Degrees 01 Minutes 30 Seconds West, a distance of 38.75 feet to a point in the Westerly line of Granville Avenue; Thence
7.   Along said Westerly line of Granville Avenue, North 32 Degrees 00 Minutes 39 Seconds West, a distance of 119.09 feet to the point and place of beginning.

Containing 4,959 S.F. or 0.114 Acres more or less.

Temporary Construction Area Easement #2

Beginning at a point in the Easterly line of Delavan Avenue, said point being located 220.30 feet from the intersection of the Southerly line of Atlantic Avenue and said Easterly line of Delavan Avenue and running; Thence

1.   Along said Easterly line of Delavan Avenue, South 32 Degrees 00 Minutes 39 Seconds East, a distance of 80.35 feet to a point; Thence
2.   Traversing within the right-of-way of Delavan Avenue, South 57 Degrees 59 Minutes 21 Seconds West, a distance of 42.85 feet to a point; Thence
3.   North 30 Degrees 57 Minutes 34 Seconds West, a distance of 80.44 feet to a point; Thence
4.   North 32 Degrees 05 Minutes 45 Seconds East, a distance of 41.37 feet to the point and place of beginning.

Containing 3,385 S.F. or 0.078 Acres more or less.

# EXHIBIT E

## RIGHT-OF-ENTRY FOR TEMPORARY WORK AREA

THIS RIGHT-OF-ENTRY FOR TEMPORARY WORK AREA is made this
_____ day of _____ 2014 BY AND

BETWEEN

whose address is

referred to herein as Grantor,

AND

**THE STATE OF NEW JERSEY** referred to herein as the Grantee,

### WITNESSETH

WHEREAS, Grantor is the owner of that certain tract of
land, located in the City of Margate, County of Atlantic, State
of New Jersey, and identified as those Blocks and Lots listed
in Appendix A, on the official tax map of the City of Atlantic
City; and,

WHEREAS, the property identified in Appendix A and as
depicted on the map entitled "Perpetual Easement Parcel Map In
the City of Margate" dated July 22, 2014 as prepared by
Consulting Engineering Services which is attached as Appendix B
is hereinafter referred to as the "Property," and Grantor holds
the requisite interest to the Property to grant this Right-of-
Entry; and

WHEREAS, the Grantee recognizes that the beach at Absecon
Island, New Jersey is subject to constant erosion and
degradation, thereby destroying a valuable natural resource and
threatening the safety and property of the Grantor and of all
of the citizens of the State of New Jersey; and,

WHEREAS, the Grantor desires to participate with the
Grantee and the United States Army Corps of Engineers to
construct and maintain the Brigantine Inlet to Great Egg Harbor
Inlet – Absecon Island, New Jersey, Hurricane and Storm Damage
Reduction Project, as defined in the June 23, 2014 Project
Partnership Agreement between the Department of the Army and
the State of New Jersey, hereinafter "Project"; and,

WHEREAS, in order to accomplish part of the Project, the
Grantee needs a Temporary Work Area on said Property; and,

WHEREAS, the Grantor desires to cooperate in allowing the
Project to take place on a portion of said Property; and,

NOW, THEREFORE, in consideration of the benefits to be
received by the Grantor from the successful implementation of
the Project, the Grantor grants and conveys to Grantee an
irrevocable, assignable, right-of-entry for temporary work area
over the properties identified as those Blocks and Lots listed
in Appendix A on the official tax map of the City of Atlantic
City as depicted on the map entitled "Perpetual Easement Parcel

Map In the City of Marge" dated July 22, 2014 as prepared by Consulting Engineering Services which is attached as Appendix B as set forth herein:

**GRANT OF RIGHT-OF-ENTRY.** A temporary right-of-entry and right-of-way in, on, over and across that land of the Property for a period beginning September 29, 2014 and continuing until completion of the Project, for use by the Grantee, United States Army Corps of Engineers and their representatives, agents, contractors and assigns, as a work area, including the right to borrow and/or deposit fill, spoil and waste material thereon, and move, store and remove equipment and supplies, and erect and remove temporary structures on the land and to perform any other work necessary and incident to the continuing construction and maintenance of the Project, together with the right to trim, cut, fell, and remove from said land all trees, underbrush, debris, obstructions, and any other vegetation, structures and obstacles within the limits of the right-of-entry; reserving, however, to the Grantor, Grantor's heirs, successors and assigns, all such rights and privileges as may be used without interfering with or abridging the temporary right-of-entry hereby acquired; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines.

**Character of Property:** Notwithstanding the foregoing, nothing herein is intended or shall be deemed to change the overall character of the Property; nothing herein shall be deemed to grant to the Grantee or otherwise permit the Grantee or any other person to cross over or use any part of the Property which is not within the Temporary Work Area; nothing herein is intended or shall be deemed to alter the boundary lines or setback lines of the Property.

**Miscellaneous.**

1. The enforcement of the terms of this Right-of-Entry shall be at the discretion of the Grantee and any forbearance by the Grantee to exercise its rights under this Right-of-Entry in the event of any violation by Grantor shall not be deemed or construed to be a waiver by the Grantee of such term or of any subsequent violation or of any of Grantee's rights under this Right-of-Entry. No delay or omission by the Grantee in the exercise of any right or remedy upon any violation by Grantor shall impair such rights or remedies or be construed as a waiver of such rights or remedies.

2. The interpretation and performance of this Right-of-Entry shall be governed by the laws of the State of New Jersey.

3. If any provision of this Right-of-Entry or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Right-of-Entry or the application of such provision to persons or circumstances other than those to which it is found to be invalid, as the case may be, shall not be affected thereby.

4. Any notice, demand, request, consent, approval or communication under this Right-of-Entry shall be sent by regular first class mail, postage prepaid and by Certified Mail, Return Receipt Requested, addressed to the mailing addresses set forth above or any other address of which the relocating party shall notify the other, in writing.

5.   No provision of this Right-of-Entry shall be construed against or interpreted to the disadvantage of any of the parties, the parties acknowledging herein that this Right-of-Entry shall be construed that they have jointly participated in the drafting and preparation of this instrument.

6.   The captions in this Right-of-Entry have been inserted solely for convenience of reference and are not a part of this instrument and shall have no effect upon its construction or interpretation.

7. Grantee shall at all times keep the Property, except as permitted herein, free of any work-related debris on the Property.  The Property shall be restored to the pre-existing conditions at the conclusion of the initial work and after any subsequent disturbance.  Grantee shall complete all work in a prompt and diligent manner.

**IN WITNESS WHEREOF**, with the parties understanding and agreeing to the above, they do hereby place their signatures on the date at the top of the first page.

Accepted by the                              Witnessed by:
**CITY OF MARGATE, GRANTOR**


_____          _____
MICHAEL BECKER, MAYOR,              NOTARY PUBLIC OF THE
GRANTOR                             STATE OF NEW JERSEY

Date _____


STATE OF NEW JERSEY

COUNTY OF _____ SS.:

I CERTIFY that on _____ 2013,

[INSERT GRANTOR(S) NAME(S)]

personally came before me and this person acknowledged under oath, to my satisfaction that this person (or if more than one, each person);

1) is named in and personally signed this Deed of Easement; and

2) signed, sealed and delivered this Deed of Easement as his or her act and deed.

_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY


Accepted by the                              Witnessed by:

**STATE OF NEW JERSEY, GRANTEE**


BY:_____          _____
Dave Rosenblatt                       NOTARY PUBLIC OF THE
Administrator                         STATE OF NEW JERSEY
Office of Flood Risk Reduction Measures

Date _____

# Appendix A

Municipal Properties – Temporary Easements

Easement Area 1:
Portion of Block 8 Lot 2 and Granville Avenue

Easement Area 2:
Portion of Delavan Avenue

# Appendix B



July 22, 2014

All that certain land and premises, situate, lying and being in the City of Margate, in the County of Atlantic and the State of New Jersey and more particularly described as follows:

PARCEL E1, as indicated on a map entitled "NJ DEPARTMENT OF ENVIRONMENTAL PROTECTION, PERPETUAL EASEMENT PARCEL MAP, in the City of Margate from the Borough of Longport to the City of Ventnor, Showing Existing Lots, Right of Ways and Parcels to be Acquired in the City of Margate, Atlantic County, July 22, 2014"

Parcel E1, including specifically all the land and premises more particularly described as follows:

Beginning at a point in the centerline of Fredericksburg Avenue and the Municipal Boundary of the City of Ventnor and the City of Margate as shown on the tax map of the City of Margate, Atlantic County, said point being at the intersection of the extended Northerly lot line of Lot 7 in Block 1.01 with said centerline and Municipal Boundary and running; Thence

1. Along said Municipal Boundary of the City of Margate and the City of Ventnor,  South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 168.00 feet (scaled) to a point, corner to Lot 1 in Block 3.03; Thence
2. Along the Southerly line of Lot 1, Block 3.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 1075.00 feet (scaled) to a point in the Easterly line of Lot 1 in Block 4.03; Thence
3. Along the Easterly line of Lot 1 in Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 79.00 feet (scaled) to a point; Thence
4. Along the Southerly line of Lot 1 in Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 525.00 feet (scaled) to a point in the Easterly line of Lot 1, Block 5.02; Thence
5. Along said Easterly line of Lot 1, Block 4.03, South 32 Degrees 00 Minutes 39 Seconds East (scaled), a distance of 2.00 feet (scaled) to a point; Thence
6. Along the Southerly line of Lot 1, Block 4.03, South 57 Degrees 59 Minutes 21 Seconds West (scaled), a distance of 125.00 feet (scaled) to a point; Thence
7. Along the Southerly line of Lot 1, Block 6.03, South 57 Degrees 33 Minutes 34 Seconds West (scaled), a distance of 400.01 feet (scaled) to a point; Thence
8. Along the Southerly line of Lot 1, Block 7, South 58 Degrees 09 Minutes 10 Seconds West (scaled), a distance of 1050.00 feet (scaled) to a point; Thence
9. Along the Southerly line of Lot 1, Block 10.06, South 57 Degrees 51 Minutes 07 Seconds West (scaled), a distance of 1000.00 feet (scaled) to a point; Thence
10. Along the Southerly line of Lot 1, Block 14.01, South 56 Degrees 24 Minutes 46 Seconds West (scaled), a distance of 367.86 feet (scaled) to a point; Thence
11. Along the Southerly line of Lot 1, Block 14.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 695.00 feet (scaled) to a point; Thence
12. Along the Westerly line of Lot 1, Block 14.01, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 10.01 feet (scaled) to a point; Thence
13. Along the Southerly line of Lot 1, Block 19.01, South 51 Degrees 28 Minutes 22 Seconds West (scaled), a distance of 1068.86 feet (scaled) to a point; Thence
14. Along the Westerly line of Lot 1, Block 19.01, North 37 Degrees 43 Minutes 14 Seconds West (scaled), a distance of 13.48 feet (scaled) to a point; Thence
15. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 27 Minutes 23 Seconds West (scaled), a distance of 312.64 feet (scaled) to a point; Thence
16. Along the Southerly line of Lot 1, Block 27.02, South 58 Degrees 48 Minutes 03 Seconds West (scaled), a distance of 155.64 feet (scaled) to a point; Thence
17. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 58 Minutes 30 Seconds West (scaled), a distance of 613.39 feet (scaled) to a point; Thence
18. Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 41 Minutes 31 Seconds West (scaled), a distance of 250.40 feet (scaled) to a point; Thence
19. Along the Southerly line of Lot 1, Block 27.02, South 56 Degrees 21 Minutes 57 Seconds West (scaled), a distance of 350.45 feet (scaled) to a point; Thence
20. Along the Southerly line of Lot 1, Block 27.02, South 53 Degrees 28 Minutes 08 Seconds West (scaled), a distance of 250.00 feet (scaled) to a point; Thence
21. Along the Southerly line of Lot 1, Block 27.02, South 49 Degrees 45 Minutes 23 Seconds West (scaled), a distance of 300.63 feet (scaled) to a point; Thence
22. Along the Southerly line of Lot 1, Block 27.02, South 52 Degrees 08 Minutes 59 Seconds West (scaled), a distance of 113.10 feet (scaled) to a point in the Municipal Boundary of the Borough of Longport and the City of Margate; Thence
23. Along said Municipal Boundary, North 36 Degrees 32 Minutes 37 Seconds West (scaled), a distance of 310.00 feet (scaled) to a point; Thence
24. Along the Northerly line of Lot 2, Block 32.01, crossing Coolidge Ave, along the Northerly line of Lot 21, Block 31.01, crossing Monroe Avenue, along the Northerly line of Lot 26, Block 30.01,

crossing Madison Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 713.07 feet (calculated) to a point in the Easterly line of Madison Avenue; Thence

25. Along said Easterly line of Madison Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 5.00 feet (calculated) to a point; Thence

26. Along the Northerly line of Lot 46, Block 29.01, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

27. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 5.00 feet (calculated) to a point; Thence

28. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point in the Westerly line of Jefferson Avenue; Thence

29. Along said line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 3.19 feet (calculated) to a point; Thence

30. Crossing Jefferson Avenue, North 69 Degrees 39 Minutes 57 Seconds East (calculated), a distance of 52.07 feet (calculated) to a point in the Easterly line of Jefferson Avenue; Thence

31. Along said Easterly line of Jefferson Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.85 feet (calculated) to a point; Thence

32. Along the Northerly line of Lot 66 Block 28.01, crossing Adams Avenue, running within bounds of Lot 86, Block 27.01, crossing Washington Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 612.00 feet (calculated) to a point in the Easterly line of Washington Avenue; Thence

33. Along said Easterly line of Washington Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 115.50 feet (calculated) to a point in the Northerly line of Surf Avenue; Thence

34. Along said Northerly line of Surf Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 105.50 feet (calculated) to a point; Thence

35. Along the Westerly line of Lot 2, Block 26, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 113.45 feet (calculated) to a point; Thence

36. Running within bounds of Lot 2, Block 26, crossing Decatur Avenue, Along the Northerly line of Lot 4, Block 25, crossing Benson Avenue, along the Northerly line of Lot 4, Block 24, North 53 Degrees 56 Minutes 10 Seconds East (calculated), a distance of 368.87 feet (calculated) to a point; Thence

37. Along the Northerly line of Lot 4, Block 24, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 38.66 feet (calculated) to a point; Thence

38. Running within bounds of Lot 4, Block 24, South 54 Degrees 04 Minutes 27 Seconds West (calculated), a distance of 26.32 feet (calculated) to a point; Thence

39. South 36 Degrees 00 Minutes 14 Seconds East (calculated), a distance of 75.44 feet (calculated) to a point; Thence

40. North 58 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 27.88 feet (calculated) to a point; Thence

41. North 53 Degrees 43 Minutes 54 Seconds East (calculated), a distance of 167.47 feet (calculated) to a point; Thence

42. North 51 Degrees 50 Minutes 07 Seconds East (calculated), a distance of 76.43 feet (calculated) to a point; Thence

43. Traversing within bounds of Lot 9, Block 23, North 53 Degrees 27 Minutes 38 Seconds East (calculated), a distance of 150.27 feet (calculated) to a point; Thence

44. Along the lot line common to Lots 9 and 10, Block 23, North 35 Degrees 27 Minutes 35 Seconds West (calculated), a distance of 6.72 feet (calculated) to a point; Thence

45. Along the Northerly line of Lot 9, Block 23, North 35 Degrees 01 Minutes 09 Seconds East (calculated), a distance of 82.33 feet (calculated) to a point; Thence

46. Crossing Vendome Avenue, North 52 Degrees 50 Minutes 55 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point in the Easterly line of Vendome Avenue; Thence

47. Along said easterly line of Vendome Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 9.59 feet (calculated) to a point; Thence

48. Along the Northerly line of Lot 9, Block 22, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 160.00 feet (calculated) to a point in the Westerly line of Union Avenue; Thence

49. Along said Westerly line of Union Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 8.64 feet (calculated) to a point; Thence

50. Crossing Union Avenue, along the Northerly line of Lot 9, Block 21, North 53 Degrees 50 Minutes 04 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

51. South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 7.00 feet (calculated) to a point; Thence

52. North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 80.00 feet (calculated) to a point in the Westerly line of Thurlow Avenue; Thence

53. Crossing said Thurlow Avenue, North 58 Degrees 33 Minutes 19 Seconds East (calculated), a distance of 4.25 feet (calculated) to a point; Thence

54. North 31 Degrees 26 Minutes 41 Seconds West (calculated), a distance of 12.19 feet (calculated) to a point; Thence

55. Running within bounds of Thurlow Avenue and Lot 9, Block 20, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 204.68 feet (calculated) to a point in the Westerly line of Summer Avenue; Thence

56. Along said Westerly line of Summer Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 103.69 feet (calculated) to a point; Thence

57. Crossing said Summer Avenue and along the Northerly line of Lot 9, Block 19, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 130.00 feet (calculated) to a point; Thence

58. North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 1.29 feet (calculated) to a point; Thence

59. Running within bounds of Lot 9, Block 19 and Rumson Avenue, North 49 Degrees 25 Minutes 15 Seconds East (calculated), a distance of 87.05 feet (calculated) to a point; Thence

60. Within bounds of Rumson Avenue, South 37 Degrees 44 Minutes 47 Seconds East (calculated), a distance of 107.23 feet (calculated) to a point; Thence

61. North 51 Degrees 34 Minutes 03 Seconds East (calculated), a distance of 40.94 feet (calculated) to a point in the Easterly line of Rumson Avenue; Thence

62. Along said Easterly line of Rumson Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 30.35 feet (calculated) to a point; Thence

63. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 80.05 feet (calculated) to a point; Thence

64. Along the Easterly line of Lot 18 in Block 18, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 30.69 feet (calculated) to a point; Thence

65. Traversing within bounds of Lot 18, Block 18, North 51 Degrees 52 Minutes 03 Seconds East (calculated), a distance of 5.73 feet (calculated) to a point; Thence

66. North 36 Degrees 36 Minutes 06 Seconds West (calculated), a distance of 63.04 feet (calculated) to a point; Thence

67. Continuing within bounds of Lot 18, Bloc 18, crossing Quincy Avenue, North 52 Degrees 09 Minutes 30 Seconds East (calculated), a distance of 134.37 feet (calculated) to a point in the Easterly line of Quincy Avenue; Thence

68. Traversing within Lot 9, Block 17, crossing Pembroke Avenue and running within bounds of Lot 9, Block 16, North 47 Degrees 48 Minutes 13 Seconds East (calculated), a distance of 371.81 feet (calculated) to a point in the Westerly line of Osborn Avenue; Thence

69. Along said line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 36.92 feet (calculated) to a point; Thence

70. Crossing Osborne Avenue, North 53 Degrees 27 Minutes 23 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

71. Along the Easterly line of Osborne Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 77.24 feet (calculated) to a point; Thence

72. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 160.10 feet (calculated) to a point; Thence

73. Along the Westerly line of Nassau Avenue, North 36 Degrees 32 Minutes 37 Seconds West (calculated), a distance of 16.90 feet (calculated) to a point; Thence

74. Crossing Nassau Avenue, North 51 Degrees 00 Minutes 53 Seconds East (calculated), a distance of 50.05 feet (calculated) to a point; Thence

75. Along the Easterly line of Nassau Avenue, South 36 Degrees 32 Minutes 37 Seconds East (calculated), a distance of 17.30 feet (calculated) to a point; Thence

76. Along the Northerly line of Lot 1, Block 14.01, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 115.68 feet (calculated) to a point; Thence

77. Along the Westerly line of Mansfield Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 16.81 feet (calculated) to a point; Thence

78. Crossing Mansfield Avenue, North 51 Degrees 23 Minutes 38 Seconds East (calculated), a distance of 50.33 feet (calculated) to a point; Thence

79. Along the Easterly line of Mansfield Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 16.88 feet (calculated) to a point; Thence

80. Along the Northerly line of Lot 1, Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

81. Along the Easterly line of Lancaster Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 11.66 feet (calculated) to a point; Thence

82. Crossing Lancaster Avenue, North 52 Degrees 42 Minutes 54 Seconds East (calculated), a distance of 50.21 feet (calculated) to a point; Thence

83. Along the Westerly line of Lancaster Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 10.56 feet (calculated) to a point; Thence

84. Along the Northerly line of Lot 1; Block 10.06, North 51 Degrees 28 Minutes 22 Seconds East (calculated), a distance of 125.81 feet (calculated) to a point; Thence

85. Along the Westerly line of Kenyon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 20.70 feet (calculated) to a point; Thence

86. Running within the right-of-way of Kenyon Avenue, North 49 Degrees 33 Minutes 30 Seconds East (calculated), a distance of 34.21 feet (calculated) to a point; Thence

87. North 31 Degrees 45 Minutes 28 Seconds West (calculated), a distance of 37.54 feet (calculated) to a point; Thence

88. North 56 Degrees 56 Minutes 07 Seconds East (calculated), a distance of 16.03 feet (calculated) to a point; Thence

89. Along the Easterly line of Kenyon Avenue, North 32 Degrees 02 Minutes 38 Seconds West (calculated), a distance of 67.15 feet (calculated) to a point; Thence

90. Traversing within bounds of Lot 7 Block 11.02, North 57 Degrees 52 Minutes 17 Seconds East (calculated), a distance of 63.38 feet (calculated) to a point; Thence

91. North 29 Degrees 17 Minutes 58 Seconds West (calculated), a distance of 3.37 feet (calculated) to a point; Thence

92. North 57 Degrees 40 Minutes 13 Seconds East (calculated), a distance of 61.47 feet (calculated) to a point; Thence

93. Along the Westerly line of Knight Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.42 feet (calculated) to a point; Thence

94. Crossing Knight Avenue and running within bounds of Lot 15, Block 11.01, North 57 Degrees 44 Minutes 52 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

95. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 22.93 feet (calculated) to a point; Thence

96. Crossing Jerome Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

97. Along the Easterly line of Jerome Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 7.63 feet (calculated) to a point; Thence

98. Along the Northerly line of Lot 15, Block 10.05, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

99. Along the Westerly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 8.63 feet (calculated) to a point; Thence

100. Crossing Iroquois Ave, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

101. Along the Easterly line of Iroquois Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 24.37 feet (calculated) to a point; Thence

102. Along the Northerly line of Lot 24, Block 9, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

103. Along the Huntington Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 71.78 feet (calculated) to a point; Thence

104. Crossing Huntington Avenue and running along the Northerly line of Lot 2, Block 8, North 58 Degrees 03 Minutes 26 Seconds East (calculated), a distance of 350.00 feet (calculated) to a point; Thence

105. Along the Westerly line of Granville Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 45.19 feet (calculated) to a point; Thence

106. Traversing within bounds of the right-of-way of Granville Ave, North 58 Degrees 01 Minutes 30 Seconds East (calculated), a distance of 38.75 feet (calculated) to a point; Thence

107. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.85 feet (calculated) to a point; Thence

108. Continuing within Granville Avenue and along the Northerly line of Lot 14, Block 7.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 136.25 feet (calculated) to a point; Thence

109. Along the Westerly line of Gladstone Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.44 feet (calculated) to a point; Thence

110. Crossing Gladstone Avenue, North 58 Degrees 37 Minutes 08 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

111. Along the Westerly line of Gladstone Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 0.99 feet (calculated) to a point; Thence

112. Along the Northerly line of Lot 14, Block 7.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

113. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 2.77 feet (calculated) to a point; Thence

114. North 57 Degrees 59 Minutes 06 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

115. Along the Westerly line of Frontenac Avenue, South 32 Degrees 06 Minutes 25 Seconds East (calculated), a distance of 4.66 feet (calculated) to a point; Thence

116. Traversing within the right-of-way of Frontenac Avenue, within bounds of Lot 14, Block 6.02, within right-of-way of Franklin Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 224.99 feet (calculated) to a point; Thence

117. Along the Easterly line of Franklin Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.89 feet (calculated) to a point; Thence

118. Along the Northerly line of Lot 7, Block 6.01 and within the right-of way of Exeter Avenue,  North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 135.69 feet (calculated) to a point; Thence

119. Traversing within Exeter Avenue and Lot 1, Block 6.03, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 130.59 feet (calculated) to a point; Thence

120. Running within bounds of Lot 1, Block 6.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 39.31 feet (calculated) to a point; Thence

121. Along the Westerly line of Lot 1.01, Block 5.02, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.59 feet (calculated) to a point; Thence

122. Along the Northerly line of Lot 1.01, Block 5.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

123. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.67 feet (calculated) to a point; Thence

124. Running within bounds of Lot 1, Block 4.03, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

125. Continuing within Lot , Block 4.03 and along the Easterly line of Lot 16, Block 5.01, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 79.67 feet (calculated) to a point; Thence

126. Along the Northerly line of Lot 16, Block 5.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

127. Along the Easterly line of Douglass Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.40 feet (calculated) to a point; Thence

128. Crossing Douglass Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

129. Along the Easterly line of Douglass Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 54.40 feet (calculated) to a point; Thence

130. Along the Northerly line of Lot 7, Block 4.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

131. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 4.00 feet (calculated) to a point; Thence

132. North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

133. Along the Westerly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 3.35 feet (calculated) to a point; Thence

134. Crossing Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 50.00 feet (calculated) to a point; Thence

135. Along the Easterly line of Delavan Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 84.65 feet (calculated) to a point; Thence

136. Along the Northerly line of Delavan Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 125.00 feet (calculated) to a point; Thence

137. Running within the right-of-way of Clermont Avenue, North 44 Degrees 57 Minutes 26 Seconds East (calculated), a distance of 42.85 feet (calculated) to a point; Thence

138. Continuing within right-of-way of Clermont Avenue and within bounds of Lot 5, Block 3.02, North 57 Degrees 41 Minutes 33 Seconds East (calculated), a distance of 70.76 feet (calculated) to a point; Thence

139. North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 5.97 feet (calculated) to a point; Thence

140. Along the Northerly line of Lot 5, Block 3.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 62.50 feet (calculated) to a point; Thence

141. Along the Westerly line of Clarendon Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 50.00 feet (calculated) to a point; Thence

142. Crossing Clarendon Avenue and along the Northerly line of Lot 4, Block 3.01, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 175.00 feet (calculated) to a point; Thence

143. Along the Westerly line of Brunswick Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 53.76 feet (calculated) to a point; Thence

144. Crossing Brunswick Avenue and traversing within bounds of Lot 7, Block 2.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 112.50 feet (calculated) to a point; Thence

145. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 29.57 feet (calculated) to a point; Thence

146. Along the easterly line of Lot 7, Block 2.02, South 57 Degrees 59 Minutes 21 Seconds West (calculated), a distance of 6.00 feet (calculated) to a point; Thence

147. South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 72.67 feet (calculated) to a point; Thence

148. Along the Northerly line of Lot 7, Block 2.02 and crossing Barclay Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 118.50 feet (calculated) to a point; Thence

149. Along the Easterly line of Barclay Avenue, North 32 Degrees 00 Minutes 39 Seconds West (calculated), a distance of 6.00 feet (calculated) to a point; Thence

150. Along the Northerly line o Lot 7, Block 2.01, crossing Argyle Avenue, along the Northerly line of Lot 7, Block 1.02, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 300.00 feet (calculated) to a point; Thence

151. Along the Westerly line of Andover Avenue, South 32 Degrees 00 Minutes 39 Seconds East (calculated), a distance of 3.00 feet (calculated) to a point; Thence

152.   Crossing Andover Avenue, along the Northerly line of Lot 7, Block 1.01 and traversing within Fredericksburg Avenue, North 57 Degrees 59 Minutes 21 Seconds East (calculated), a distance of 200.00 feet (calculated) to the point and place of beginning.

Containing 45.511 Acres more or less.

Being also known as part of Frederick Avenue, Lot 7, Block 1.01, part of Andover Avenue, Lot 7, Block 1.02, part of Argyle Avenue, Lot 7 Block 2.01, part of Barclay Avenue, part of Lot 7, Block 2.02, part of Brunswick Avenue, Lot 4, Block 3.01, part of Clarendon Avenue, part of lot 5, Block 3.02, Lot 1, Block 3.03, part of lot Clermont Avenue, Lot 5, Block 4.01, part of Delavan Avenue, Lot 7, Block 4.02, part of Lot 1, Block 4.03, part of Douglass Avenue, Lot 16, Block 5.01, Lot 1.01, Block 5.02, part of Exeter Avenue, Lot 7, Block 6.01, part of Franklin Avenue, part of Lot 14, Block 6.02, part of lot 1, Block 6.03, part of Frontenac Avenue, Lot 1 , Block 7, Lot 14, Block 7.01, part of Gladstone Avenue, Lot 14, Block 7.02, part of Granville Avenue, part of Lot 2, Block 8, part of Huntington Avenue, Lot 24, Block 9, part of Iroquois Avenue, Lot 15, Block 10.05, Lot 1, Block 10.06, part of Jerome Avenue, part of Lot 15, Block 11.01, part of Knight Avenue, part of Lot 7, Block 11.02, part of Kenyon Avenue, part of Lancaster Avenue, part of Mansfield Avenue, part of Nassau Avenue, part of Osborne Avenue, Lot 1, Block 14.01, part of Lot 9, Block 16, part of Pembroke Avenue, part of Lot 9, Block 17, part of Quincy Avenue, part of Lot 18, Block 18, part of Rumson Avenue, part of Lot 9, Block 19, Lot 1, Block 19.01, part of Summer Avenue, part of Lot 9, Block 20, part of Thurlow Avenue, Lot 9, Block 21, part of Union Avenue, Lot 9, Block 22, part of Vendome Avenue, part of Lot 9, Block 23, part of Lot 4, Block 24, part of Benson Avenue, part of Lot 4, Block 25, part of Decatur Avenue, part of Lot 2, Block 26, part of Washington Avenue, part of Lot 86, Block 27.01, part of Adams Avenue, part of Lot 1, Block 27.02, Lot 66, Block 28.01, part of Jefferson Avenue, Lot 46, Block 29.01, part of Madison Avenue, Lot 26, Block 30.01, part of Monroe Avenue, Lot 21, Block 31.01, Lot 1, Block 31.03, part of Coolidge Avenue, Lot 2, Block 32.01, and Surf Avenue on the Tax Map of the City of Margate, Atlantic County

TOGETHER WITH the two (2) "Temporary Construction Area Easements" as shown on the aforesaid map and more particular described as follows:

Temporary Construction Area Easement #1

Beginning at a point in the Westerly line of Granville Avenue, said point being located 184.73 feet from the intersection of the Southerly line of Atlantic Avenue and said Westerly line of Granville Avenue and running; Thence

1.   Traversing within bounds of the right-of-way of Granville Avenue, North 58 Degrees 41 Minutes 30 Seconds East, a distance of 13.44 feet to a point; Thence
2.   North 59 Degrees 10 Minutes 55 Seconds East, a distance of 27.15 feet to a point; Thence
3.   South 33 Degrees 17 Minutes 02 Seconds East, a distance of 114.56 feet to a point; Thence
4.   South 57 Degrees 59 Minutes 21 Seconds West, a distance of 4.38 feet to a point; Thence
5.   South 32 Degrees 00 Minutes 39 Seconds East, a distance of 3.85 feet to a point; Thence
6.   South 58 Degrees 01 Minutes 30 Seconds West, a distance of 38.75 feet to a point in the Westerly line of Granville Avenue; Thence
7.   Along said Westerly line of Granville Avenue, North 32 Degrees 00 Minutes 39 Seconds West, a distance of 119.09 feet to the point and place of beginning.

Containing 4,959 S.F. or 0.114 Acres more or less.

Temporary Construction Area Easement #2

Beginning at a point in the Easterly line of Delavan Avenue, said point being located 220.30 feet from the intersection of the Southerly line of Atlantic Avenue and said Easterly line of Delavan Avenue and running; Thence

1.   Along said Easterly line of Delavan Avenue, South 32 Degrees 00 Minutes 39 Seconds East, a distance of 80.35 feet to a point; Thence
2.   Traversing within the right-of-way of Delavan Avenue, South 57 Degrees 59 Minutes 21 Seconds West, a distance of 42.85 feet to a point; Thence
3.   North 30 Degrees 57 Minutes 34 Seconds West, a distance of 80.44 feet to a point; Thence
4.   North 58 Degrees 05 Minutes 45 Seconds East, a distance of 41.37 feet to the point and place of beginning.

Containing 3,385 S.F. or 0.078 Acres more or less.



# State of New Jersey
DEPARTMENT OF ENVIRONMENTAL PROTECTION
NATURAL & HISTORIC RESOURCES
Office of Engineering & Construction

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lt. Governor*

BOB MARTIN
*Commissioner*

Prepared by:

David C. Apy
Assistant Attorney General

## ADMINISTRATIVE ORDER NO. 2014-14

WHEREAS, beginning on October 28, 2012, and continuing through October 30, 2012, Superstorm Sandy struck the State of New Jersey, causing unprecedented damage and destruction; and

WHEREAS, oceanfront and other flood-prone communities lacking the benefits of flood hazard risk reduction measures experienced significantly more catastrophic damage than did surrounding communities that had such protective measures; and

WHEREAS, by Executive Order No. 104, dated October 27, 2012, Governor Christie declared and proclaimed that a State of Emergency exists in the State of New Jersey; and

WHEREAS, Executive Order No. 104 remains in effect; and

WHEREAS, by Executive Order No. 140, dated September 25, 2013, Governor Christie declared that the continued absence of flood hazard risk reduction measures in coastal communities creates an imminent threat to life, property, and the health, safety, and welfare of those communities; and

WHEREAS, N.J.S.A. 12:3-64 empowers the New Jersey Department of Environmental Protection to enter upon and take property in advance of making compensation therefor where for any reason it cannot acquire the property by agreement with the owner; and

WHEREAS, in Executive Order No. 140 Governor Christie declared that the New Jersey Department of Environmental Protection should rely on the statutory powers of N.J.S.A. 12:3-64 whenever it deems it appropriate to ensure the construction of flood hazard risk reduction measures; and

WHEREAS, in Executive Order No. 140 Governor Christie ordered and directed the New Jersey Department of Environmental Protection, through its Office of Flood Hazard Risk Reduction Measures, to lead and coordinate the acquisition of the necessary interests in real property to undertake flood hazard risk reduction measures; and

1

#2014054703
ATLANTIC COUNTY, NJ: EDWARD P. McGETTIGAN, COUNTY CLERK
VOL 13808 RECORDED 10/02/2014 11:04:59 AM
REC FEES $290.00
INST# 2014054703
RCPT# 1120263
RECD BY:Cathy

(36)

WHEREAS, in Executive Order No. 140 Governor Christie ordered and directed that no municipality, county, or any other agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution, which will or might in any way conflict with any of the provisions of that Order, or which will in any way interfere with or impede its achievement; and

WHEREAS, Executive Order No. 140 remains in effect; and

WHEREAS, the State and the United States Army Corps of Engineers signed a Project Partnership Agreement (the "PPA") on June 23, 2014 for the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island, New Jersey Hurricane and Storm Damage Reduction Project (the Project), for the construction, operation and maintenance of the Project; and

WHEREAS, the State is the Non-Federal Sponsor for the project per the PPA, and is responsible for obtaining necessary real estate; and

WHEREAS, on June 27, 2014, the United States Army Corps of Engineers formally issued a Notice to Proceed with acquisition of all necessary real estate for the project; and

WHEREAS, the United States Army Corps of Engineers, in coordination with the State of New Jersey, is scheduled to begin construction of the Project in the City of Margate and the Borough of Longport in or about December, 2014; and

WHEREAS, prior to construction, the United States Army Corps of Engineers requires that the State provide the easements and/or other real property interests that are necessary to construct and maintain the Project; and

WHEREAS, if the State does not obtain all required easements and/or other real property interests in the City of Margate, the United States Army Corps of Engineers cannot construct the flood hazard reduction measures in both the City of Margate and the Borough of Longport; and

WHEREAS, to date, certain private property owners in the City of Margate, whose names and subject interests are attached hereto as *Exhibit A*, have not transferred to the State the real property interests necessary for the construction of the Project, thereby jeopardizing construction of the Project in both the City of Margate and the Borough of Longport, and threatening the public health, safety, and welfare of both communities; and

WHEREAS, there is an immediate need for flood hazard risk reduction measures and the State has not been able to obtain the necessary real property interests by donation; and

2

WHEREAS, the immediate acquisition of the real property interests described in *Exhibit A* is necessary to commence construction of the Project in the City of Margate and the Borough of Longport, as well as to the continued protection of the public health, safety, and welfare of both communities; and

NOW THEREFORE, I, Bob Martin, Commissioner of the New Jersey Department of Environmental Protection, by virtue of the powers vested in me by the Constitution and statutes of this State, as well as the authority conferred on me by Executive Order No. 140, do hereby declare and order as follows:

1. The New Jersey Department of Environmental Protection Office of Flood Hazard Risk Reduction Measures hereby immediately enters upon and takes real property interest(s) in those parcels set forth in *Exhibit A*; and

2. The nature of the real property interest(s) taken pursuant to this Administrative Order shall conform with those interest(s) described in the form Deed of Easement attached hereto as *Exhibit B*; and

3. The actual metes and bounds description of the real property interest(s) taken pursuant to this Administrative Order is attached hereto as *Exhibit C*; and

4. Appraisals and good faith negotiations for any compensation due to the owners of such parcels for the interest(s) taken shall be undertaken in a manner not inconsistent with the procedures set out in the New Jersey Eminent Domain Act, N.J.S.A. 20:3-1 et seq. and applicable case law within a reasonable period of time.

THIS ORDER shall take effect immediately.  All other Administrative Orders or portions thereof that are inconsistent herewith are hereby superseded or repealed to the extent of the inconsistency.  A copy of this Order shall be delivered by certified and regular mail to the property owners detailed in *Exhibit A*.

Dated: 10/1/2014

By: _____
Bob Martin, Commissioner

STATE OF NEW JERSEY
COUNTY OF Mercer      SS.:

I CERTIFY that on October 1, 2014,

Bob Martin, Commissioner of the New Jersey Department of Environmental Protection, personally came before me and this person acknowledged under oath, to my satisfaction that this person:

1) is named in and personally signed this Administrative Order; and

2) signed, sealed and delivered this Administrative Order as his act and deed.

_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY

PARASKEVI VIVI GOGO
Notary Public
State of New Jersey
My Commission Expires 11/01/2014

4

# EXHIBIT A

| Private Parcels  - Owned in Fee Simple- Permanent Easement | | | |
|---|---|---|---|
| Block | Lot | Owner | Property Address |
| 7.01 | 6 | BLATSTEIN, BART & JIL | 111 S GLADSTONE AVE |
| 12 | 8 | GREENBERG, GEOFFREY & MICHELLE | 115 S LANCASTER AVE |
| 12 | 16 | WEBER, FRED & JOANNE MAZZA | 116 S KENYON AVE |
| 13 | 17 | DO, NGAN K & TRAN, DIEP | 116 S LANCASTER AVE |
| 13 | 8 & 18 | SHIEKMAN, MORTON B & ROBERTA Z | 117 S MANSFIELD AVE |
| 14 | 17 | HOLY NAME PROVINCE | 116 S MANSFIELD AVE |
| 15 | 9 | JOHNSTON,D, OWEN, A & MCLAUGHLIN, M | OSBORNE AVE |
| 15 | 19 | BLANK, SHELDON & CONNIE | 120 S NASSAU AVE |
| 18 | 9 | CHERNER, RICHARD A | 115 S RUMSON AVE |

| Private Parcel - with an Apparent but Unknown Possessory or Other Property Interest Over Parcel | | | |
|---|---|---|---|
| Block | Lot | Owner | Property Address |
| 5.03 | 1.01 | ANGLERS CLUB OF ABSECON ISLAND | 121 S EXETER AVENUE |

# EXHIBIT B

Prepared by:
State of New Jersey
Office of the Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625

_____

### DEED OF DEDICATION AND PERPETUAL STORM

### DAMAGE REDUCTION EASEMENT

THIS DEED OF DEDICATION AND PERPETUAL STORM DAMAGE REDUCTION EASEMENT is made this _____ day of _____ 2014 BY AND

BETWEEN

whose address is

referred to herein as Grantor,

AND

**THE STATE OF NEW JERSEY** referred to herein collectively as the Grantee,

### WITNESSETH

WHEREAS, Grantor is the owner of that certain tract of land, located in the City of Margate, County of Atlantic, State of New Jersey, and identified as the **Blocks and Lots** listed in Appendix A on the official tax map of the City of Margate, hereinafter the "Property," and Grantor holds the requisite interest to grant this Deed of Easement; and

WHEREAS, the Grantee recognizes that the beach at the City of Margate, New Jersey is subject to constant erosion and degradation, thereby destroying a valuable natural resource and threatening the safety and property of the Grantor and of all of the citizens of the State; and,

WHEREAS, the Grantee desires to participate with the United States Army Corps of Engineers to construct the **Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island, New Jersey, Hurricane and Storm Damage Reduction Project**, as defined in the June 23, 2014 Project Partnership Agreement between the Department of the Army and the State of New Jersey, hereinafter "Project"; and,

WHEREAS, construction of the Project includes periodic renourishment, which may be performed solely by the Grantee or in conjunction with the United States Army Corps of Engineers; and,

WHEREAS, in order to accomplish part of the Project, Grantees need a Perpetual Storm Damage Reduction Easement on portions of said Property herein described; and,

[1]

**WHEREAS**, the United States Army Corps of Engineers and/or State of New Jersey will not participate in the Project unless the Grantee acquires the real property interest herein described in all real property needed for the Project; and,

**WHEREAS**, the Grantee shall instruct the City of Margate to consider this Deed of Easement in establishing the full accessed value of any lands subject to such restriction; and

**WHEREAS**, the Grantor desires to cooperate in allowing the Project to take place on a portion of said Property; and,

**WHEREAS**, the Grantor acknowledges that it will benefit from the successful implementation of the Project; and,

**WHEREAS**, the Grantor acknowledges that after successful implementation of the Project the beach and dune are still subject to the forces of nature which can result in both erosion and accretion of the beach and dune; and,

**NOW, THEREFORE**, in consideration for the benefits to be received by the Grantor from the successful implementation of the Project, the Grantor grants and conveys to Grantees an irrevocable, assignable, perpetual and permanent easement as set forth herein:

**GRANT OF EASEMENT:** A perpetual and assignable easement and right-of-way for the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island, New Jersey, Hurricane and Storm Damage Reduction Project, in, on, over and across that land of the Property described as the Blocks and Lots listed in Appendix A and as depicted in Appendix B for use by the State of New Jersey and its representatives, agents, contractors and assigns to:

a.   Construct, preserve, patrol, operate, maintain, repair, rehabilitate, and replace a public beach, dune system, and other erosion control and storm damage reduction measures together with appurtenances thereto, including the right to deposit sand, to accomplish any alterations of the contours on said land, to construct berms and dunes, and to nourish and re-nourish periodically;

b.   Move, temporarily store and remove equipment and supplies;

c.   Erect and remove temporary structures;

d.   Perform any other work necessary and incident to the construction, periodic renourishment, and maintenance of the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island Initial Construction Project together with the right of public use and access;

e.   Post signs and plant vegetation on said dunes and berms;

f.   Erect, maintain, and remove silt screens and snow fences;

g.   Facilitate preservation of dune and vegetation through the limitation of public access to dune areas;

h.   Trim, cut, fell, and remove from said land all trees, underbrush, debris, obstructions, and any other vegetation, structures, and obstacles within the limits of the easement;

[2]

The easement reserves to the Grantor, the Grantor's heirs, successors and assigns the right to construct a private dune overwalk structure in accordance with any applicable Federal, State, or local laws or regulations, provided that such structure shall not violate the integrity of the dune in shape, dimension, or function. Prior approval of the plans and specifications for such structures must be obtained from the City of Margate and the State of New Jersey. Such structures are to be considered subordinate to the construction, operation, maintenance, repair, rehabilitation, and replacement of the project. The easement reserves to the Grantor, the Grantor's heirs, successors, and assigns all such rights and privileges as may be used and enjoyed without interfering with or abridging the rights and easements hereby conveyed to the Grantees, subject however to existing easements for utilities and pipelines, existing public highways, existing paved public roads and existing public streets. Grantor hereby expressly agrees not to grade or excavate within the easement area or to place therein any structure or material other than a dune walkover as referenced above without prior approval of the plans and specifications for said activities from the City of Margate, the State of New Jersey and/or any applicable Federal agency, as required.

**Duration of Easement:** The easement granted hereby shall be in perpetuity, and in the event that the City of Margate or the State of New Jersey shall become merged with any other geo-political entity or entities, the easement granted hereby shall run in favor of surviving entities. The covenants, terms, conditions and restrictions of this Deed of Easement shall be binding upon, and inure to the benefit of the parties hereto and their respective personal representatives, heirs, successors and assigns and shall continue as a servitude running in perpetuity with the land.

**Municipality to Maintain Beach:** The Grantee and/or the Municipality agrees, consistent with all Federal, State and local statutes and regulations, that at all times it shall use its best, good-faith efforts to cause the beach area abutting Grantor's lands to be maintained, consistent with any applicable Federal, State or local laws or regulations, notwithstanding any action or inaction of the State of New Jersey, Department of Environmental Protection or the United States Army Corps of Engineers to maintain the beach area.

**Character of Property:** Notwithstanding the foregoing, nothing herein is intended or shall be deemed to change the overall character of the Property as private property; nothing herein shall be deemed to grant to the Grantee or otherwise permit the Grantee or any other person to cross over or use any part of the Property which is not within the Easement Area; nothing herein is intended or shall be deemed to alter the boundary lines or setback lines of the Property.

**Miscellaneous:**

1.   The enforcement of the terms of this Easement shall be at the discretion of the Grantee and any forbearance by Grantee to exercise its rights under this Easement in the event of any violation by Grantor shall not be deemed or construed to be a waiver by Grantee of such term or of any subsequent violation or

[3]

of any of Grantee's rights under this Easement. No delay or omission by Grantee in the exercise of any right or remedy upon any violation by Grantor shall impair such rights or remedies or be construed as a waiver of such rights or remedies.

2.  The interpretation and performance of this Deed of Easement shall be governed by the laws of the State of New Jersey.

3.  If any provision of this Deed of Easement or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Easement or the application of such provision to persons or circumstances other than those to which it is found to be invalid, as the case may be, shall not be affected thereby.

4.  Any notice, demand, request, consent, approval or communication under this Deed of Easement shall be sent by regular first class mail, postage prepaid and by Certified Mail, Return Receipt Requested, addressed to the mailing addresses set forth above or any other address of which the relocating party shall notify the other, in writing.

5. The captions in this Deed of Easement have been inserted solely for convenience of reference and are not a part of this instrument and shall have no effect upon its construction or interpretation.

6. Structures not preexisting or part of the project are not authorized.

7. Grantor represents and warrants he/she/it holds the requisite ownership interest and authority to execute this Deed of Easement; and has made this Deed of Easement for the full and actual consideration as set forth herein.

8. This Deed may be executed in counterparts by the respective Parties, which together will constitute the original Deed.

**IN WITNESS WHEREOF,** with the parties understanding and agreeing to the above, they do hereby place their signatures on the date at the top of the first page.

Accepted by the                              Witnessed by:
**PROPERTY OWNER, GRANTOR**

_____              _____
GRANTOR                                      NOTARY PUBLIC OF THE
                                             STATE OF NEW JERSEY
Date _____

STATE OF NEW JERSEY

COUNTY OF _____ SS.:

I CERTIFY that on _____ 2013,

[INSERT GRANTOR(S) NAME(S)]

personally came before me and this person acknowledged under oath, to my satisfaction that this person (or if more than one, each person);

1) is named in and personally signed this Deed of Easement; and

2) signed, sealed and delivered this Deed of Easement as his or her act and deed.

_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY

Accepted by the                              Witnessed by:
**STATE OF NEW JERSEY, GRANTEE**

BY:_____              _____
Dave Rosenblatt                              NOTARY PUBLIC OF THE
Administrator                                STATE OF NEW JERSEY
Office of Flood Risk Reduction Measures

Date _____

# Appendix A

| Private Parcels - Owned in Fee Simple- Permanent Easement | | | |
|---|---|---|---|
| Block | Lot | Owner | Property Address |
| 7.01 | 6 | BLATSTEIN, BART & JIL | 111 S GLADSTONE AVE |
| 12 | 8 | GREENBERG, GEOFFREY & MICHELLE | 115 S LANCASTER AVE |
| 12 | 16 | WEBER, FRED & JOANNE MAZZA | 116 S KENYON AVE |
| 13 | 17 | DO, NGAN K & TRAN, DIEP | 116 S LANCASTER AVE |
| 13 | 8 & 18 | SHIEKMAN, MORTON B & ROBERTA Z | 117 S MANSFIELD AVE |
| 14 | 17 | HOLY NAME PROVINCE | 116 S MANSFIELD AVE |
| 15 | 9 | JOHNSTON,D, OWEN, A & MCLAUGHLIN, M | OSBORNE AVE |
| 15 | 19 | BLANK, SHELDON & CONNIE | 120 S NASSAU AVE |
| 18 | 9 | CHERNER, RICHARD A | 115 S RUMSON AVE |

| Private Parcel - with an Apparent but Unknown Possessory or Other Property Interest Over Parcel | | | |
|---|---|---|---|
| Block | Lot | Owner | Property Address |
| 5.03 | 1.01 | ANGLERS CLUB OF ABSECON ISLAND | 121 S EXETER AVENUE |

# Appendix B







## LEGEND

| | |
|---|---|
| | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| —x——x— | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| | EXISTING FIRE HYDRANT |
| | EXISTING CONCRETE MONUMENT |
| | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

0'   20'   40'   60'

## NOTES:

1. THIS PLAN IS BASED UPON:
—FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
—VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
—"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS QFN#00000627 (MAP #627)
—DEED BOOK 13379, PAGE 1
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREON WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

**Margaret Kulik**        8/9/2014
MARGARET KULIK                DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

EASEMENT ACQUISITION PARCEL MAP — LOT 16 BLOCK 12
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN—CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228—2200  —  FAX (856) 232—2346 — EMAIL design@ces—1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA2957700

DATE 03/28/14   SCALE 1"=20'   CES NO 3388   SHT NO 1 OF 1

FILE NO  12-16POS.dwg



LEGEND

| | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| | EXISTING FIRE HYDRANT |
| | EXISTING CONCRETE MONUMENT |
| | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

0'        20'        40'        60'

NOTES:

1. THIS PLAN IS BASED UPON:
   —FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
   —VERIFIED UPPER LIMIT OF WORK LINE ON 03/22/2014.
   —"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS CP#00000627 (MAP #827)
   —DEED BOOK 13471, PAGE 1
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREIN WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN, UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT, ANY REVISE WITHOUT AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USERS SOLE RISK AND WITHOUT LIABILITY TO CES.

EASEMENT ACQUISITION PARCEL MAP – LOT 17 BLOCK 13
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

_Margaret Kulik_   8/4/2014
MARGARET KULIK                           DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN-CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228-2200    —    FAX (856) 232-2349 — EMAIL. design@ces-1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA2795700

| DATE 05/28/14. | SCALE 1"=20' | CES NO 3358 | SHT NO 1 OF 1 |
| | | FILE NO 13-17POS.dwg | |



LEGEND

EXISTING OUTBOUND
EXISTING ADJOINING LOT LINE
EXISTING CURB
EXISTING EDGE OF PAVEMENT
EXISTING FENCE
EXISTING BLOCK NUMBER
EXISTING LOT NUMBER
EXISTING UTILITY POLE
EXISTING UTILITY POLE W/LIGHT
EXISTING FIRE HYDRANT
EXISTING CONCRETE MONUMENT
EXISTING IRON PIPE/REBAR

WORK AREA

EASEMENT PARCEL

NOTES:

1. THIS PLAN IS BASED UPON:
–FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
–VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
–"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS ON#0000827 (MAP #827)
–DEED BOOK 12471, PAGE 1
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREON WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AS, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

EASEMENT ACQUISITION PARCEL MAP – LOTS 8&18 BLOCK 13
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik          8/4/2014
MARGARET KULIK            DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN–CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228–2200         FAX (856) 228–2346 – EMAIL design@ces–1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27557700

DATE 05/29/14     SCALE 1"=20'     CES NO 3356     SHT NO 1 OF 1

FILE NO   13–18POS.dwg

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN. UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL, RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT, AND BEING WITHOUT WRITTEN AUTHORIZATION OR ADDITIONS BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.



## LEGEND

| | |
|---|---|
| ———— | EXISTING OUTBOUND |
| ———— | EXISTING ADJOINING LOT LINE |
| ———— | EXISTING CURB |
| ———— | EXISTING EDGE OF PAVEMENT |
| —X—X— | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| ☼ | EXISTING UTILITY POLE |
| ☼ | EXISTING UTILITY POLE W/LIGHT |
| ⛢ FH | EXISTING FIRE HYDRANT |
| ◻ | EXISTING CONCRETE MONUMENT |
| ◦ | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

NOTES:
1. THIS PLAN IS BASED UPON:
   –FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON
   08/05/2014
   –VERIFIED UPPER LIMIT OF WORK LINE ON 09/22/2014.
   –"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE
   AS OFM#0005126 (MAP #596)
   –DEED BOOK 2164, PAGE 302
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE
   REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREIN WAS VERIFIED BY THE
   NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF
   ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS
MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 8/28/2014,
BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE
RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF
PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN
HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF
THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR
EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE
LANDS AND NOT VISIBLE.

0'    30'    60'    90'

SCALE: 1" = 30'

EASEMENT ACQUISITION PARCEL MAP – LOT 17 BLOCK 14
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik                    8/4/2014
MARGARET KULIK                        DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
648 BERLIN–CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228–2200   –   FAX (856) 232–2348 – EMAIL, design@ces–1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27957700

DATE  08/28/14    SCALE  1"=30'    CES NO  3368    SHT NO  1 OF  1

FILE NO  14–17POS.dwg

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN, UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED
PROFESSIONAL RESPONSIBLE FOR THIS PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT. ANY USE OF
THIS PLAN WHICH ALTERS/MODIFIES OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USERS
SOLE RISK AND WITHOUT LIABILITY TO CES.





EASEMENT ACQUISITION PARCEL MAP — LOT 19 BLOCK 15
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

MARGARET KULIK                    8/4/2014
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943
PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
848 BERLIN–CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228–2200  •  FAX (856) 232–2345 — EMAIL dwg@ces–1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA2787700

DATE  05/28/14.    SCALE  1"=30'    CES NO  3356    SHT NO  1 OF 1

FILE NO  15–18POS.dwg



## LEGEND

| | |
|---|---|
| | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| —x— | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| ⚡ | EXISTING UTILITY POLE |
| ☼ PN | EXISTING UTILITY POLE W/LIGHT |
| ⬠ | EXISTING FIRE HYDRANT |
| ▣ | EXISTING CONCRETE MONUMENT |
| ⊙ | EXISTING IRON PIPE/REBAR |
| ░░░ | WORK AREA |
| ▨ | EASEMENT PARCEL |

SCALE: 1" = 30'

NOTES:
1. THIS PLAN IS BASED UPON:
-FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
-VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
-"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS CEN#0000596 (MAP #649)
-DEED BOOK 2841, PAGE 42.
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREIN WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/26/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

*Margaret Kulik*  8/4/2014
MARGARET KULIK                    DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

EASEMENT ACQUISITION PARCEL MAP – LOT 9 BLOCK 18
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN—CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08061
TELEPHONE (856) 228—2200    FAX (856) 232—2346 — EMAIL design@ces—1.com
N.J. CERTIFICATE OF AUTHORIZATION NO. 24GA27857700

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN, UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT. ANY RELIES WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.

DATE  03/28/14    SCALE  1"=30'    CES NO.  3386    SHT NO. 1 OF 1
FILE NO  18—9POS.dwg



EASEMENT ACQUISITION PARCEL MAP – LOT 1.01 BLOCK 5.03
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik                    8/4/2014
MARGARET KULIK                    DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS & LAND SURVEYORS
645 BERLIN–CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228–2200  –  FAX (856) 232–2348  –  EMAIL design@ces-1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27957700

DATE 05/28/14    SCALE 1"=30'    CES NO. 3308    SHT NO. 1 OF 1
FILE NO. 5.03–1.01PDS.dwg

# EXHIBIT C





## LEGEND

| | |
|---|---|
| | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| | EXISTING FIRE HYDRANT |
| | EXISTING CONCRETE MONUMENT |
| | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

0'      30'      60'      90'

**NOTES:**

1. THIS PLAN IS BASED UPON:
—FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014.
—VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
—"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS OFN#0000627 (MAP #627)
—DEED BOOK 13379, PAGE 1
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREON WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR  PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY  DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED  BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS.  THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS.  IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

EASEMENT ACQUISITION PARCEL MAP — LOT 8 BLOCK 12
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik          8/4/2014
**MARGARET KULIK**              DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
**CONSULTING ENGINEER SERVICES**
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN–CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 229–2200  —  FAX (856) 232–2348 — EMAIL  design@ces–1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27957700

DATE  05/28/14   SCALE  1"=30'   CES NO  3358    SHT NO  1 OF 1

FILE NO    12–8POS.dwg

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN. UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT. ANY REUSE WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.



LEGEND

EXISTING OUTBOUND
EXISTING ADJOINING LOT LINE
EXISTING CURB
EXISTING EDGE OF PAVEMENT
EXISTING FENCE
EXISTING BLOCK NUMBER
EXISTING LOT NUMBER
EXISTING UTILITY POLE
EXISTING UTILITY POLE W/LIGHT
EXISTING FIRE HYDRANT
EXISTING CONCRETE MONUMENT
EXISTING IRON PIPE/REBAR

WORK AREA

EASEMENT PARCEL

0'     20'     40'     60'

NOTES:
1. THIS PLAN IS BASED UPON:
   —FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES
   FIELD ON 05/05/2014
   —VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
   —"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY
   CLERK'S OFFICE AS CFN#0000527 (MAP #827)
   —DEED BOOK 13379, PAGE 1
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A
   CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREIN WAS
   VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND
   U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND
BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD
SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT
SUPERVISION, IN ACCORDANCE WITH THE RULES AND
REGULATIONS PROMULGATED BY THE STATE BOARD OF
PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE
INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE
CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD
SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY,
THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS
AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN, UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED
PROFESSIONAL ENGINEER FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT. ANY REUSE
WITHOUT WRITTEN AUTHORIZATION, AN ADAPTATION BY USE FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S
SOLE RISK AND WITHOUT LIABILITY TO CES.

EASEMENT ACQUISITION PARCEL MAP – LOT 16 BLOCK 12
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

_Margaret Kulik_          8/4/2014
MARGARET KULIK              DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN–CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228–2200  —  FAX (856) 232–2345 — EMAIL design@ces-1.com
NJ. CERTIFICATE OF AUTHORIZATION No. 24GA27657700

DATE 05/28/14   SCALE 1"=20'   CES NO 3388   SHT NO 1 OF 1
                                          FILE NO 12-16PGS.dwg



BLOCK 13
LOT 18

BLOCK 13
LOT 17
4,918± SF
DB 13471 PG 1

EXISTING
DWELLING
FF 14.15

LANCASTER AVENUE
(50.00' WIDE ROW)—TAX MAP

AREA OF EASEMENT
ACQUISITION
785± SF

BLOCK 10.06
LOT 1
MARGATE CITY PUBLIC BEACH

UPPER LIMIT
OF WORK

**LEGEND**

| | |
|---|---|
| ———————————— | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| | EXISTING FIRE HYDRANT |
| | EXISTING CONCRETE MONUMENT |
| | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

0'     20'     40'     60'

EASEMENT ACQUISITION PARCEL MAP — LOT 17 BLOCK 13
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

*Margaret Kulik*     8/4/2014
**MARGARET KULIK**                        DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
**CONSULTING ENGINEER SERVICES**
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
648 BERLIN—CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228—2200   —   FAX (856) 232—2346 — EMAIL design@ces—1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27957700

| DATE 05/28/14 | SCALE 1"=20' | CES NO 3385 | SHT NO 1 OF 1 |
|---|---|---|---|
| | | | FILE NO 13—17POS.dwg |

**NOTES:**

1, THIS PLAN IS BASED UPON:
—FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
—VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
—PLAN OF MARGATE PARK FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS CEN#0000827 (MAP #627)
—DEED BLOCK 13471, PAGE 1
2, THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3, THE UPPER LIMIT OF WORK LINE SHOWN HEREON WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN. UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED PRODUCT. ANY REUSE WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.



LEGEND

| | |
|---|---|
| | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| | EXISTING FIRE HYDRANT |
| | EXISTING CONCRETE MONUMENT |
| | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

EASEMENT ACQUISITION PARCEL MAP – LOTS 8&18 BLOCK 13
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik                    8/4/2014
**MARGARET KULIK**                 DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN-CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228-2200  —  FAX (856) 232-2346 — EMAIL  design@ces-1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27657700

| DATE  05/28/14 | SCALE  1"=20' | CES NO  3386 | SHT NO  1 OF 1 |
|---|---|---|---|
| | | FILE NO | 13-18POS.dwg |

NOTES:

1. THIS PLAN IS BASED UPON:
  —FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES  FIELD ON
  05/05/2014
  —VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
  —"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE
  AS CFN#0000027 (MAP #827)
  —DEED BOOK 13471, PAGE 1
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A  CURRENT TITLE
REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREIN WAS  VERIFIED BY THE
NJDEP BUREAU OF COASTAL ENGINEERING  AND U.S. ARMY CORPS OF
ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS
MAP OR  PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014,
BY ME OR UNDER MY  DIRECT SUPERVISION, IN ACCORDANCE WITH THE
RULES AND REGULATIONS PROMULGATED  BY THE STATE BOARD OF
PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN
HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF
THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR
EASEMENTS,  IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE
LANDS AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN, UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED
PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT, AND REUSE
WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S
SOLE RISK AND WITHOUT LIABILITY TO CES.





LEGEND

EXISTING OUTBOUND
EXISTING ADJOINING LOT LINE
EXISTING CURB
EXISTING EDGE OF PAVEMENT
EXISTING FENCE
BLOCK 4 — EXISTING BLOCK NUMBER
LOT 11 — EXISTING LOT NUMBER
EXISTING UTILITY POLE
EXISTING UTILITY POLE W/LIGHT
EXISTING FIRE HYDRANT
EXISTING CONCRETE MONUMENT
EXISTING IRON PIPE/REBAR

WORK AREA

EASEMENT PARCEL

NOTES:

1. THIS PLAN IS BASED UPON:
—FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
—VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
—"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS CFN#0000596 (MAP #596)
—DEED BOOK 4495, PAGE 254
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREIN WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IM ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN. UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL ACKNOWLEDGE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHENTIC DOCUMENT, AND THOSE WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.

EASEMENT ACQUISITION PARCEL MAP — LOT 9 BLOCK 15
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik                      8/4/2014
MARGARET KULIK                      DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN-CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228-2200   —   FAX (856) 322-2346 — EMAIL  design@ces-1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27857700

DATE  05/28/14      SCALE  1"=30'      CES NO  3366      SHT NO  1 OF  3

FILE NO      15-9POS.dwg



LEGEND

| | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| x —— x | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| -o- | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| FH | EXISTING FIRE HYDRANT |
| | EXISTING CONCRETE MONUMENT |
| ⊙ | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

0'     30'     60'     90'

SCALE: 1" = 30'

NOTES:

1. THIS PLAN IS BASED UPON:
—FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
—VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
—"PLAN OF MARGATE PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS CFN#0000596 (MAP #596)
—DEED BOOK 3762, PAGE 98
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREON WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN. UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT. ANY PERSON WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION FOR THE SPECIFIC PROGRAM DESIGNED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.

EASEMENT ACQUISITION PARCEL MAP — LOT 19 BLOCK 15
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

*Margaret Kulik*        8/4/2014

**MARGARET KULIK**        DATE

PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
845 BERLIN-CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 229-2200  —  FAX (856) 232-2346  —  EMAIL, design@ces-i.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27957700

| DATE | 05/28/14 | SCALE | 1"=30' | CES NO. | 3366 | SHT NO | 1 OF 1 |

FILE NO    15-19POS.dwg



LEGEND

| | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| X——X | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| | EXISTING FIRE HYDRANT |
| | EXISTING CONCRETE MONUMENT |
| | EXISTING IRON PIPE/REBAR |
| | WORK AREA |
| | EASEMENT PARCEL |

0'   30'   60'   90'

SCALE: 1" = 30'

NOTES:

1. THIS PLAN IS BASED UPON:
—FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014.
—VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
—"PLAN OF RUMSON PARK" FILED IN THE ATLANTIC COUNTY CLERK'S OFFICE AS CFN#0000596 (MAP #596)
—DEED BOOK 2941, PAGE 45
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREON WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN, UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT. ANY ALTERATIONS WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.

EASEMENT ACQUISITION PARCEL MAP — LOT 9 BLOCK 18
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik        8/4/2014
MARGARET KULIK          DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
645 BERLIN-CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228-2200    —    FAX (856) 232-2346 — EMAIL design@ces—1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27957700

DATE _05/28/14    SCALE _1"=30'    CES NO _3366    SHT NO _1_ OF _1_

FILE NO   18-9POS.dwg



LEGEND

| | |
|---|---|
| ———— OB ———— | EXISTING OUTBOUND |
| | EXISTING ADJOINING LOT LINE |
| | EXISTING CURB |
| | EXISTING EDGE OF PAVEMENT |
| —x—— x—— | EXISTING FENCE |
| BLOCK 4 | EXISTING BLOCK NUMBER |
| LOT 11 | EXISTING LOT NUMBER |
| ○ | EXISTING UTILITY POLE |
| | EXISTING UTILITY POLE W/LIGHT |
| | EXISTING FIRE HYDRANT |
| □ | EXISTING CONCRETE MONUMENT |
| ● | EXISTING IRON PIPE/REBAR |

WORK AREA

EASEMENT PARCEL

NOTES:

1. THIS PLAN IS BASED UPON:
—FIELDWORK PERFORMED BY CONSULTING ENGINEER SERVICES FIELD ON 05/05/2014
—VERIFIED UPPER LIMIT OF WORK LINE ON 05/22/2014.
—OFFICIAL TAX MAP OF THE CITY OF MARGATE.
—DEED BOOK N, PAGE 363
—MINOR SUBDIVISION PLAN, FILED MAP #M2012054519
2. THIS SURVEY WAS PREPARED WITHOUT THE BENEFIT OF A CURRENT TITLE REPORT.
3. THE UPPER LIMIT OF WORK LINE SHOWN HEREON WAS VERIFIED BY THE NJDEP BUREAU OF COASTAL ENGINEERING AND U.S. ARMY CORPS OF ENGINEERS.

TO:
1) USACOE
2) OFFICE OF FLOOD HAZARD RISK REDUCTION MEASURES

I HEREBY DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THIS MAP OR PLAN IS THE RESULT OF A FIELD SURVEY MADE ON 5/28/2014, BY ME OR UNDER MY DIRECT SUPERVISION, IN ACCORDANCE WITH THE RULES AND REGULATIONS PROMULGATED BY THE STATE BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS. THE INFORMATION SHOWN HEREIN CORRECTLY REPRESENTS THE CONDITIONS FOUND AT, AND AS OF THE DATE OF THE FIELD SURVEY, EXCEPT SUCH IMPROVEMENTS OR EASEMENTS, IF ANY, THAT MAY BE LOCATED BELOW THE SURFACE OF THE LANDS AND NOT VISIBLE.

THIS PLAN IS A REPRODUCTION OF THE ORIGINAL PLAN. UNLESS THIS PLAN HAS THE RAISED SEAL OF THE LICENSED PROFESSIONAL RESPONSIBLE FOR THE PLAN, IT SHALL NOT BE CONSIDERED AN AUTHORIZED DOCUMENT. ANY REUSE WITHOUT WRITTEN AUTHORIZATION OR ADAPTATION BY CES FOR THE SPECIFIC PURPOSE INTENDED WILL BE AT USER'S SOLE RISK AND WITHOUT LIABILITY TO CES.

EASEMENT ACQUISITION PARCEL MAP – LOT 1.01 BLOCK 5.03
SHOWING THE PARCEL TO BE ACQUIRED IN THE
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

Margaret Kulik                8/4/2014
MARGARET KULIK                   DATE
PROFESSIONAL LAND SURVEYOR, NEW JERSEY LIC. NO. 38943

PREPARED BY
CONSULTING ENGINEER SERVICES
PROFESSIONAL ENGINEERS, PLANNERS, & LAND SURVEYORS
646 BERLIN—CROSS KEYS ROAD, SUITE 1, SICKLERVILLE, NJ 08081
TELEPHONE (856) 228—2200  —  FAX (856) 232—2348 — EMAIL design@ces—1.com
N.J. CERTIFICATE OF AUTHORIZATION No. 24GA27957700

DATE _05/28/14_   SCALE _1"=30'_   OES NO _3386_   SHT NO _1 OF_1

FILE NO _5.03-1.01POS.dwg_



# State of New Jersey

DEPARTMENT OF ENVIRONMENTAL PROTECTION
NATURAL & HISTORIC RESOURCES
Office of Engineering & Construction

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lt. Governor*

BOB MARTIN
*Commissioner*

ATLANTIC COUNTY, NJ
EDWARD P. McGETTIGAN, COUNTY CLERK
RCPT # 1120263 RECD BY Cathy
VOL 13808
REC FEES $450.00
RECORDED 10/02/2014 11:04:59 AM
INST # 2014054704

Prepared by:

David C. Apy
Assistant Attorney General

## ADMINISTRATIVE ORDER NO. 2014-15

WHEREAS, beginning on October 28, 2012, and continuing through October 30, 2012, Superstorm Sandy struck the State of New Jersey, causing unprecedented damage and destruction; and

WHEREAS, oceanfront and other flood-prone communities lacking the benefits of flood hazard risk reduction measures experienced significantly more catastrophic damage than did surrounding communities that had such protective measures; and

WHEREAS, by Executive Order No. 104, dated October 27, 2012, Governor Christie declared and proclaimed that a State of Emergency exists in the State of New Jersey; and

WHEREAS, Executive Order No. 104 remains in effect; and

WHEREAS, by Executive Order No. 140, dated September 25, 2013, Governor Christie declared that the continued absence of flood hazard risk reduction measures in coastal communities creates an imminent threat to life, property, and the health, safety, and welfare of those communities; and

WHEREAS, N.J.S.A. 12:3-64 empowers the New Jersey Department of Environmental Protection to enter upon and take property in advance of making compensation therefor where for any reason it cannot acquire the property by agreement with the owner; and

WHEREAS, in Executive Order No. 140 Governor Christie declared that the New Jersey Department of Environmental Protection should rely on the statutory powers of N.J.S.A. 12:3-64 whenever it deems it appropriate to ensure the construction of flood hazard risk reduction measures; and

WHEREAS, in Executive Order No. 140 Governor Christie ordered and directed the New Jersey Department of Environmental Protection, through its Office of Flood Hazard Risk Reduction Measures, to lead and coordinate the acquisition of the necessary interests in real property to undertake flood hazard risk reduction measures; and

1



WHEREAS, in Executive Order No. 140 Governor Christie ordered and directed that no municipality, county, or any other agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution, which will or might in any way conflict with any of the provisions of that Order, or which will in any way interfere with or impede its achievement; and

WHEREAS, Executive Order No. 140 remains in effect; and

WHEREAS, the State and the United States Army Corps of Engineers signed a Project Partnership Agreement (PPA) on June 23, 2014 for the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island, New Jersey Hurricane and Storm Damage Reduction Project (the Project) for the construction, operation, and maintenance of the Project; and

WHEREAS, the State is the Non-Federal Sponsor for the Project pursuant to the PPA and is responsible for obtaining necessary real estate interests; and

WHEREAS, on June 27, 2014, the United States Army Corps of Engineers formally issued a Notice to Proceed with acquisition of all necessary real estate for the project; and

WHEREAS, the United States Army Corps of Engineers, in coordination with the State of New Jersey, is scheduled to begin construction of the Project in the City of Margate and the Borough of Longport in or about December, 2014; and

WHEREAS, prior to construction, the United States Army Corps of Engineers requires that the State provide the easements and/or other real property interests that are necessary to construct and maintain the Project; and

WHEREAS, if the State does not obtain all required easements and/or other real property interests in the City of Margate, the United States Army Corps of Engineers cannot construct the flood hazard reduction measures in both the City of Margate and the Borough of Longport; and

WHEREAS, the Project's design includes a dune and a renourished beach which will extend ocean ward beyond the mean high tide water line, and will thereby extend into certain riparian areas over which riparian grants are held; and

WHEREAS, such real estate property interests over riparian grants that are required for the Project are depicted on the attached map shown in *Exhibit A*; and

WHEREAS, to date, certain owners of riparian grants in the City of Margate, whose last-known names and subject interests are attached hereto as *Exhibit B,* have not transferred to the State the real property interests necessary for the construction of the Project, thereby

2

jeopardizing construction of the Project in not only the City of Margate but also the Borough of Longport, and threatening the public health, safety, and welfare of both communities; and

WHEREAS, there is an immediate need for flood hazard risk reduction measures and the State has not been able to obtain the necessary real property interests from the riparian grant owners; and

WHEREAS, the immediate acquisition of the real property interests described in *Exhibit B* is necessary to commence construction of the Project in the City of Margate and the Borough of Longport, as well as to the continued protection of the public health, safety, and welfare of both communities; and

NOW THEREFORE, I, Bob Martin, Commissioner of the New Jersey Department of Environmental Protection, by virtue of the powers vested in me by the Constitution and statutes of this State, as well as the authority conferred on me by Executive Order No. 140, do hereby declare and order as follows:

1. A map depicting the real property interest(s) taken pursuant to this Administrative Order is attached hereto as *Exhibit A*; and

2. The New Jersey Department of Environmental Protection Office of Flood Hazard Risk Reduction Measures hereby immediately enters upon and takes real property interest(s) in those parcels set forth in *Exhibit B*; and

3. The nature of the real property interest(s) taken pursuant to this Administrative Order shall conform with those interest(s) described in the Form Deed of Easement attached hereto as *Exhibit C*; and

4. Appraisals and good faith negotiations for any compensation due to the riparian grant owners for the interest(s) taken shall be undertaken in a manner not inconsistent with the procedures set out in the New Jersey Eminent Domain Act, N.J.S.A. 20:3-1 et seq. and applicable case law within a reasonable amount of time.

THIS ORDER shall take effect immediately. All other Administrative Orders or portions thereof that are inconsistent herewith are hereby superseded or repealed to the extent of the inconsistency. To the extent practicable a copy of this Order shall be delivered by certified and regular mail to the property owners detailed in *Exhibit B*. To further effectuate notice, this

3

Order and the information contained in its exhibits shall also be published in the newspaper of record, the Press of Atlantic City. To the extent additional information becomes available to the State about the ownership of the subject riparian grants, the State will deliver this Order by certified and regular mail to all new addresses and persons associated with the updated information.

Dated: 10/1/2014

By: _____
Bob Martin, Commissioner

STATE OF NEW JERSEY
COUNTY OF Mercer    SS.:

I CERTIFY that on October 1, 2014,

Bob Martin, Commissioner of the New Jersey Department of Environmental Protection, personally came before me and this person acknowledged under oath, to my satisfaction that this person:

1) is named in and personally signed this Administrative Order; and

2) signed, sealed and delivered this Administrative Order as his act and deed.

_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY

PARASKEVI VIVI GOGO
Notary Public
State of New Jersey
My Commission Expires 11/01/2014

4

# EXHIBIT A







ATLANTIC AVENUE
GRANVILLE AVENUE
GLADSTONE AVENUE
FRONTENAC AVENUE
FRANKLIN AVENUE
EXETER AVENUE
ESSEX AVENUE
DOUGLASS AVENUE
DELAVAN AVENUE
CLERMONT AVENUE
CLARENDON AVENUE
BRUNSWICK AVENUE
BARCLAY AVENUE
ARGYLE AVENUE
ANDOVER AVENUE
FREDERICKSBURG AVENUE
7.02
7.01
6.02
6.01
6.03
5.02
5.01
5.03
4.02
4.01
4.03
3.02
3.01
3.03
2.02
2.01
1.02
1.01
T-1
T-2
MCA-14
MCA-15
MCA-16
ATLANTIC OCEAN

| Margate City Riparian Grant Information | | | | | |
|---|---|---|---|---|---|
| Parcel Tag | Grantee | Date Issued | Liber | Page | Parcel Area (Acres) |
| MCA-14 | Ventnor Syndicate | 5/26/1910 | S | 652 | 8.32 |
| MCA-15 | Thomas Durham | 7/28/1900 | N | 353 | 3.96 |
| MCA-16 | Camden & Atlantic Railroad Company | 9/12/1884 | I | 506 | 22.90 |

| Ventnor Syndicate Sub-Grant | |
|---|---|
| Parcel Tag | Parcel Area (Acres) |
| T-1 | 3.98 |
| T-2 | 4.33 |

# Legend

CES Bulkhead Survey Line (Upper Work Limit)

USACE Seaward Toe of Slope (Lower Work Limit)

Riparian Grant Boundaries

Riparian Sub-Grant Boundaries

RIPARIAN GRANT EXTENTS WITHIN WORK LIMITS

\NJDEP.jpg

## Legend

- ————  CES Bulkhead Survey Line
- - - - -  USACE Screwed Toe of Slope
- ————  Riparian Grant Boundaries
- ————  Riparian Grant Sub-Section Boundaries

### Margate City — Riparian Grant Data

| Grantee | Date Issued | Liber | Page | Parcel Tag | Area |
|---|---|---|---|---|---|
| Justus Sackett Sr. | 1/22/1913 | T | 680 | MGN-1 | |
| Dora Ellis | 3/13/1900 | F | 425 | MGN-2 | |
| Irene E. Navarro | 9/28/1907 | R | 479 | MGN-3 | |
| John R. Navarro | 9/28/1907 | R | 479 | MGN-4 | |
| Irene E. Navarro | 9/28/1907 | R | 473 | MGN-5 | |
| Anthony Gerdzen Jr. | 7/29/1908 | S | 92 | MGN-6 | |
| F. Clement Kellman | | | | | |

GRAPHIC SCALE

OVERALL PLAN OF UPPER LIMIT OF WORK LINE

MARGATE CITY
PLATES 20, 21 22 & 23
CITY OF MARGATE, ATLANTIC COUNTY, NEW JERSEY

New Jersey Department of Environmental Protection (NJDEP)
Bureau of Coastal Engineering
Margate City Riparian Grant Information
Metes & Bounds

MCA-1

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 176,622.7 and Easting 488,826.0 in New Jersey State Plane Coordinate System NAD83, thence

N 35° 39' 35.2" W a distance of 599.6 feet to a point (1); thence
N 54° 58' 28.8" E a distance of 50.1 feet to a point (2); thence
S 49° 38' 14.5" E a distance of 603.4 feet to a point (3); thence
S 41° 42' 22.69" W a distance of 50.2 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 176,622.7 and Easting 488,826.0 in New Jersey State Plane Coordinate System NAD83.

MCA-2

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing and Easting in New Jersey State Plane Coordinate System NAD83, thence

N 35° 44' 3.2" W a distance of 411.4 feet to a point (1); thence
N 54° 40' 28.7" E a distance of 126.1 feet to a point (2); thence
S 49° 44' 10.9" E a distance of 414.3 feet to a point (3); thence
S 56° 3' 16.9" W a distance of 125.0 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 176,739.3 and Easting 489,010.9 in New Jersey State Plane Coordinate System NAD83.

MCA-3

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 176,852.2 and Easting 489,169.5 in New Jersey State Plane Coordinate System NAD83, thence

N 35° 44' 3.2" W a distance of 509.1 feet to a point (1); thence
N 55° 22' 52.8" E a distance of 105.5 feet to a point (2); thence
N 36° 8' 12.5" W a distance of 112.3 feet to a point (3); thence
N 55° 26' 9.6" E a distance of 105.5 feet to a point (4); thence
S 49° 37' 24.7" W a distance of 622.2 feet to a point (5); thence
S 56° 3' 16.9" W a distance of 211.5 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 176,852.2 and Easting 489,169.5 in New Jersey State Plane Coordinate System NAD83.

MCA-4

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 176,998.7 and Easting 489,375.4 in New Jersey State Plane Coordinate System NAD83, thence

N 35° 42' 4.0" W a distance of 517.6 feet to a point (1); thence
N 53° 49' 52.8" E a distance of 34.8 feet to a point (2); thence
S 49° 31' 52.8" E a distance of 516.6 feet to a point (3); thence
S 56° 3' 16.9" W a distance of 35.4 feet to a point (4); thence

1

ENDING at the point of origin, said point being further described as Northing 176,998.7 and Easting 489,375.4 in New Jersey State Plane Coordinate System NAD83.

<u>MCA-5</u>

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,090.9 and Easting 489,505.1 in New Jersey State Plane Coordinate System NAD83, thence

> N 35° 45′ 15.2″ W a distance of 511.8 feet to a point (1); thence
> N 54° 25′ 1.8″ E a distance of 59.4 feet to a point (2); thence
> S 50° 21′ 8.9″ E a distance of 3.8 feet to a point (3); thence
> N 55° 23′ 14.2″ E a distance of 12.3 feet to a point (4); thence
> S 49° 32′ 49.5″ E a distance of 509.8 feet to a point (3); thence
> S 56° 3′ 16.9″ W a distance of 72.5 feet to a point (5); thence

ENDING at the point of origin, said point being further described as Northing 177,090.9 and Easting 489,505.1 in New Jersey State Plane Coordinate System NAD83.

<u>MCA-6</u>

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,265.9 and Easting 489,751.0 in New Jersey State Plane Coordinate System NAD83, thence

> N 35° 33′ 15.3″ W a distance of 515.1 feet to a point (1); thence
> N 52° 57′ 20.5″ E a distance of 3.4 feet to a point (2); thence
> S 45° 17′ 46.9″ E a distance of 2.3 feet to a point (3); thence
> N 54° 3′ 26.2″ E a distance of 123.7 feet to a point (4); thence
> S 49° 56′ 53.7″ E a distance of 522.6 feet to a point (5); thence
> S 63° 37′ 16.7″ W a distance of 40.6 feet to a point (6); thence
> S 56° 3′ 16.9″ W a distance of 85.4 feet to a point (7); thence

ENDING at the point of origin, said point being further described as Northing 177,265.9 and Easting 489,751.0 in New Jersey State Plane Coordinate System NAD83.

<u>MCA-7</u>

*Tract 1*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,334.4 and Easting 489,856.5 in New Jersey State Plane Coordinate System NAD83, thence

> N 35° 21′ 11.1″ W a distance of 522.6 feet to a point (1); thence
> N 53° 21′ 2.0″ E a distance of 24.9 feet to a point (2); thence
> N 51° 19′ 42.5″ W a distance of 6.8 feet to a point (3); thence
> N 36° 23′ 23.3″ E a distance of 81.8 feet to a point (4); thence
> S 37° 2′ 39.5″ E a distance of 571.4 feet to a point (5); thence
> S 63° 52′ 2.2″ W a distance of 103.5 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 177,334.4 and Easting 489,856.5 in New Jersey State Plane Coordinate System NAD83.

*Tract 2*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,406.5 and Easting 489,992.9 in New Jersey State Plane Coordinate System NAD83, thence

N 37° 2' 39.5" W a distance of 579.8 feet to a point (1); thence
N 54° 48' 18.5" E a distance of 4.2 feet to a point (2); thence
N 35° 23' 50.6" W a distance of 10.3 feet to a point (3); thence
N 56° 18' 10.7" E a distance of 78.5 feet to a point (4); thence
N 38° 18' 5.4" W a distance of 1.7 feet to a point (5); thence
N 56° 30' 21.0" E a distance of 77.6 feet to a point (6); thence
S 48° 15' 25.3" E a distance of 612.0 feet to a point (7); thence
S 63° 37' 16.7" W a distance of 161.9 feet to a point (8); thence

ENDING at the point of origin, said point being further described as Northing 177,406.5 and Easting 489,992.9 in New Jersey State Plane Coordinate System NAD83.

*Tract 3*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,505.9 and Easting 489,180.9 in New Jersey State Plane Coordinate System NAD83, thence

N 36° 57' 47" W a distance of 629.3 feet to a point (1); thence
N 53° 45' 50" E a distance of 81.9 feet to a point (2); thence
S 35° 53' 50" E a distance of 4.9 feet to a point (3); thence
N 53° 44' 56" E a distance of 78.4 feet to a point (4); thence
S 36° 57' 21" E a distance of 648.0 feet to a point (5); thence
S 62° 8' 7" W a distance of 162.1 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 177,505.9 and Easting 490,180.9 in New Jersey State Plane Coordinate System NAD83.

*Tract 4*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,605.3 and Easting 490,368.9 in New Jersey State Plane Coordinate System NAD83, thence

N 36° 59' 5" W a distance of 665.76 feet to a point (1); thence
N 53° 59' 12" E a distance of 2.9 feet to a point (2); thence
S 55° 5' 33" E a distance of 1.7 feet to a point (3); thence
N 53° 38' 17" E a distance of 81.8 feet to a point (4); thence
N 30° 52' 21" W a distance of 1.2 feet to a point (5); thence
N 53° 34' 42" E a distance of 75.0 feet to a point (6); thence
S 36° 57' 34" E a distance of 689.4 feet to a point (7); thence
S 62° 7' 15" W a distance of 162.4 feet to a point (8); thence

ENDING at the point of origin, said point being further described as Northing 177,605.3 and Easting 490,368.9 in New Jersey State Plane Coordinate System NAD83.

*Tract 4*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,605.3 and Easting 490,368.9 in New Jersey State Plane Coordinate System NAD83, thence

N 36° 59' 5" W a distance of 665.76 feet to a point (1); thence
N 53° 59' 12" E a distance of 2.9 feet to a point (2); thence
S 55° 5' 33" E a distance of 1.7 feet to a point (3); thence
N 53° 38' 17" E a distance of 81.8 feet to a point (4); thence
N 30° 52' 21" W a distance of 1.2 feet to a point (5); thence
N 53° 34' 42" E a distance of 75.0 feet to a point (6); thence

3

S 36° 57' 34" E a distance of 689.4 feet to a point (7); thence
S 62° 7' 15" W a distance of 162.4 feet to a point (8); thence

ENDING at the point of origin, said point being further described as Northing 177,605.3 and Easting 490,368.9 in New Jersey State Plane Coordinate System NAD83.

*Tract 5*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,704.9 and Easting 490,557.2 in New Jersey State Plane Coordinate System NAD83, thence

N 37° 0' 46" W a distance of 593.7 feet to a point (1); thence
N 51° 53' 11" E a distance of 81.8 feet to a point (2); thence
N 49° 35' 17" E a distance of 78.7 feet to a point (3); thence
S 36° 58' 50" W a distance of 625.8 feet to a point (4); thence
S 62° 8' 2" W a distance of 162.5 feet to a point (5); thence

ENDING at the point of origin, said point being further described as Northing 177,704.9 and Easting 490,557.2 in New Jersey State Plane Coordinate System NAD83.

*Tract 6*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,810.5 and Easting 490,741.2 in New Jersey State Plane Coordinate System NAD83, thence

N 37° 0' 37" W a distance of 521.5 feet to a point (1); thence
N 51° 39' 18" E a distance of 86.3 feet to a point (2); thence
N 36° 36' 6" W a distance of 63.0 feet to a point (3); thence
N 52° 12' 50" E a distance of 73.9 feet to a point (4); thence
S 36° 55' 53" E a distance of 582.1 feet to a point (5); thence
S 51° 3' 18" W a distance of 160.0 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 177,810.5 and Easting 490,741.2 in New Jersey State Plane Coordinate System NAD83.

*Tract 7*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 177,948.9 and Easting 490,912.5 in New Jersey State Plane Coordinate System NAD83, thence

N 36° 58' 23" W a distance of 580.9 feet to a point (1); thence
N 51° 30' 41" E a distance of 10.5 feet to a point (2); thence
N 47° 53' 20" E a distance of 150.6 feet to a point (3); thence
S 36° 57' 41" E a distance of 589.1 feet to a point (4); thence
S 51° 2' 58" W a distance of 160.4 feet to a point (5); thence

ENDING at the point of origin, said point being further described as Northing 177,948.9 and Easting 490,912.5 in New Jersey State Plane Coordinate System NAD83.

*Tract 8*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 178,081.2 and Easting 491,076.1 in New Jersey State Plane Coordinate System NAD83, thence

N 36° 57' 39" W a distance of 592.1 feet to a point (1); thence
N 47° 40' 55" E a distance of 110.5 feet to a point (2); thence

4

S 32° 37' 44" E a distance of 601.9 feet to a point (3); thence
S 51° 2' 6" W a distance of 64.6 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 178,081.2 and Easting 491,076.1 in New Jersey State Plane Coordinate System NAD83.

*Tract 9*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 178,213.7 and Easting 491,240.1 in New Jersey State Plane Coordinate System NAD83, thence

N 36° 58' 16" W a distance of 528.4 feet to a point (1); thence
N 52° 43' 58" E a distance of 79.3 feet to a point (2); thence
S 36° 32' 37" E a distance of 23.6 feet to a point (3); thence
N 51° 43' 16" E a distance of 81.2 feet to a point (4); thence
S 36° 59' 23" E a distance of 501.5 feet to a point (5); thence
S 51° 3' 10" W a distance of 162.0 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 178,213.7 and Easting 491,240.1 in New Jersey State Plane Coordinate System NAD83.

*Tract 10*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 178,345.5 and Easting 491,403.1 in New Jersey State Plane Coordinate System NAD83, thence

N 36° 52' 48" W a distance of 501.9 feet to a point (1); thence
N 51° 45' 49" E a distance of 116.9 feet to a point (2); thence
S 32° 20' 7" E a distance of 502.5 feet to a point (3); thence
S 51° 2' 4" W a distance of 77.1 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 178,345.5 and Easting 491,403.1 in New Jersey State Plane Coordinate System NAD83.

MCA-8

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 178,121.8 and Easting 491,126.3 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 37' 25" W a distance of 602.6 feet to a point (1); thence
N 47° 12' 21" E a distance of 50.8 feet to a point (2); thence
S 37° 28' 40" E a distance of 36.8 feet to a point (3); thence
N 53° 40' 27" E a distance of 30.1 feet to a point (4); thence
S 33° 3' 23" E a distance of 566.5 feet to a point (5); thence
S 51° 3' 9" W a distance of 87.9 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 178,121.8 and Easting 491,126.3 in New Jersey State Plane Coordinate System NAD83.

MCA-9

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 178,426.1 and Easting 491,502.6 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 25' 3" W a distance of 499.7 feet to a point (1); thence

5

N 52° 47' 56" E a distance of 240.2 feet to a point (2); thence
N 41° 57' 35" W a distance of 8.7 feet to a point (3); thence
N 51° 24' 25" E a distance of 62.5 feet to a point (4); thence
S 32° 24' 55" E a distance of 498.9 feet to a point (5); thence
S 50° 42' 37" W a distance of 302.2 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 178,426.1 and Easting 491,502.6 in New Jersey State Plane Coordinate System NAD83.

MCA-10

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 178,649.3 and Easting 491,775.4 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 23' 59" W a distance of 605.7 feet to a point (1); thence
N 56° 6' 53" E a distance of 126.2 feet to a point (2); thence
N 25° 26' 3" W a distance of 2.5 feet to a point (3); thence
N 57° 47' 2" E a distance of 173.1 feet to a point (4); thence
S 32° 26' 3" E a distance of 574.7 feet to a point (5); thence
S 50° 42' 4" W a distance of 302.1 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 178,649.3 and Easting 491,775.4 in New Jersey State Plane Coordinate System NAD83.

MCA-11

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 179,086.8 and Easting 492,326.8 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 24' 42" W a distance of 537.4feet to a point (1); thence
N 58° 1' 17" E a distance of 202.6 feet to a point (2); thence
S 32° 19' 27" E a distance of 539.7 feet to a point (3); thence
S 58° 40' 9" W a distance of 201.8 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 179,086.8 and Easting 492,326.8 in New Jersey State Plane Coordinate System NAD83.

MCA-12

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 179,191.7 and Easting 492,499.2 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 19' 27" W a distance of 539.6 feet to a point (1); thence
N 58° 11' 20" E a distance of 97.3 feet to a point (2); thence
S 32° 25' 31" E a distance of 540.5 feet to a point (3); thence
S 58° 40' 9" W a distance of 98.3 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 179,191.7 and Easting 492,499.2 in New Jersey State Plane Coordinate System NAD83.

MCA-13

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 179,268.9 and Easting 492,625.9 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 25' 3" W a distance of 612.2 feet to a point (1); thence
N 57° 57' 21" E a distance of 174.1 feet to a point (2); thence

S 32° 26′ S5″ E a distance of 614.3 feet to a point (3); thence
S 58° 40′ 9″ W a distance of 174.3 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 179,268.9 and Easting 492,625.9 in New Jersey State Plane Coordinate System NAD83.

MCA-14

*Tract 1*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 179,451.1 and Easting 492,925.3 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 25′ 58″ W a distance of 574.8 feet to a point (1); thence
N 58° 20′ 59″ E a distance of 124.5 feet to a point (2); thence
S 40° 47′ 1″ E a distance of 3.4 feet to a point (3); thence
N 58° 37′ 0″ E a distance of 49.9 feet to a point (4); thence
N 32° 0′ 39″ W a distance of 3.7 feet to a point (5); thence
N 57° 59′ 6″ E a distance of 125.2 feet to a point (6); thence
S 32° 25′ 54″ E a distance of 593.4 feet to a point (7); thence
S 69° 2′ 16″ W a distance of 88.9feet to a point (8); thence
S 58° 40′ 9″ W a distance of 213.0 feet to a point (8); thence

ENDING at the point of origin, said point being further described as Northing 179,451.1 and Easting 492,925.3 in New Jersey State Plane Coordinate System NAD83.

*Tract 2*

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 179,612.0 and Easting 493,238.2 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 24′ 44″ W a distance of 598.7 feet to a point (1); thence
N 57° 52′ 56″ E a distance of 174.1 feet to a point (2); thence
N 31° 11′ 1″ W a distance of 4.0 feet to a point (3); thence
N 57° 26′ 4″ E a distance of 125.3 feet to a point (4); thence
S 32° 26′ 37″ E a distance of 662.9 feet to a point (5); thence
S 69° 2′ 16″ W a distance of 305.9 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 179,612.0 and Easting 493,238.2 in New Jersey State Plane Coordinate System NAD83.

MCA-15

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 179,739.8 and Easting 493,571.6 in New Jersey State Plane Coordinate System NAD83, thence

N 32° 27′ 48″ W a distance of 542.3 feet to a point (1); thence
N 58° 3′ 40″ E a distance of 239.7 feet to a point (2); thence
N 32° 13′ 14″ W a distance of 80.0 feet to a point (3); thence
N 58° 7′ 49″ E a distance of 59.4 feet to a point (4); thence
S 32° 28′ 52″ E a distance of 641.13 feet to a point (5); thence
S 57° 12′ 6″ W a distance of 188.1 feet to a point (6); thence
S 69° 2′ 16″ W a distance of 113.9 feet to a point (7); thence

7

ENDING at the point of origin, said point being further described as Northing 179,739.8 and Easting 493,571.6 in New Jersey State Plane Coordinate System NAD83.

<u>MCA-16</u>

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 179,895.2 and Easting 493,855.9 in New Jersey State Plane Coordinate System NAD83, thence

  N 32° 25' 3" W a distance of 637.6 feet to a point (1); thence
  N 58° 30' 2" E a distance of 26.5 feet to a point (2); thence
  N 31° 36' 51" W a distance of 53.0 feet to a point (3); thence
  N 57° 23' 56" E a distance of 60.7 feet to a point (4); thence
  S 52° 19' 52" E a distance of 2.4 feet to a point (5); thence
  N 57° 58' 51" E a distance of 62.6 feet to a point (6); thence
  N 0° 15' 18" W a distance of 1.8 feet to a point (7); thence
  N 57° 1' 13" E a distance of 50.2 feet to a point (8); thence
  N 32° 30' 8" W a distance of 84.8 feet to a point (9); thence
  N 59° 4' 12" W a distance of 581.1 feet to a point (10); thence
  S 31° 35' 47" E a distance of 75.4 feet to a point (11); thence
  S 57° 32' 8" W a distance of 120.6 feet to a point (12); thence
  S 32° 30' 2" E a distance of 6.9 feet to a point (13); thence
  S 58° 24' 58" W a distance of 497.4 feet to a point (14); thence
  S 32° 36' 0" E a distance of 671.5 feet to a point (15); thence
  S 57° 19' 48" W a distance of 1401.8 feet to a point (16); thence

ENDING at the point of origin, said point being further described as Northing 179,895.2 and Easting 493,855.9 in New Jersey State Plane Coordinate System NAD83.

# EXHIBIT B

## RIPARIAN GRANTS IN MARGATE

| Owner of Record | Liber & Page |
|---|---|
| Justus Siebert Sr. | Liber T, pg. 620 |
| Davis Ellis | Liber F, pg. 473 |
| Israel G. Adams & John B. Adams | Liber R, pg. 479 |
| Israel G. Adams | Liber R, pg. 473 |
| Anthony Gertzen Jr. | Liber S, pg. 92 |
| F. Clement Eddleman | Liber H-1, pg. 449 |
| The Margate Company | Liber S, pg. 571 |
| Michael Page | Liber R, pg. 461 |
| Margate Company | Liber S, pg. 658 |
| Walter S. Massey (Individually) and Walter Shelton Massey and James M. Hall, Executors of Estate of William Massey | Liber L, pg. 567 |
| Felix Isman | Liber R, pg. 497 |
| Reuben Babcock | Liber U, pg. 92 |
| Mary J. & Robert O'Neill | Liber S, pg. 646 |
| Ventnor Syndicate | Liber S, pg. 652 |
| Thomas Durham * | Liber N, pg. 363 |
| Camden & Atlantic Railroad Company | Liber I, pg.506 |

*Presumably transferred to The Anglers' Club of Absecon Island, the apparent successor and/or assignee
of such interests.

# EXHIBIT C

Prepared by:
State of New Jersey
Office of the Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625

_____

### DEED OF DEDICATION AND PERPETUAL STORM

### DAMAGE REDUCTION EASEMENT

THIS DEED OF DEDICATION AND PERPETUAL STORM DAMAGE REDUCTION
EASEMENT is made this _____ day of _____ 2014 BY AND

BETWEEN


whose address is


referred to herein as Grantor,

AND

**THE STATE OF NEW JERSEY** referred to herein collectively as the
Grantee,

### WITNESSETH

WHEREAS, Grantor is the owner of that certain tract of
land, located in the City of Margate, County of Atlantic, State
of New Jersey, and identified as the **riparian grants** listed in
Appendix A on the official tax map of the City of Margate,
hereinafter the "Property," and Grantor holds the requisite
interest to grant this Deed of Easement; and

WHEREAS, the Grantee recognizes that the beach at the City
of Margate, New Jersey is subject to constant erosion and
degradation, thereby destroying a valuable natural resource and
threatening the safety and property of the Grantor and of all of
the citizens of the State; and,

WHEREAS, the Grantee desires to participate with the United
States Army Corps of Engineers to construct the **Brigantine Inlet
to Great Egg Harbor Inlet – Absecon Island, New Jersey,
Hurricane and Storm Damage Reduction Project**, as defined in the
June 23, 2014 Project Partnership Agreement between the
Department of the Army and the State of New Jersey, hereinafter
"Project"; and,

WHEREAS, construction of the Project includes periodic
renourishment, which may be performed solely by the Grantee or
in conjunction with the United States Army Corps of Engineers;
and,

WHEREAS, in order to accomplish part of the Project,
Grantee needs a Perpetual Storm Damage Reduction Easement on
portions of said Property herein described; and,

[1]

WHEREAS, the United States Army Corps of Engineers and/or State of New Jersey will not participate in the Project unless the Grantee acquires the real property interest herein described in all real property needed for the Project; and,

WHEREAS, the Grantee shall instruct the City of Margate to consider this Deed of Easement in establishing the full assessed value of any lands subject to such restriction; and

WHEREAS, the Grantor desires to cooperate in allowing the Project to take place on a portion of said Property; and,

WHEREAS, the Grantor acknowledges that it will benefit from the successful implementation of the Project; and,

WHEREAS, the Grantor acknowledges that after successful implementation of the Project the beach and dune are still subject to the forces of nature which can result in both erosion and accretion of the beach and dune; and

NOW, THEREFORE, in consideration for the benefits to be received by the Grantor from the successful implementation of the Project, the Grantor grants and conveys to Grantee an irrevocable, assignable, perpetual and permanent easement as set forth herein:

GRANT OF EASEMENT: A perpetual and assignable easement and right-of-way for the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island, New Jersey, Hurricane and Storm Damage Reduction Project, in, on, over and across that land of the Property described as the riparian grants listed in Appendix A and as depicted in Appendix B for the Blocks and Lots listed above for use by the State of New Jersey and its representatives, agents, contractors and assigns to:

a.   Construct, preserve, patrol, operate, maintain, repair, rehabilitate, and replace a public beach, dune system, and other erosion control and storm damage reduction measures together with appurtenances thereto, including the right to deposit sand, to accomplish any alterations of the contours on said land, to construct berms and dunes, and to nourish and re-nourish periodically;

b.   Move, temporarily store and remove equipment and supplies;

c.   Erect and remove temporary structures;

d.   Perform any other work necessary and incident to the construction, periodic renourishment, and maintenance of the Brigantine Inlet to Great Egg Harbor Inlet – Absecon Island Initial Construction Project together with the right of public use and access;

e.   Post signs and plant vegetation on said dunes and berms;

f.   Erect, maintain, and remove silt screens and snow fences;

g.   Facilitate preservation of dune and vegetation through the limitation of public access to dune areas;

h.   Trim, cut, fell, and remove from said land all trees, underbrush, debris, obstructions, and any other vegetation, structures, and obstacles within the limits of the easement;

[2]

The easement reserves to the Grantor, the Grantor's heirs, successors and assigns the right to construct a private dune overwalk structure in accordance with any applicable Federal, State, or local laws or regulations, provided that such structure shall not violate the integrity of the dune in shape, dimension, or function. Prior approval of the plans and specifications for such structures must be obtained from the City of Margate and the State of New Jersey. Such structures are to be considered subordinate to the construction, operation, maintenance, repair, rehabilitation, and replacement of the project. The easement reserves to the Grantor, the Grantor's heirs, successors, and assigns all such rights and privileges as may be used and enjoyed without interfering with or abridging the rights and easements hereby conveyed to the Grantee, subject however to existing easements for utilities and pipelines, existing public highways, existing paved public roads and existing public streets. Grantor hereby expressly agrees not to grade or excavate within the easement area or to place therein any structure or material other than a dune walkover as referenced above without prior approval of the plans and specifications for said activities from the City of Margate, the State of New Jersey and/or any applicable Federal agency, as required.

**Duration of Easement:** The easement granted hereby shall be in perpetuity, and in the event that the State of New Jersey shall become merged with any other geo-political entity or entities, the easement granted hereby shall run in favor of surviving entities. The covenants, terms, conditions and restrictions of this Deed of Easement shall be binding upon, and inure to the benefit of the parties hereto and their respective personal representatives, heirs, successors and assigns and shall continue as a servitude running in perpetuity with the land.

**Municipality to Maintain Beach:** The Grantee and/or the Municipality agrees, consistent with all Federal, State and local statutes and regulations, that at all times it shall use its best, good-faith efforts to cause the beach area abutting Grantor's lands to be maintained, consistent with any applicable Federal, State or local laws or regulations, notwithstanding any action or inaction of the State of New Jersey, Department of Environmental Protection or the United States Army Corps of Engineers to maintain the beach area.

**Character of Property:** Notwithstanding the foregoing, nothing herein is intended or shall be deemed to change the overall character of the Property as private property; nothing herein shall be deemed to grant to the Grantee or otherwise permit the Grantee or any other person to cross over or use any part of the Property which is not within the Easement Area; nothing herein is intended or shall be deemed to alter the boundary lines or setback lines of the Property.

**Miscellaneous:**

1. The enforcement of the terms of this Easement shall be at the discretion of the Grantee and any forbearance by Grantee to exercise its rights under this Easement in the event of any violation by Grantor shall not be deemed or construed to be a waiver by Grantee of such term or of any subsequent violation or

[3]

of any of Grantee's rights under this Easement.   No delay or
omission by Grantee in the exercise of any right or remedy upon
any violation by Grantor shall impair such rights or remedies or
be construed as a waiver of such rights or remedies.

2.   The interpretation and performance of this Deed of Easement
shall be governed by the laws of the State of New Jersey.

3.   If any provision of this Deed of Easement or the application
thereof to any person or circumstance is found to be invalid,
the  remainder  of  the  provisions  of  this  Easement  or  the
application of such provision to persons or circumstances other
than those to which it is found to be invalid, as the case may
be, shall not be affected thereby.

4.   Any  notice,  demand,  request,  consent,  approval  or
communication  under  this  Deed  of  Easement  shall  be  sent  by
regular first class mail, postage prepaid and by Certified Mail,
Return Receipt Requested, addressed to the mailing addresses set
forth above or any other address of which the relocating party
shall notify the other, in writing.

5.  The captions in this Deed of Easement have been inserted
solely for convenience of reference and are not a part of this
instrument  and  shall  have  no  effect  upon  its  construction  or
interpretation.

6.  Structures not preexisting or part of the project are not
authorized.

7. Grantor represents and warrants he/she/it holds the requisite
ownership interest and authority to execute this Deed of
Easement; and has made this Deed of Easement for the full and
actual consideration as set forth herein.

8. This Deed may be executed in counterparts by the respective
Parties, which together will constitute the original Deed.

[4]

**IN WITNESS WHEREOF,** with the parties understanding and agreeing to the above, they do hereby place their signatures on the date at the top of the first page.

Accepted by the               Witnessed by:
**PROPERTY OWNER, GRANTOR**

_____      _____
GRANTOR                       NOTARY PUBLIC OF THE
                             STATE OF NEW JERSEY

Date _____

STATE OF NEW JERSEY

COUNTY OF _____ SS.:

I CERTIFY that on _____ 2013,

[INSERT GRANTOR(S) NAME(S)]

personally came before me and this person acknowledged under oath, to my satisfaction that this person (or if more than one, each person);

1) is named in and personally signed this Deed of Easement; and

2) signed, sealed and delivered this Deed of Easement as his or her act and deed.

_____
NOTARY PUBLIC OF THE
STATE OF NEW JERSEY

Accepted by the               Witnessed by:

**STATE OF NEW JERSEY, GRANTEE**

BY:_____    _____
Dave Rosenblatt                 NOTARY PUBLIC OF THE
Administrator                   STATE OF NEW JERSEY
Office of Flood Risk Reduction Measures

Date _____

[5]

# Appendix A



## Legend

—— CES Bulkhead Survey Line (Upper Work Limit)

—— USACE Seaward Toe of Slope (Lower Work Limit)

—— Riparian Grant Boundaries

— · — Riparian Sub-Grant Boundaries

RIPARIAN GRANT EXTENTS WITHIN WORK LIMIT

### The Margate Company

| Tract Name | Parcel Area (Acres) |
|---|---|
| T-1 | 2.98 |
| T-2 | 2.71 |
| T-3 | 2.43 |
| T-4 | 2.34 |
| T-5 | 0.82 |
| T-6 | 1.19 |
| T-7 | 1.08 |
| T-8 | 1.13 |

### Margate City Riparian Grant Information

| Parcel Tag | Grantee | Date Issued | Liber | Page | Parcel Area (Acres) |
|---|---|---|---|---|---|
| MCA-6 | F. Clement Studenroth | 9/17/1926 | H-I | 449 | 1.50 |
| MCA-7 | The Margate Company | 4/21/1910 | S | 571 | 18.92 |
| MCA-8 | Michael Page | 9/26/1907 | R | 461 | 1.15 |





ATLANTIC AVENUE
GRANVILLE AVENUE
GLADSTONE AVENUE
FRONTENAC AVENUE
FRANKLIN AVENUE
EXETER AVENUE
ESSEX AVENUE
DOUGLASS AVENUE
DELAVAN AVENUE
CLERMONT AVENUE
CLARENDON AVENUE
BRUNSWICK AVENUE
BARCLAY AVENUE
ARGYLE AVENUE
ANDOVER AVENUE
FREDERICKSBURG AVENUE
7.02
7.01
6.02
6.01
5.02
5.01
4.02
4.01
3.02
3.01
2.02
2.01
1.02
1.01
6.03
5.03
4.03
3.03
T-1
T-2
MCA-14
MCA-15
MCA-16
ATLANTIC OCEAN

| Margate City Riparian Grant Information | | | | | |
|---|---|---|---|---|---|
| Parcel Tag | Grantee | Date Issued | Liber | Page | Parcel Area (Acres) |
| MCA-14 | Ventnor Syndicate | 5/26/1910 | S | 652 | 8.32 |
| MCA-15 | Thomas Durham | 7/26/1900 | N | 353 | 3.96 |
| MCA-16 | Camden & Atlantic Railroad Company | 9/12/1854 | 1 | 506 | 22.90 |

| Ventnor Syndicate Sub-Grant | |
|---|---|
| Parcel Tag | Parcel Area (Acres) |
| T-1 | 3.99 |
| T-2 | 4.33 |

## Legend

CES Bulkhead Survey Line (Upper Work Limit)

USACE Seaward Toe of Slope (Lower Work Limit)

Riparian Grant Boundaries

Riparian Sub-Grant Boundaries

RIPARIAN GRANT EXTENTS WITHIN WORK LIMITS

## RIPARIAN GRANTS IN MARGATE

| Owner of Record | Liber & Page |
|---|---|
| Justus Siebert Sr. | Liber T, pg. 620 |
| Davis Ellis | Liber F, pg. 473 |
| Israel G. Adams & John B. Adams | Liber R, pg. 479 |
| Israel G. Adams | Liber R, pg. 473 |
| Anthony Gertzen Jr. | Liber S, pg. 92 |
| F. Clement Eddleman | Liber H-1, pg. 449 |
| The Margate Company | Liber S, pg. 571 |
| Michael Page | Liber R, pg. 461 |
| Margate Company | Liber S, pg. 658 |
| Walter S. Massey (Individually) and Walter Shelton Massey and James M. Hall, Executors of Estate of William Massey | Liber L, pg. 567 |
| Felix Isman | Liber R, pg. 497 |
| Reuben Babcock | Liber U, pg. 92 |
| Mary J. & Robert O'Neill | Liber S, pg. 646 |
| Ventnor Syndicate | Liber S, pg. 652 |
| Thomas Durham * | Liber N, pg. 363 |
| Camden & Atlantic Railroad Company | Liber I, pg.506 |

*Presumably transferred to The Anglers' Club of Absecon Island, the apparent successor and/or assignee of such interests.

# Appendix B

New Jersey Department of Environmental Protection (NJDEP)
Bureau of Coastal Engineering
Margate City Riparian Grant Information
Metes & Bounds

MCA-1

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwersterly line of the grant extent, said point being further described as Northing 176,622.7 and Easting 488,826.0 in New Jersey State Plane Coordinate System NAD83, thence

N 35° 39' 35.2" W a distance of 599.6 feet to a point (1); thence
N 54° 58' 28.8" E a distance of 50.1 feet to a point (2); thence
S 49° 38' 14.5" E a distance of 603.4 feet to a point (3); thence
S 41° 42' 22.69" W a distance of 50.2 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 176,622.7 and Easting 488,826.0 in New Jersey State Plane Coordinate System NAD83.

MCA-2

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing and Easting in New Jersey State Plane Coordinate System NAD83, thence

N 35° 44' 3.2" W a distance of 411.4 feet to a point (1); thence
N 54° 40' 28.7" E a distance of 126.1 feet to a point (2); thence
S 49° 44' 10.9" E a distance of 414.3 feet to a point (3); thence
S 56° 3' 16.9" W a distance of 125.0 feet to a point (4); thence

ENDING at the point of origin, said point being further described as Northing 176,739.3 and Easting 489,010.9 in New Jersey State Plane Coordinate System NAD83.

MCA-3

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 176,852.2 and Easting 489,169.5 in New Jersey State Plane Coordinate System NAD83, thence

N 35° 44' 3.2" W a distance of 509.1 feet to a point (1); thence
N 55° 22' 52.8" E a distance of 105.5 feet to a point (2); thence
N 36° 8' 12.5" W a distance of 112.3 feet to a point (3); thence
N 55° 26' 9.6" E a distance of 105.5 feet to a point (4); thence
S 49° 37' 24.7" W a distance of 622.2 feet to a point (5); thence
S 56° 3' 16.9" W a distance of 211.5 feet to a point (6); thence

ENDING at the point of origin, said point being further described as Northing 176,852.2 and Easting 489,169.5 in New Jersey State Plane Coordinate System NAD83.

MCA-4

BEGINNING at the southerly most point (located on the USACE seaward toe of slope) on the northwesterly line of the grant extent, said point being further described as Northing 176,998.7 and Easting 489,375.4 in New Jersey State Plane Coordinate System NAD83, thence

N 35° 42' 4.0" W a distance of 517.6 feet to a point (1); thence
N 53° 49' 52.8" E a distance of 34.8 feet to a point (2); thence
S 49° 31' 52.8" E a distance of 516.6 feet to a point (3); thence
S 56° 3' 16.9" W a distance of 35.4 feet to a point (4); thence

# EXHIBIT C

## TOLLING AND STANDSTILL AGREEMENT

This Tolling and Standstill Agreement (the "**Agreement**") is made and entered into as of this 2nd day of October 2014, by and between the City of Margate (hereinafter "**Margate**") and the New Jersey Department of Environmental Protection (hereinafter, the "**DEP**") (collectively, the "**Parties**");

**WHEREAS**, on or about October 2, 2014, the DEP caused to be recorded in the Atlantic County Clerk's Office Administrative Orders Nos. 2014-13 (Instrument No. 2014054702), 2014-14 (Instrument No. 2014054703) and 2014-15(Instrument No. 2014054704) (collectively, the "**Administrative Orders**");

**WHEREAS**, the Parties have agreed that the passage of time and/or Margate's failure to immediately object to the Administrative Orders shall not in any manner prejudice the rights of Margate;

**WHEREAS**, the DEP asserts that it has the authority to condemn the property that is subject to the Administrative Orders;

**WHEREAS**, Margate denies that the DEP has the authority to condemn the property that is the subject of the Administrative Orders; and

**WHEREAS**, the Parties desire the opportunity to attempt to amicably resolve issues related to the Administrative Orders on a mutually acceptable basis, without commencing a lawsuit, litigation or other legal proceeding at this time, and therefore, after consultation between legal counsel and following negotiations, have agreed to enter into this Agreement.

**NOW, THEREFORE**, in consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Margate and the DEP hereby agree as follows:

1. **Incorporation of Recitals:** The paragraphs set forth above are hereby incorporated by reference as though fully set forth herein.

2. **Tolling of All Time Requirements/Periods:** From and including October 2, 2014 (the "**Effective Date**"), all applicable statutes of limitations and/or any time requirements and/or statutory time limitations (including, without limitation, laches or other defenses or causes of action) for filing any proceedings related to the Administrative Orders are hereby tolled as of the Effective Date through the Termination Date, as defined in Section Five of this Agreement (the "**Tolling Period**"). If either Party commences a lawsuit, litigation or other legal proceeding against the other party on or before the expiration of the Tolling Period, then such lawsuit, litigation or other legal proceeding shall be deemed to have been filed and commenced on the Effective Date of this Agreement for purposes of applying any statutes of limitations, statutory time limitations and/or any other time requirements (including, without limitation, laches or other defenses or causes of action). If either Party commences a proceeding against the other Party after the expiration of the Tolling Period, all statutes of limitation or any other

defenses will resume excepting only that the Tolling Period will be excluded and omitted from any calculations of time periods.

3. **Preservation of All Rights, Defenses and Causes of Action:** During the Tolling Period, all substantive and procedural rights with respect to any claims, cross-claims, objections and/or defenses related in any manner to the Administrative Orders that either Party was entitled to raise or interpose as of the Effective Date by operation of law or otherwise shall be preserved and shall not be affected in any way by the passage of time or by any other occurrences during the Tolling Period. To avoid any doubt, and without limitation, the Parties agree that Margate's failure to object to the Administrative Orders during the Tolling Period shall not constitute a waiver under N.J.S.A. 20:3:-11, or any other applicable legal or equitable authority, nor shall Margate be estopped from asserting the rights expressly preserved herein.

4. **Third Party Beneficiaries:** The Parties agree that owners of real property and/or riparian rights impacted by the Administrative Orders may assert the status of intended third party beneficiaries of this Agreement.

5. **Notice of Termination:** Either Party may, upon five (5) business days' notice to the other Party, terminate this Agreement for any reason that Party deems necessary. The notice required hereunder must be delivered by certified mail or other mailing requiring signature upon delivery. This Agreement shall be deemed terminated, and the Tolling Period shall end, after the fifth day following the receipt of a notice of termination (the **"Termination Date"**).

6. **Notices:** All notices related to this Agreement shall be mailed to:

| If to Margate: | If to the DEP: |
|---|---|
| Mayor Michael Becker<br>9001 Winchester Avenue<br>Margate, NJ 08402<br><br>**With a copy to:**<br><br>Rob Andrews<br>Jordan Rand<br>Dilworth Paxson LLP<br>1500 Market Street, Suite 3500E<br>Philadelphia, PA 19102 | Commissioner Bob Martin<br>New Jersey Department of Environmental Protection<br>401 East State Street<br>7th Floor, East Wing<br>P.O. Box 402<br>Trenton, NJ 08625<br><br>**With a copy to:**<br><br>David C. Apy, Assistant Attorney General<br>New Jersey Office of the Attorney General<br>Division of Law, Director's Complex<br>R.J. Hughes Justice Complex<br>25 Market Street<br>P.O. Box 112<br>Trenton, NJ 08625 |

7. **Effect of Agreement:** Neither this Agreement nor any act any Party takes under, or pursuant, to this Agreement shall operate or be construed as an admission of any wrongdoing, liability, or

2

culpability by any Party or as an admission by any Party of the existence of any claims against the other, nor shall this Agreement constitute a waiver of any claim, cross-claim, right, liability, privilege and/or defense that could have been asserted as of the Effective Date, and no Party shall, by reason of this Agreement, be estopped from asserting any such claim, cross-claim, right, liability, privilege and/or defense.

8. **Agreement Jointly Drafted**:  The language of this Agreement has been negotiated and is a product of the draftsmanship of both Parties, and shall, in all cases, be construed as a whole according to its objective and fair meaning and no ambiguity, if any be found, shall be interpreted in favor of or against either Party.

9. **Authorization to Execute**:  The Parties represent and warrant that: (i) each has the power and is duly authorized to enter into this Agreement upon the terms set forth herein, and (ii) upon being duly executed and delivered, this Agreement shall constitute a legal, valid, and binding obligation enforceable against it in accordance with the Agreement.

10. **Entire Agreement**:  This Agreement constitutes the entire agreement between the Parties regarding the Administrative Orders and the tolling of any right, liability, privilege, objection or defense which may be asserted as to the Administrative Orders. This Agreement supersedes any and all prior agreements and understandings between the Parties pertaining to this matter. No oral statements by any person shall, in any manner, amend, modify or amplify the terms and provisions of this Agreement. This Agreement shall not be amended, modified or amplified without a specific written provision to that effect executed by both Parties.

11. **Choice of Law**:  This Agreement is made and entered into in the State of New Jersey and shall, in all respects, be interpreted, enforced and governed under the laws of this State.  Such administrative or judicial body as may have jurisdiction over the dispute between the Parties hereto shall have exclusive jurisdiction over any and all disputes arising out of or relating to, directly or indirectly, the interpretation, application or alleged violation and enforcement of any provision of this Agreement.

12. **Execution in Counterparts**:  This Agreement may be executed in one (1) or more counterparts, all of which shall be considered a single and the same, and shall become effective when one (1) or more counterparts have been signed by each Party. It is understood that the Parties need not sign the same counterpart. An electronic copy or facsimile of either Party's signature below shall have the same force and effect as an original.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth above.

| CITY OF MARGATE | NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION |
|---|---|
| By: _Michael Becker_ | |
| Mayor Michael Becker | By: _____ |
| | Commissioner Bob Martin |
| Dated: October 18, 2014 | Dated: October 16, 2014 |

3

# EXHIBIT D

# ABSTRACT OF OFFERS - CONSTRUCTION

| 1. SOLICITATION NUMBER | 2. DATE ISSUED | DATE OPENED | PAGE 1 OF 3 |
|---|---|---|---|
| W912BU-14-B-0002 | 15-Sep-14 | 28-Oct-14 | |

**4. ISSUING OFFICE**
US Army Corps of Engineers, Phila
Wanamaker Building, Room 643
100 Penn Square East
Philadelphia, PA 19107-3390

I CERTIFY that I have opened, read, and recorded on this abstract all offers received in response to this solicitation.

Name and title of Certifying Official (Type)
MICHELLE BERTOLINE, CONTRACT SPECIALIST
Signature          Date Signed
BERTOLINE,MICHELLE [digitally signed]   J1229025216

**5. PROJECT TITLE**
BEACHFILL COMPLETION OF INITIAL CONSTRUCTION, BRIGANTINE INLET TO GREAT EGG HARBOR INLET, ABSECON ISLAND, ATLANTIC COUNTY, NEW JERSEY

**8. GOVERNMENT ESTIMATE** (Check A, B or C and complete D, E, and F.)
- A. HIRED LABOR
- B. REASONABLE CONTRACT
- X  C. REASONABLE CONTRACT

**6. NUMBER OF AMENDMENTS ISSUED 0001 THROUGH 0003**

### 9. OFFERS

**NO: 1 (LB)**
A. OFFEROR GREAT LAKES DREDGE & DOCK COMPANY LLC
2122 YORK ROAD
OAK BROOK, IL 60523
B. Bid Security (Type and Amount) BID BOND 20%
C. Amendment Acknowledged YES

**NO: 2 (LB)**
A. OFFEROR WEEKS MARINE, INCORPORATED
304 GAILLE DR/INNWOODS BUS PARK, COVINGTON, LA 70433
B. Bid Security (Type and Amount) BID BOND 20%
C. Amendment Acknowledged YES

| 7A. ITEM No. | 7B. DESCRIPTION OF OFFERED ITEM | 7C. EST. QUANTITY | D. UNIT | E. UNIT PRICE | F. ESTIMATED AMOUNT | NO:1 E. UNIT PRICE | NO:1 F. ESTIMATED AMOUNT | NO:2 E. UNIT PRICE | NO:2 F. ESTIMATED AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| | **BASE BID:** | | | | | | | | |
| 1 | Mobilization & Demobilization MARGATE CITY | 1 | JOB | LS | $5,853,916.22 | LS | $9,680,000.00 | LS | $7,750,000.00 |
| 2 | Structures Monitoring | 1 | JOB | LS | $75,655.43 | LS | $36,500.00 | LS | $50,000.00 |
| 3 | Beachfill | 1,000,000 | C.Y | $10.55 | $10,550,000.00 | $11.60 | $11,600,000.00 | $14.75 | $14,750,000.00 |
| 4 | Pedestrian Dune Crossovers | 33 | EA | $6,656.84 | $219,675.72 | $5,950.00 | $196,350.00 | $6,000.00 | $198,000.00 |
| 5 | Vehical Dune Crossovers | 3 | EA | $23,451.46 | $70,354.38 | $22,500.00 | $67,500.00 | $22,500.00 | $67,500.00 |
| 6 | Handicap Dune Crossovers | 4 | EA | $9,925.81 | $39,703.24 | $12,500.00 | $50,000.00 | $12,500.00 | $50,000.00 |
| 7 | Sand Fence | 20,317 | L.F | $7.76 | $157,659.92 | $7.00 | $142,219.00 | $7.00 | $142,219.00 |
| 8 | Spit Rail Fence | 8,900 | L.F | $9.11 | $81,079.00 | $9.00 | $80,100.00 | $10.00 | $89,000.00 |
| 9 | Post & Rail Fence | 870 | L.F | $102.28 | $88,983.60 | $97.00 | $84,390.00 | $100.00 | $87,000.00 |
| 10 | Dune Grass Planting 18" O.C | 35,611 | S.Y | $3.71 | $132,116.81 | $4.00 | $142,444.00 | $4.00 | $142,444.00 |
| 11 | Dune Grass Planting 24" O.C | 44,878 | S.Y | $2.64 | $118,477.92 | $3.00 | $134,634.00 | $2.50 | $112,195.00 |
| 12 | Name the State of NJ & Margate City as "Additional Insured" Under General Liability Insurance | 1 | JOB | LS | $2,000.00 | LS | $1,000.00 | LS | $10,000.00 |
| | **STORMWATER OUTLET PIPE EXTENSION: STA. 350+64** | | | | | | | | |
| 13 | 12-Inch Ductile Iron Pipe | 378 | L.F | $120.41 | $45,514.98 | $57.00 | $21,546.00 | $55.00 | $20,790.00 |
| 14 | Type "A" Pipe Support Units | 39 | EA | $6,543.37 | $255,191.43 | $6,600.00 | $257,400.00 | $7,000.00 | $273,000.00 |
| 15 | Type "A" Pipe Support Units | 3 | EA | $8,905.10 | $26,715.30 | $13,000.00 | $39,000.00 | $12,500.00 | $37,500.00 |

NOTE: If more than two offers are received, continue on OF 1419A.

Prescribed by GSA-FAR(48 CFR)53.236-1
OPTIONAL FORM 1419 (11-68)

**ABSTRACT OF OFFERS - CONSTRUCTION**

| | |
|---|---|
| 1. SOLICITATION NUMBER: W912BU-14-B-0002 | 2. DATE ISSUED |
| | DATE OPENED |
| | PAGE 2 OF 3 |

**4. ISSUING OFFICE**
US Army Corps of Engineers, Phila
Wanamaker Building, Room 643
100 Penn Square East
Philadelphia, PA 19107-3390

**5. PROJECT TITLE**

Name and title of Certifying Official (Type)

I CERTIFY that I have opened, read, and recorded on this abstract all offers received in response to this solicitation.

Signature / Date Signed

**8. GOVERNMENT ESTIMATE** (Check A, B or C and complete D, E, and F.)
- A. HIRED LABOR
- B. REASONABLE CONTRACT
- C. REASONABLE CONTRACT

**9. OFFERS**

NO. 1 (LB) — A. OFFEROR GREAT LAKES DREDGE & DOCK
NO. 2 (LB) — A. OFFEROR WEEKS MARINE, INCORPORATED

B. Bid Security (Type and Amount)   C. Amendment Acknowledged

**6. NUMBER OF AMENDMENTS ISSUED**   X

(continued)

| 7A. ITEM No. | 7B. DESCRIPTION OF OFFERED ITEM | 7C. EST. QUANTITY | D. UNIT | E. UNIT PRICE | F. ESTIMATED AMOUNT | E. UNIT PRICE | F. ESTIMATED AMOUNT | E. UNIT PRICE | F. ESTIMATED AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| | **LONGPORT BOROUGH** | | | | | | | | |
| 16 | Structures Monitoring | 1 | JOB | LS | $80,546.35 | LS | $23,000.00 | LS | $50,000.00 |
| 17 | Beachfill | 1,000,000 | C.Y | $12.48 | $12,480,000.00 | $10.90 | $10,900,000.00 | $15.00 | $15,000,000.00 |
| 18 | Pedestrian Dune Crossovers | 26 | EA | $6,656.84 | $173,077.84 | $4,900.00 | $127,400.00 | $5,000.00 | $130,000.00 |
| 19 | Vehicle Dune Crossovers | 3 | EA | $23,451.47 | $70,354.41 | $21,000.00 | $63,000.00 | $20,000.00 | $60,000.00 |
| 20 | Handicap Dune Crossovers | 3 | EA | $9,925.81 | $29,777.43 | $11,000.00 | $33,000.00 | $11,500.00 | $34,500.00 |
| 21 | Sand Fence | 17,534 | L.F | $7.76 | $136,063.84 | $7.00 | $122,738.00 | $7.00 | $122,738.00 |
| 22 | Split Rail Fence | 6,861 | L.F | $9.11 | $62,503.71 | $10.00 | $68,610.00 | $10.00 | $68,610.00 |
| 23 | Post & Rail Fence | 650 | L.F | $102.29 | $66,488.50 | $100.00 | $65,000.00 | $100.00 | $65,000.00 |
| 24 | Dune Grass Planting 18" O.C | 34,361 | S.Y | $3.71 | $127,479.31 | $4.00 | $137,444.00 | $4.00 | $137,444.00 |
| 25 | Dune Grass Planting 24" O.C | 27,944 | S.Y | $2.65 | $74,051.60 | $3.00 | $83,832.00 | $2.50 | $69,860.00 |
| 26 | Name the State of NJ & Longport Borough as "Additional Insured" Under Gen. Liability Insurance | 1 | JOB | LS | $2,000.00 | LS | $1,000.00 | LS | $10,000.00 |
| | **STORMWATER OUTFALL PIPE EXTENSION: STA. 362+51** | | | | | | | | |
| 27 | 10-Inch Ductile Iron Pipe | 108 | L.F | $102.97 | $11,120.76 | $50.00 | $5,400.00 | $50.00 | $5,400.00 |
| 28 | Type "A" Pipe Support Units | 9 | EA | $6,543.37 | $58,890.33 | $7,000.00 | $63,000.00 | $7,250.00 | $65,250.00 |
| 29 | Type "B" Pipe Support Units | 3 | EA | $8,905.10 | $26,715.30 | $13,000.00 | $39,000.00 | $12,500.00 | $37,500.00 |
| | **STORMWATER OUTFALL PIPE EXTENSION: STA. 374+99** | | | | | | | | |
| 30 | 16-Inch Ductile Iron Pipe | 180 | L.F | $176.10 | $31,698.00 | $75.00 | $13,500.00 | $80.00 | $14,400.00 |
| 31 | Type "A" Pipe Support Units | 17 | EA | $6,543.37 | $111,237.29 | $7,000.00 | $119,000.00 | $7,000.00 | $119,000.00 |
| 32 | Type "B" Pipe Support Units | 3 | EA | $8,905.10 | $26,715.30 | $13,000.00 | $39,000.00 | $12,500.00 | $37,500.00 |
| | **VENTNOR CITY** | | | | | | | | |
| 33 | Structures Monitoring | 1 | JOB | LS | $23,401.28 | LS | $10,500.00 | LS | $15,000.00 |
| 34 | Beachfill | 22,000 | C.Y | $26.66 | $586,520.00 | $24.00 | $528,000.00 | $30.00 | $660,000.00 |
| 35 | Pedestrian Dune Crossovers | 11 | EA | $26,783.37 | $294,617.07 | $5,000.00 | $55,000.00 | $25,000.00 | $275,000.00 |
| 36 | Sand Fence | 2,725 | L.F | $7.76 | $21,146.00 | $7.00 | $19,075.00 | $7.00 | $19,075.00 |
| 37 | Split Rail Fence | 2,310 | L.F | $9.11 | $21,044.10 | $12.00 | $27,720.00 | $10.00 | $23,100.00 |
| 38 | Dune Grass Planting 18" O.C | 9,580 | S.Y | $3.71 | $35,541.80 | $4.00 | $38,320.00 | $4.00 | $38,320.00 |
| 39 | Dune Grass Planting 24" O.C | 8,536 | S.Y | $2.64 | $22,535.04 | $3.00 | $25,608.00 | $2.50 | $21,340.00 |
| 40 | Name the State of NJ & Ventnor City as "Additional Insured" Under Gen. Liability Insurance | 1 | JOB | LS | $2,000.00 | LS | $1,000.00 | LS | $10,000.00 |

| ABSTRACT OF OFFERS - CONSTRUCTION | | 1. SOLICITATION NUMBER W912BU-14-B-0002 | 2. DATE ISSUED | | | | DATE OPENED | PAGE 3 OF 3 |
|---|---|---|---|---|---|---|---|---|
| 4. ISSUING OFFICE US Army Corps of Engineers, Phila Wanamaker Building, Room 643 100 Penn Square East Philadelphia, PA 19107-3390 | | I CERTIFY that I have opened, read, and recorded on this abstract all offers received in response to this solicitation. | Name and title of Certifying Official (Type) Signature                    Date Signed | | | | | |
| 5. PROJECT TITLE (continued) | | 8. GOVERNMENT ESTIMATE (Check A, B or C and complete D, E, and F.) | 9. OFFERS | | | | | |
| | | | NO.: 1          (LB) A. OFFEROR GREAT LAKES DREDGE & DOCK | | NO.: 2          (LB) A. OFFEROR WEEKS MARINE, INCORPORATED | | | |
| | | A. HIRED LABOR | B. Bid Security (Type and Amount) | | B. Bid Security (Type and Amount) | | | |
| | | B. REASONABLE CONTRACT | C. Amendment Acknowledged | | C. Amendment Acknowledged | | | |
| 6. NUMBER OF AMENDMENTS ISSUED | | X  C. REASONABLE CONTRACT | | | | | | |
| 7A. ITEM No. | 7B. DESCRIPTION OF OFFERED ITEM | 7C. EST. QUANTITY | D. UNIT | E. UNIT PRICE | F. ESTIMATED AMOUNT | E. UNIT PRICE | F. ESTIMATED AMOUNT | E. UNIT PRICE | F. ESTIMATED AMOUNT |

| 7A. ITEM No. | 7B. DESCRIPTION OF OFFERED ITEM | 7C. EST. QUANTITY | D. UNIT | E. UNIT PRICE | F. ESTIMATED AMOUNT | E. UNIT PRICE | F. ESTIMATED AMOUNT | E. UNIT PRICE | F. ESTIMATED AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| | TOTAL EST BASE BID AMOUNT: | | | | $32,292,569.21 | | $35,142,230.00 | | $40,868,685.00 |
| | OPTIONS: | | | | | | | | |
| | MARGATE CITY/VENTNOR CITY | | | | | | | | |
| 41 | Option 1 - Beachfill | 25,000 | C.Y. | $10.51 | $262,750.00 | $8.40 | $210,000.00 | $10.00 | $250,000.00 |
| 42 | Option 2 - Beachfill | 50,000 | C.Y. | $10.25 | $512,500.00 | $8.40 | $420,000.00 | $10.00 | $500,000.00 |
| 43 | Option 3 - Beachfill | 75,000 | C.Y. | $10.13 | $759,750.00 | $8.40 | $630,000.00 | $10.00 | $750,000.00 |
| 44 | Option 4 - Beachfill | 250,000 | C.Y. | $10.07 | $2,517,500.00 | $8.40 | $2,100,000.00 | $10.00 | $2,500,000.00 |
| | LONGPORT BOROUGH | | | | | | | | |
| 45 | Option 5 - Beachfill | 25,000 | C.Y. | $11.94 | $298,500.00 | $8.40 | $210,000.00 | $10.00 | $250,000.00 |
| 46 | Option 6 - Beachfill | 50,000 | C.Y. | $11.65 | $582,500.00 | $8.40 | $420,000.00 | $10.00 | $500,000.00 |
| 47 | Option 7 - Beachfill | 75,000 | C.Y. | $11.65 | $873,750.00 | $8.40 | $630,000.00 | $10.00 | $750,000.00 |
| 48 | Option 8 - Beachfill | 250,000 | C.Y. | $11.52 | $2,880,000.00 | $8.40 | $2,100,000.00 | $10.00 | $2,500,000.00 |
| | TOTAL EST BASE BID AND ALL OPTIONS AMT: | | | | $40,979,819.21 | | $41,862,230.00 | | $48,868,685.00 |

NOTE: If more than two offers are received, continue on OF 1419A.

50141b-101

OPTIONAL FORM 1419  (11-88) Prescribed by GSA-FAR(48 CFR)53.236-1

## **CERTIFICATE OF SERVICE**

I, Thomas S. Biemer, hereby certify that on November 24, 2014, I caused a true and correct copy of the foregoing Complaint, Notice of Application for Temporary Restraining Order and Order to Show Cause and documents in support thereof to be served via electronic mail and/or by hand delivery as follows:

Bill Wilcox, Esquire
United States Army Corps of Engineers
Office of Counsel
The Wanamaker Building
100 Penn Square East
Philadelphia, PA  19107
Tel: 215-656-6529

David C. Apy
Assistant Attorney General
Division of Law, Director's Complex
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, N.J.  08625
Tel: 609-292-8567
David.Apy@dol.lps.state.nj.us

_____
Thomas S. Biemer